UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC S. KIRSCHNER, solely in his capacity as the Liquidation Trustee of Le-Nature's Liquidation Trust, | |
| Plaintiff, | Civil Action No. 08 CIV 1518 |
| v. | Misc. Action No. 2:09–mc-162-DWA |
| WACHOVIA CAPITAL MARKETS, LLC d/b/a WACHOVIA SECURITIES; WACHOVIA BANK, NATIONAL ASSOCIATION; CIT GROUP/EQUIPMENT FINANCING, INC.; KRONES, INC.; KRONES AG; VOLKER KRONSEDER; HEINZ SOMMER; MARSHALL FINANCIAL, INC.; MARSHALL INVESTMENTS CORPORATION; THE POLLINGER COMPANY, INC.; DONALD K. POLLINGER; PAUL POLLINGER; GREGORY J. PODLUCKY; JONATHAN E. PODLUCKY; DAVID E. GETZIK; ROBERT B. LYNN and ANDREW MURIN, JR., | Chief Judge Donetta Ambrose  ELECTRONICALLY FILED |
| Defendants. | |

<u>**BRIEF IN SUPPORT OF RENEWED MOTIONS TO DISMISS OF WACHOVIA CAPITAL MARKETS, LLC and WACHOVIA BANK, NATIONAL ASSOCIATION**</u>

C-1135007v9

The Wachovia defendants (jointly "Wachovia") by their counsel respectfully submit the following Brief in support of their renewed Motion to Dismiss.[1]

Plaintiff Kirschner has been appointed the liquidating trustee for Le-Nature's bankruptcy estate. He attempts to allege common law and RICO claims against Wachovia for the estate. In doing so, he stands in the shoes of Le-Nature's and can only bring claims for damages suffered by Le-Nature's itself. *See In re CitX Corp.*, 448 F.3d 672, 676 n.6 (3d Cir. 2006); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 348-49 (3d Cir. 2001). Kirschner's common law and RICO claims should be dismissed because he has not and cannot allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct.1937, 1949 (2009) (reiterating and stiffening the F.R.C.P. 8(a) pleadings requirements imposed by *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007)). Kirschner's allegations not only fall far short of *Ashcroft's* requirement that a pleader allege more than "facts . . . 'merely consistent with' a defendant's liability," his allegations are entirely implausible. The complaint acknowledges that Le-Nature's Director of Accounting, Tammy Andreycak, *has pleaded guilty to defrauding Wachovia.* Complaint, Introductory Paragraph (p. 1) & ¶ 57; Coble Decl., Ex. A. Nevertheless, Kirscher contends – based on impermissibly conclusory and speculative allegations – that *Wachovia defrauded Le-Nature's.* Not surprisingly, Kirschner has recently suffered dismissal of a separate suit that he attempted to bring on behalf of a debtor against the victims of a fraud. *See Kirschner v. Grant Thornton, LLP*, 2009 WL 996417 (S.D.N.Y., April 14, 2009).

---

[1] In addition, Wachovia has supplied to the Court, and relies upon, documents referenced in the Complaint attached to the Declaration of Sarah Coble originally filed on March 2, 2009. *See In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997) (documents "integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment").

Kirschner also attempts to bring preference and fraudulent conveyance claims against Wachovia. Although the Bankruptcy Code affords Kirschner standing to bring these claims, they are also subject to dismissal for the reasons explained below.

## I. ALLEGATIONS OF COMPLAINT

Stripped of hyperbole and rhetoric, the complaint has very little to say about Wachovia. It is built on a faulty foundation of conclusory allegations that, after *Ashcroft*, cannot survive a motion to dismiss.

*Background Allegations.* Kirschner alleges that Le-Nature's management engaged in a completely fraudulent scheme and managed for a number of years to conceal that scheme from creditors and from Le-Nature's' auditing firms – Ernst & Young and BDO Seidman – which issued clean audit reports on Le-Nature's financial statements each year end from 2001 – 2005.[2] Kirschner alleges that this fraudulent scheme commenced in or prior to 2002, well before Wachovia first contacted Le-Nature's, and that Le-Nature's was insolvent, inviable, and should have been shut down in 2002. Compl. ¶ 4.

Le-Nature's' management "committed fraud and breached their fiduciary obligations to Le-Nature's by affirmatively engaging in the fraudulent scheme." *Id.* ¶ 5. Le-Nature's used two separate accounting systems – one to track actual sales and one that contained primarily fraudulent numbers – "a textbook example of a company maintaining two sets of books to conceal a fraud." *Id.* ¶ 54.

Kirschner admits that Le-Nature's nevertheless gave every appearance of being a

---

[2] Numerous filings by the trustee in the Le-Nature's bankruptcy proceedings reveal that Le-Nature's had audited financial statements for the years listed above. *See* Coble Decl., Ex. H; *see also CALPERS v. Wachovia Capital Markets, LLC*, 2009 WL 414647, at *1 (W.D. Pa. Feb. 18, 2009 (noting that Le-Nature's had audited financial statements). This Court can take judicial notice of these admissions by the trustee when ruling on Wachovia's motion to dismiss. *See Golden v. Cook*, 293 F. Supp. 2d 546, 551 (W.D. Pa. 2003).

legitimate beverage business, spending "hundreds of millions" of dollars on plants and equipment. *Id.* ¶ 4. Le-Nature's sold real products and articulated a reasonable business plan, "styl[ing] itself as a low-cost innovator in the bottled beverage industry [using] cutting edge technologies and distribution methods [including] environmentally safer 'PET' (polyethylene terephthalate) plastic bottles, [patenting] a method by which beverages could be pasteurized in the bottle itself, and [developing] new technologies for brewing ice tea." *Id.* ¶ 43. "Le-Nature's described itself as having one of America's most advanced beverage manufacturing facilities [and] according to its annual financial statements, public announcements and marketing materials, Le-Nature's was a remarkably successful company." *Id.* Its audited financial statements showed net sales increasing from $135 million in 2002 to $275 million in 2005. *Id.* ¶ 44.

*Purported Basis for Wachovia Liability.* Even though Wachovia was the victim of outright fraud by Le-Nature's, Kirschner seeks to hold Wachovia in this action by asserting that "Wachovia knew of, *or knowingly ignored*, the fraudulent scheme." *See id.* ¶ 61 (emphasis added). The complaint repeatedly incants this same disjunctive allegation. *See id.* ¶¶ 75 ("knew or knowingly ignored"), 80 ("saw the resulting [financial statement] anomalies and yet did nothing"), 82 ("knowingly disregard the numerous warning signs"), 99 ("knew or knowingly ignored"), 117 ("participation in, or knowing indifference to, the fraudulent scheme"). Kirschner typically follows the "knew or knowingly ignored" allegations with a statement that Wachovia therefore "substantially assisted the perpetration" of the fraudulent scheme. *See, e.g., id.* ¶ 61. This additional allegation is meaningless and internally contradictory. One might be able to assist in a fraudulent scheme if one knows of the scheme, but it is oxymoronic to say that someone unaware of a fraudulent scheme provided assistance, even if the person missed warning

signs. Put another way, even if, as Kirschner alleges, Wachovia was "fully aware of numerous red flags [purportedly] demonstrating that Le-Nature's operations and finances were not as reported," *id.* ¶ 60, absent allegations that Wachovia did in fact realize Le-Nature's was engaging in fraud, the complaint amounts to nothing more than an exercise in speculative 20-20 hindsight.

Kirschner's allegation that "independent" Le-Nature's board members and numerous other creditors all failed to "connect the dots" and realize that Le-Nature's was engaged in wholesale fraud reinforces the speculative and hypothetical nature of his assertions concerning Wachovia. *Id.* ¶¶ 9, 183-85. Kirschner's claims against Le-Nature's' auditors further belie his implicit premise that the fraud should have been discovered by Wachovia. Under *Ashcroft*, "only a complaint that states a plausible claim for relief survives a motion to dismiss," __ S. Ct. at ___, but Kirschner does not allege why Wachovia had any reason to participate in a fraud that caused the bank substantial harm, or explain why Wachovia should have been uniquely prescient, particularly when auditors and board members had more access to information about Le-Nature's than Wachovia.

Kirschner alleges that Le-Nature's entered into contracts with Wachovia (such as credit agreements and merger/acquisition engagement letters), but fails to attach those agreements to the complaint or quote them. Each one contains a provision materially identical to the following assurance in Wachovia's first engagement letter dated April 21, 2003:

> The Company [Le-Nature's] represents and warrants to Wachovia that all Company Information will be accurate and complete in all material respects at the time it is furnished and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in the light of the circumstances under which such statements are made, and agrees to advise Wachovia during the period of the engagement of all developments materially affecting the Company or the accuracy of Company Information previously furnished to Wachovia or prospective purchasers of securities in connection with the Debt Financing.

Coble Decl., Ex. G at p. 2 & Exhs. B-G (various credit agreements and engagement documents with the same assurances and representations). As Kirschner admits, Le-Nature's also provided Wachovia numerous certifications of the accuracy of its audited financial statements and other material financial information each time it made a loan draw under its credit facility. Compl. ¶ 195(f); *see also* Coble Decl., Ex. I.

*Purported Damages*. Kirschner also fails to allege any facts showing that Wachovia caused damage to Le-Nature's. Kirschner's damages allegations are materially indistinguishable from the allegations rejected by the Third Circuit in *CitX*, 448 F.3d at 677.

All his damages allegations appear in paragraphs 1-3 and 186-189 of the complaint. The first paragraph summarizes the allegations and puts them in context, stating:

> Along the way, Podlucky and the Insiders [a defined term not including Wachovia] wasted hundreds of millions of Le-Nature's dollars on unnecessary capital expansion projects – and outright stole tens of millions of additional dollars from Le-Nature's – thereby greatly diminishing Le-Nature's assets and incurring massive debt to the detriments of Le-Nature's and its various stakeholders.

Kirschner further alleges that Le-Nature's should have been liquidated before Wachovia began doing business with the company in 2003, that Wachovia somehow should have realized this and blown the whistle, and that Le-Nature's incurred losses as a result of continuing its operations through the "artificial prolongation of its failed and insolvent enterprise" and "by being kept afloat with spurious debt." *Id.* ¶ 189. He does not allege how debt can be "spurious" or plead a cognizable legal theory that would result in Wachovia being held responsible for the wrongful actions of Le-Nature's' management.

Kirschner's theory of recovery for his preference and fraudulent conveyance claims is equally broad and, for reasons explained below, equally unfounded. He seeks to recover every payment that Le-Nature's ever made to Wachovia, most of which were received and passed on

by Wachovia as agent for other lenders.  Compl. ¶¶ 323-349.

## II. COMMON LAW AND RICO CLAIMS

Kirschner attempts to assert six common law claims against Wachovia: (i) fraud, (ii) aiding and abetting fraud, (iii) conspiracy to commit fraud, (iv) breach of fiduciary duty, (v) aiding/abetting a fiduciary breach, and (vi) negligence/negligent misrepresentation.  Compl. Counts 5, 6, 9, 10, 12 & 13.  He also attempts to assert two different RICO claims:  (i) that Wachovia, through an enterprise with Podlucky and the Insiders, violated 18 U.S.C. §1962(c), and (ii) that Wachovia conspired with Podlucky and the Insiders in violation of 18 U.S.C. §1962(d).  In evaluating these claims, it is important that Kirschner has no standing to sue third parties on behalf of the estate's creditors, to the contrary, the "trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor." *Lafferty*, 267 F. 3d at 356; *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972).  He is "subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.'" *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989); *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. 1997).

In prior filings, Kirschner has relied upon *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995), to argue that, because a receiver was appointed for Le-Nature's a few days before unsecured creditors placed Le-Nature's in involuntary bankruptcy, he no longer stands in the shoes of Le-Nature's.  This is incorrect.  In *Scholes*, the claims at issue were fraudulent conveyance claims, which are not subject to the rule that the trustee stands in the debtor's shoes, unlike common law and RICO claims.  3 Collier On Bankruptcy ¶ 323.03[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev), p. 323-9.  Kirschner also has, in the past, attempted to rely

on cases in which the FDIC has been appointed as receiver for a failed financial institution. These cases are also inapposite because the FDIC's powers as a receiver are unique, and no bankruptcy proceedings were involved. No precedent supports any argument that Kirschner may attempt to make in this respect.[3]

**A.    Kirschner has not alleged facts showing that Wachovia caused damage to Le-Nature's so his common law and RICO claims must be dismissed.**

1. *Common Law Claims.* Causation and damages are elements of each of the common law claims that Kirschner seeks to assert. *See Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (fraud); *CitX*, 448 F.3d at 677 (negligence); *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005) (negligent misrepresentation); *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (aiding and abetting); *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004) (civil conspiracy). Even before the Supreme Court reaffirmed and fortified Rule 8(a)'s pleadings standards in *Ashcroft*, the Tenth Circuit rejected claims in a complaint that pleaded no facts supporting damages causation, explaining: "If *Twombly* means anything, it means that plaintiffs had to plead some facts that would, if proved, allow a jury to infer . . . that [defendant's actions] caused their damages." *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008); *see also Levy v. Keystone Food Products*, 2008 WL 4115856, at *7 (E.D. Pa. Aug. 28, 2008) (same). Kirschner fails to allege any facts showing that

---

[3] Here, the need to preserve the distinction between claims that Kirschner can bring and claims that creditors may be able to bring individually takes on a heightened importance because numerous cases have been filed against Wachovia and other financing companies by individual creditors that were members of lending syndicates arranged for Le-Nature's. There are no persons or entities interested in the outcome of Kirschner's case other than creditors of Le-Nature's – the entity itself is defunct. If Kirschner is allowed to proceed with claims when the only damages he can identify were suffered not by Le-Nature's but by its creditors, then Wachovia will be exposed to duplicative liability, and the allocations of risk under well-established rules of debtor/creditor law attendant to the decision by each of Le-Nature's creditors to extend funding will become meaningless.

Wachovia caused damage to Le-Nature's, so *Ashcroft* and *Twombly* require dismissal of all of Kirschner's common law claims.

Kirschner attempts to allege two types of damage: (i) "artificial prolongation of [the] failed and insolvent enterprise . . . by being kept afloat with spurious debt," and (ii) losses from the theft and active malfeasance of the Insiders. Compl. ¶¶ 3 & 89. The former allegation amounts to nothing more than an attempt to assert a now-discredited "deepening insolvency" theory of recovery and must be rejected under the controlling precedent established by the Third Circuit in *CitX*. The latter allegation states a claim against the Insiders, but not against Wachovia.

a. *Lenders cannot be held liable for making loans that "deepen" the insolvency of a company.* For several years earlier in this decade, it was in vogue for bankruptcy and liquidating trustees to attempt to bring claims based on a "deepening insolvency" theory, but that theory was discredited thoroughly in an incisive article cited by *CitX* entitled "The Shallows of Deepening Insolvency." *See* 60 Bus. Law. 549 (2005). As the *CitX* decision holds, Kirschner's artificial "prolongation of corporate life" or "deepening insolvency" theory of damages makes no sense and is not viable. 448 F.3d. at 677; *see also In re Radnor Holdings Corp.*, 353 B.R. 820, 842 (Bankr. D. Del. 2006) ("simply calling a discredited deepening insolvency cause of action by some other name does not make it a claim that passes muster").

In *CitX*, the trustee alleged that the defendant had missed "red flags" that should have afforded inquiry notice of the debtor's true financial condition and that the defendant should have notified the debtor's board, which could have taken appropriate action. 448 F.3d at 675, 678. The *CitX* trustee alleged that, as a result of the lack of notice, the debtor raised additional capital and thereby deepened its insolvency. *Id.* The Third Circuit rejected this allegation and

held that the trustee could not assert negligence claims for lack of evidence of damages causation. *Id.* As the Third Circuit explained, the additional investments did not cause damage to the debtor, and "deepening . . . insolvency is not an independent form of corporate damage." *Id.* ("[M]anagement surely misused the opportunity created by that investment; that was unfortunate. But they could have instead used that opportunity to turn the company around and transform it into a profitable business. They did not, and therein lies the harm to CitX.") (*citing* 60 Bus. Law. at 552-57 (2005) (explaining that a loan simply trades debt for the obligation to repay, and therefore cannot cause injury)).

Kirschner makes the same kind of "red flag" allegations against Wachovia asserted by the trustee in *CitX*. *CitX* controls here and requires that Kirschner's claims be rejected as a matter of law. *CitX* is fully in step with compelling precedent from other Circuits and from the Delaware Court of Chancery rejecting the contention that deepening insolvency is a measure of damages and recognizing that "catchy though the term [deepening insolvency] may be, it does not express a coherent concept." *Trenwick America Litigation Trust v. Ernst & Young, LLP*, 906 A.2d 168, 174, 206 (Del. Ch. 2006) (noting that "a growing body of federal jurisprudence . . . has recognized that those federal courts . . . became infatuated with the concept [but] did not look closely enough at the object of their ardor"), *aff'd* 931 A.2d 438 (Del. Sup. Ct. 2007) (adopting the Chancery Decision *in toto*); *In re SI Restructuring, Inc.*, 532 F.3d 355, 363 (5th Cir. 2008) ("We agree with the Third Circuit Court of Appeals, which recently concluded [in *CitX*] that deepening insolvency is not a valid theory of damages."); *In re Troll Communications, LLC*, 385 B.R. 110, 122 (Bankr. D. Del. 2008) ("deepening insolvency has been rejected as a valid cause of action or theory of damages under Delaware law"); *In re Wheland Foundry, LLC*, 2008 WL 2952483 (Bankr. E.D. Tenn. July 9, 2008); *In re Avado Brands, Inc.*, 358 B.R. 868, 886 (Bankr.

N.D. Tex. 2006).[4]

     b. *Kirschner also fails to allege that Wachovia caused the damages resulting from the malfeasance of the Insiders.* While Kirschner may well properly have alleged claims against Le-Nature's Insiders for malfeasance, he has not alleged Wachovia caused that malfeasance or otherwise damaged Le-Nature's. Analyzing a complaint in which the trustee attempted to assert claims against a lender that provided funding to an entity being looted by insiders, the court in *In re Global Service Group LLC* explained in a single sentence why the trustee had no claim against the lender: "Notably, the Complaint does not allege or imply that Atlantic Bank extended the loans *to enable* the Goldmans [the insiders] to siphon off the funds or commit some other wrong." 316 B.R. 451, 459 (Bankr. S.D.N.Y. 2004) (emphasis added). Thus, as the *Global Service* court explained, the trustee could not demonstrate that the lender caused the debtor any harm. *Id.* at 461. Cutting to the heart of the issue, the court declined to impose liability "because the bank made a loan it knew or should have known [the debtor] could never repay," explaining that "[t]his may be bad banking, but it isn't a tort." *Id.* at 459; *see also In re VarTec Telecom, Inc.*, 335 B.R. 631, 636-46 (Bankr. N.D. Tex. 2005) (endorsing, in a thoughtful opinion, the logic and holding of *Global Service*); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 50-52 (2d Cir. 2005) (rejecting arguments that the lender aided and abetted the insiders' fraud in part because "damages remains an element of the cause of action").

---

[4] The Fifth Circuit also cites the following cases in accord: *Coroles v. Sabey*, 79 P.3d 974, 983 (Utah Ct. App. 2003) (declining to recognize deepening insolvency as sufficient damages); *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 812 (Minn. Ct. App. 2007) (deepening insolvency is not a recognized form of corporate damage in Minnesota); *Comm. Fin. Servs., Inc. v. J.P. Morgan Securities, Inc.*, 152 P.3d 897, 900 (Okla. Ct. App. 2006) (deepening insolvency is not a recognized measure of damages in Oklahoma). *Thabault v. Chait*, 541 F.3d 512 (3d Cir. 2008), reached a contrary result, but only because the court was applying New Jersey law and was therefore required to defer to a prior decision of the New Jersey Supreme Court.

Kirschner does not allege that Wachovia enabled the fraud at Le-Nature's. Thus, as *Global Service* explains, Kirschner has not alleged facts showing that Wachovia damaged Le-Nature's. The analysis of *Global Service* is compelling. Otherwise, any bank that made a loan to, facilitated financing for, or assisted in failed attempts to sell either an insolvent debtor or a debtor being looted by the criminal acts of its management would be subject to a claim by a trustee standing in the shoes of the debtor. Such a rule of law would not only impose unfair and unreasonable liability on banks, it would have an undesirable chilling effect on banking transactions generally. *See VarTec*, 335 B.R. at 646 ("The willful and malicious lending of money is not a tort in Texas and likely will not be recognized as one anytime soon . . ."). Thus, Kirschner's purported common law claims share a universal deficiency – failure to allege facts sufficient, under *Ashcroft*, to show that Wachovia caused damages to Le-Nature's. Thus, all of Kirschner's common law claims should be dismissed under Rule 12(b)(6).

    2.    *RICO Claims.*  Both Kirschner's RICO claims have the same fatal defect as his common law claims – failure to plead damages causation. Every RICO plaintiff must satisfy the requirements of 18 U.S.C. §1964, which provides that a person "injured in his business or property by reason of a violation of section 1962" may bring a civil action for relief. A plaintiff has standing to pursue civil RICO claims only when the plaintiff can plead and prove a "direct causal connection" between the RICO violation and the injury to its business or property. *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006); *see also Holmes v. Secs. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992); *Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429 (3d Cir. 2000); *Steamfitters Local Union v. Philip Morris, Inc.,* 171 F.3d 912 (3d Cir. 1999). While the Supreme Court originally used the name "proximate causation" to describe this requirement in *Holmes v. SIPC,* 503 U.S. 258, 268 (1992), that term is somewhat misleading because the

causal link must be much more direct than would even be sufficient to satisfy a common law

proximate causation requirement. *See Allegheny Gen. Hosp.*, 228 F.3d at 443. Numerous RICO

claims are dismissed for failure to plead that the alleged RICO violations proximately caused

damages. *See, e.g., Anza*, 547 U.S. at 461; *Longmont United Hosp. v. St. Barnabas Corp.*, 2009

WL 19343, at *3 (3d Cir. Jan. 5, 2009); *Vavro v. Albers*, 2006 WL 2547350, at *20-27 (W.D. Pa.

Aug. 31, 2006).

    *In re Jamuna Real Estate, LLC*, 392 B.R. 149, 171 (Bankr. E.D. Pa. 2008), is factually

similar to this action and illustrates the application of these concepts to a claim by bankruptcy

trustees who, like Kirschner, sought to sue on behalf of debtor entities. In *Jamuna*, individuals

obtained non-recourse loans for the benefit of corporations they controlled in order "to convert

the proceeds of such loans to the use of non-borrowers by various fraudulent means, to default

on such loans, and to frustrate efforts to collect those obligations." *In re Jamuna Real Estate,*

*LLC,* 365 B.R. 540, 548 (Bankr. E.D. Pa. 2007) (prior decision by the court reciting the facts).

When a defrauded lender and bankruptcy trustees for two of the borrowers attempted to assert

RICO claims against the wrongdoers, the court rejected the claims of the bankruptcy trustees for

lack of RICO standing, explaining that, while the lender's damages were readily identifiable and

measured by the loan loss, "ascertaining the damages to the Debtor corporations is not so

simple." *Jamuna*, 392 B.R. at 171. In holding that the trustees could not state a claim on behalf

of the debtor corporations, the court explained:

> What is alleged as actionable conduct is mail and wire fraud. That certainly
> harmed [the lender] . . . because the [lender] has yet to be paid back its loan and
> has incurred substantial collection costs. But the damage alleged to have been
> suffered by the Debtor corporations involved diversion of funds, misuse of
> bankruptcy, and deepening insolvency. . . . None of that resulted directly from
> mail or wire fraud. Those harms were the result of other, independent common
> law torts such as conversion or breach of fiduciary duty. . . . . Like the lack of
> direct harm resulting from the Defendants' fraud, there is absent here any nexus

between racketeering and the damages which the Bankruptcy Trustees allege.

*Id.* at 172. The *Jamuna* court also rejected the same illogical deepening insolvency allegations that Kirschner makes here. *Id.* ("[T]he Third Circuit has recently explained that deepening insolvency is . . . not a theory of damages [citing *CitX*]. So even assuming that the Bankruptcy Trustees otherwise had RICO standing, they could not recover damages for an increased level of insolvency.").

The precedent and logic of the *Jamuna* decision applies with full force here. In *Jamuna*, the bankruptcy trustees could not plead proximate causation necessary to state a RICO claim because the defendants' fraudulent scheme to obtain and misdirect loans had not directly harmed borrowers – the direct harm was suffered by creditors of those borrowers. *Id.* at 172. Here, Kirschner similarly has not alleged direct harm to Le-Nature's. Kirschner asserts that Wachovia's alleged acts of wire fraud and bank fraud (as well as those of the Insiders) were targeted not at Le-Nature's, but at potential and existing lenders and noteholders. Compl. ¶¶ 194-96 & 204-06. Thus, his complaint explicitly relies on the same kind of alleged harm to creditors that the *Jamuna* court held to be insufficient to state a RICO claim on behalf of the debtors. *See also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998) (explaining that RICO proximate causation is unlikely to exist unless the plaintiff is the direct target of the fraudulent scheme, as carried out by the predicate acts alleged to give rise to RICO claims); *Northwestern Human Servs., Inc. v. Panaccio*, 2004 WL 2166293, at *7 (E.D. Pa. Sept. 24, 2004) (holding proximate cause was lacking on RICO claim because plaintiff was an indirect, rather than direct, victim of the defendant's fraud). Kirschner has not and cannot allege that any of Wachovia's actions directly caused damage to Le-Nature's, so he cannot bring RICO

claims against Wachovia. *Id.*[5]

**B.    Kirschner's common law and RICO claims each suffer other independent deficiencies also requiring dismissal.**

1. *Kirschner has failed to allege fraudulent misrepresentation or justifiable reliance so his claim for common law fraud against Wachovia must fail.* Kirschner attempts to allege fraud against Wachovia, but does not allege that Wachovia made any misrepresentations to Le-Nature's upon which Le-Nature's relied to its detriment. Of course, Kirschner cannot make such an allegation because his fraud claim is illogical – it is Le-Nature's that defrauded Wachovia, as Andreycak admits in her guilty plea. Any allegation that Wachovia defrauded third parties (such as lenders or noteholders who extended credit to Le-Nature's) is irrelevant here because, as explained above, Kirschner can only bring claims that belong to Le-Nature's.

Straining to reach for a fraud cause of action, Kirschner manages but a single sentence that is potentially relevant, stating: "Although many of . . . Wachovia's fraudulent misrepresentations were directed at Le-Nature's' existing or future lenders, Le-Nature's also relied on those misrepresentations." Compl. ¶ 240. This single allegation fails to satisfy Federal Rule 9(b). Kirschner must plead the who, what, where, and when of any alleged fraudulent misrepresentation, and this he completely fails to do. *See In re Cendant Corp. Sec. Litig.*, 190 F.R.D. 331, 335 (D.N.J. 1999) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)). He does not even identify what representative of Le-Nature's supposedly heard a fraudulent misrepresentation (or was misled by a fraudulent omission) by a Wachovia employee.

---

[5] In determining whether proximate causation has been alleged, the Supreme Court has also examined (i) the difficulty of determining damages caused by remote actions versus other factors, (ii) the risk of duplicative recoveries if indirectly injured persons are allowed recovery, and (iii) the potential for other plaintiffs to pursue the alleged RICO violations. *Vavro*, 2006 WL 2543350 at *27; *see also Anza*, 547 U.S. at 458-61. Here all three factors weigh heavily against Kirschner, given the pendency of numerous direct actions filed by creditors on their own behalf.

*See Lum v. Bank of Am.*, 361 F.3d 217, 224-25 (3d Cir. 2004) (affirming dismissal based in part on plaintiffs' failure to plead "who made a misrepresentation to whom"). This is not surprising because Le-Nature's was not the victim – it perpetrated the fraud.

Kirschner's fraud claim suffers another fatal defect, as well. To survive a motion to dismiss a fraud claim, Kirschner must also allege the particulars of how Le-Nature's justifiably relied on any alleged misrepresentation. *ScanSource, Inc. v. Datavision-Prologix, Inc.*, 2005 WL 974933, at *3 (E.D. Pa. April 26, 2005); *see also Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002) ("To be justifiable, reliance upon the representation of another must be reasonable.") (citing Restatement (Second) of Contracts §164, cmt. d ("A misrepresentation, even if relied upon, has no legal effect unless the recipient's reliance on it is justified.")). This he also fails to do – there are no details at all in the complaint of any reliance by Le-Nature's on any representation by Wachovia. *See id.* at *3 (dismissing claim for failure to plead reliance with required specificity because there were "no details whatsoever about the contours of this asserted justifiable reliance").

2. *Claims for aiding and abetting fraud are not cognizable under Pennsylvania law.* Kirschner's claims for aiding and abetting fraud must be dismissed because Pennsylvania law does not recognize any such cause of action. *Fleet Nat'l Bank v. Boyle*, 2005 WL 2455673, at *8 (E.D. Pa. Sept. 12, 2005) (dismissing aiding and abetting claim, because "[t]he Pennsylvania Supreme Court has never recognized a cause of action for aiding and abetting fraud"); *WM High Yield Fund v. O'Hanlon*, 2005 WL 1017811, at *14 (E.D. Pa. Apr. 29, 2005) (dismissing aiding and abetting fraud claim because Pennsylvania do permit such an action); *S. Kane & Son Profit Sharing Trust v. Marine Midland Bank*, 1996 WL 325894, at *9 (E.D. Pa. June 13, 1996); *Amato v. KPMG LLP*, 433 F. Supp. 2d 460, 473-74 (M.D. Pa. 2006); *see also Sompo Japan Ins., Inc. v.*

*Deloitte & Touche, LLP*, 2005 WL 1412741, at *2-5 (N.C. Super. Ct. June 10, 2005) (explaining why no cause of action for aiding and abetting fraud should be recognized even if other aiding/abetting torts are allowed).

3.    *If the tort of aiding and abetting breach of fiduciary duty exists in Pennsylvania, Kirschner has failed to state a claim because he does not allege knowledge or assistance by Wachovia.*    Several independent bases also support dismissal of Kirschner's claim for aiding and abetting a fiduciary breach.    To start, whether such a tort is even recognized and cognizable under Pennsylvania law is unsettled.    In light of the failure of the Supreme Court of Pennsylvania ever to recognize such a cause of action, many courts have held that no such claim exists.    *See Reis v. Barley, Snyder, Senft & Cohen, LLC*, 484 F. Supp. 2d 337, 351 n.17 (E.D. Pa. 2007) (citing numerous cases).    Other courts have relied on lower state court decisions in finding that such a claim can be asserted if pleaded correctly.    *See id.* at n.16 (citing cases, including *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003)).

Pennsylvania courts that have recognized a claim for aiding and abetting a fiduciary breach have held that it comprises three elements:    (i) a breach of a fiduciary duty owed to another; (ii) knowledge of the breach by the aider and abettor; and (iii) substantial assistance or encouragement by the aider and abettor in effecting that breach.    *Koken*, 825 A.2d at 732 (citing and relying on Restatement (Second) of Torts §876(b) (1979)).    Kirschner has not alleged elements (ii) or (iii).

First, Kirschner's allegation that "Wachovia knew, *or knowingly ignored*, the fact that Podlucky and the Insiders were conducting a fraud on Le-Nature's . . . " is not sufficient to state a claim for aiding and abetting because courts applying the principles of §876(b) of the Restatement have uniformly held that a plaintiff must allege that the defendant had ***actual***

*knowledge* of the breach of fiduciary duty. *See, e.g., Kolbeck v. LIT Am. Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd* 152 F.3d 918 (2d Cir. 1998); *Hashimoto v. Clark*, 264 B.R. 585, 598 (D. Ariz. 2001) ("requisite degree of knowledge for an aiding and abetting claim is actual knowledge").[6] For example, in *In re Sharp Int'l Corp.*, 302 B.R. 760 (E.D.N.Y. 2003), *aff'd,* 403 F.3d 43 (2d Cir. 2005), a liquidating trustee of a bankruptcy estate attempted to assert a claim similar to Kirschner's for aiding and abetting. In *Sharp*, the defendant had strong suspicions of possible fraud and actively encouraged the debtor to pay off its loan with new financing. *Id.* at 771, 775. The Bankruptcy Court rejected the claim, explaining that: "[A]ssertions that an alleged aider and abettor harbored well-founded – but unconfirmed – suspicions of the primary violator's wrongdoing are not sufficient to plead actual knowledge simply because, with the benefit of hindsight, those suspicions turned out to be correct." *Sharp*, 302 B.R. at 771. Here, by repeatedly adding the alternative "or should have known," the complaint carefully avoids alleging that Wachovia actually knew Podlucky and the Insiders were engaging in a breach of their fiduciary duty to Le-Nature's. Thus, Kirschner's allegations are insufficient to state a claim for aiding and abetting. *See id.*; *Renner v. Chase Manhattan Bank,* 2000 WL 781081, at *12 (S.D.N.Y. June 16, 2000) (complaint alleged "no factual basis for the assertion that [defendant bank's] officials actually knew the fraud [they suspected] was, in fact, occurring"); *Kobleck*, 939 F. Supp. at 247-48 ("knowledge of accusations against him, without more" did not support an inference of actual knowledge of the fraud).

---

[6] Section 876(b) imposes aiding and abetting liability if a party "knows that the other's conduct constitutes a breach of duty. . . ." Restatement (Second) of Torts §876(b). Other subsections make it clear that the term "knows" does not include recklessness. When the drafters of the Restatement intended to include recklessness as an element of liability, they said so explicitly. *See, e.g., id.* §877(c) (liability of one party "permits the other to act upon his premises or with his instrumentalities, knowing *or having reason to know* that the other is acting or will act tortiously") (emphasis added).

Second, to plead the requisite "substantial assistance or encouragement" to satisfy the second element of the tort, Kirschner must allege that Wachovia affirmatively helped the Insiders breach their fiduciary duties. *Sharp*, 302 B.R. at 774. "In general, inaction – *e.g.*, a failure to investigate or to alert third parties about another's misconduct – does not constitute substantial assistance, unless the defendant owes a special duty directly to the plaintiff." *Id.*, 403 F.3d at 50-51 (holding that even if lender had actual knowledge of the fraud, insisted that debtor obtain new financing to pay off the lender, and concealed its knowledge from other lenders even while consenting to the added debt, no claim for aiding and abetting could be alleged). Even though the lender in *Sharp* " knew that there would likely be victims of the . . . fraud, and arranged not to be among them," the Second Circuit rejected the argument that the lender could be liable for aiding and abetting. 403 F.3d at 52.

Kirschner alleges no facts showing that Wachovia helped management breach these fiduciary duties. Instead, Kirschner makes allegations that Wachovia did not discover or report the fraud to Le-Nature's' directors, "concealed from current and future *lenders* the numerous red flags at Le-Nature's. . .," and "facilitated an ever-growing amount of borrowings that extended Le-Nature's operations years beyond the point at which those operations should have been shut down and liquidated." Compl. ¶ 301 (emphasis added). These allegations are insufficient to state a claim against Wachovia for aiding and abetting fiduciary breaches. *See Sharp*, 403 F.3d. at 50-51.

4. *Kirschner has failed to assert fiduciary duty claims.* Kirschner has failed to allege facts sufficient to establish a fiduciary relationship between Wachovia and Le-Nature's. Pennsylvania law follows the well recognized principle that a lender is not a fiduciary of the borrower. *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992), *aff'd* 981

F.2d 1248 (3d Cir. 1992) (*citing Grace v. Moll*, 132 A. 171, 171-72 (Pa. 1926). The law presumes "that the relationship between lenders and borrowers is conducted at arms-length and the parties are each acting in their own interest." *Temp-Way Corp.*, 139 B.R. at 318. A fiduciary duty to a borrower may only arise if the lender gains substantial control over the borrower's business affairs. *Id.* This control is demonstrated when the lender "was involved in the actual day-to-day management and operations of the borrower" or "had the ability to compel the borrower to engage in unusual transactions." *Id*; *Blue Line Coal Co., Inc. v. Equibank*, 683 F. Supp. 493, 496-97 (E.D. Pa. 1988).

Kirschner does not allege that Wachovia dominated or controlled Le-Nature's. Moreover, the complaint contains *no* allegations that Wachovia was involved in the day-to-day management and operations of Le-Nature's, or that it had the ability to compel Le-Nature's to engage in unusual transactions. Rather, the complaint alleges only that Wachovia offered advice to Le-Nature's, and that Le-Nature's, trusting Wachovia's experience and expertise, gave Wachovia "control over several of its financial decisions, including the raising of debt capital." Compl. ¶ 288. These allegations are not sufficient to create a fiduciary duty. *See Temp-Way Corp.*, 139 B.R. at 319 (holding bank had no fiduciary duty where there was no evidence that it exerted "an overmastering influence and domination" of the borrower); *In re Worldclass Processing, Inc.*, 323 B.R. 164, 174 (Bankr. W.D. Pa. 2005) ("Courts 'have permitted lenders to engage in a broad range of conduct to protect their investments without equating such financial controls with the degree of control necessary to impart liability to the lender.'"). In fact, Kirschner's allegations show just the opposite – that Podlucky and the Insiders had complete domination and control over Le-Nature's and called the shots for the company on the financings with Wachovia. *See* Compl. ¶¶ 55, 57, 276-78.

The facts alleged in the complaint reflect a typical relationship between a lender and a borrower engaged in high dollar transactions, and the ongoing communications that result from such an arms-length relationship. Under Pennsylvania law, "[t]he mere monitoring of the borrower's operations and the proffering of management advice by lenders, without more, does not constitute control." *Bohm v. Commerce Union Bank*, 794 F. Supp. 158, 164 (W.D. Pa. 1992) ("Monitoring operations, offering management advice, and even taking an active part in management of the borrower is insufficient."); *James E. McFadden, Inc. v. Baltimore Contractors, Inc.,* 609 F. Supp. 1102, 1108 (E.D. Pa.1985) (finding that action taken by a creditor to minimize its risk on a loan does not constitute total and absolute control over the debtor). Similarly, the duration of the relationship between Wachovia and Le-Nature's is irrelevant to the question of whether a fiduciary duty was owed. *See In re Cara Corp.*, 148 B.R. 760, 772 (Bankr. E.D. Pa. 1992) ("[T]he 'long standing duration' of the Debtor's relationship with the Bank is of virtually no relevance in establishing a fiduciary relationship.").

If Kirschner's complaint were sufficient to allege that Wachovia had a fiduciary duty to Le-Nature's, then full service banks would, as a general rule, have fiduciary duties to most of their customers. As the above cases hold, the law recognizes no such duty.

5. *Kirschner has not properly alleged negligence or negligent misrepresentation claims against Wachovia.* Kirschner's negligence and negligent misrepresentation claims suffer numerous defects. To start, Kirschner has failed to allege facts demonstrating that Wachovia owed any duty to Le-Nature's, which he must (under *Ashcroft* and *Twombly*) if he is to assert negligence and negligent misrepresentation claims. "The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277-80 (Pa. 2005) (negligent misrepresentation,

"like . . . any action in negligence, requires the existence of a duty owed by one party to another"). As discussed above, Wachovia owed no duty to Le-Nature's. *See also Henry v. First Fed. Sav. & Loan Ass'n*, 459 A.2d 772, 774 (Pa. Super. Ct. 1983) ("[O]rdinarily, the relationship between borrower and lender does not create a confidential relationship") (*citing Grace v. Mall*, 132 A. at 171) (holding that borrower/lender relationship does not create a confidential relationship or duty for purposes of imposing liability)). Because Kirschner has failed to allege any facts sufficient to modify this ordinary lender/borrower relationship, Kirschner's negligence and negligent misrepresentations claims fail.

Kirschner's claims also fail because a plaintiff cannot bring negligence claims, including a claim for negligent misrepresentation, for harm caused by a breach of duties in a contract. The "gist of the action" doctrine in Pennsylvania bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Danlin Mgmt. Group, Inc. v. School Dist. of Philadelphia*, 2005 WL 2140314, at *1 (Pa. Commw. Ct. Aug. 29, 2005) (citing *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). Kirschner's tort allegations stem from the relationship created between Wachovia and Le-Nature's pursuant to engagement letters and the various Credit Agreements entered between the parties. *See* Coble Decl., Ex. B-G. Without these contracts, no relationship would have existed. Thus, pursuant to the "gist of the action" doctrine, Le-Nature's potential claims against Wachovia are limited to contract claims, and the torts alleged – negligence and negligent misrepresentation – must be dismissed. *Danlin Mgmt. Group*, 2005 WL 2140314 at *2-3.

In addition, the economic loss rule "precludes recovery in negligence actions for injuries which are solely economic." *David Pflumm Paving & Excavating, Inc. v. Foundation Servs Co.,* 816 A.2d 1164, 1170 (Pa. Super. Ct. 2003) (holding the economic loss doctrine bars claims for negligent misrepresentation which result in solely economic loss); *Aikens v. Baltimore & Ohio R.R. Co.,* 501 A.2d 277, 279 (Pa. Super. Ct. 1985) (same); *Freedom Props., L.P. v. Lansdale Warehouse Co. Inc.,* 2007 WL 2254422, at *6-7 (E.D. Pa. Aug 2, 2007) (same) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir. 1995). Kirschner alleges purely economic injury to Le-Nature's in his negligence and negligent misrepresentation claims. Compl. ¶ 312.

Finally, the negligent misrepresentation claim requires proof of reliance, so it also fails for lack of any allegations that Wachovia made any representations to Le-Nature's, and for lack of any allegations that Le-Nature's reasonably relied on any representations – *i.e,* from the same deficiencies as does Kirschner's fraud claim. *See Bilt-Rite Contractors,* 866 A. 2d at 277 & discussion at  p. 14, *supra.*

6. *Kirschner has not properly alleged a civil conspiracy claim against Wachovia.* To state a cause of action for civil conspiracy, Kirschner must allege that "two or more persons combined or agreed with the intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.,* 412 A.2d 466, 472 (Pa. 1979); *Kist v. Fatula,* 2007 WL 2404721, at *9 (W.D. Pa. Aug. 17, 2007). He must plead facts that, at a minimum, suggest some kind of agreement or common intent. *Nelson v. DeVry, Inc.,* 2008 WL 2845300, at *3-4 (E.D. Pa. Jul. 22, 2008) (citing *Skipworth v. Lead Indus. Ass'n,* 690 A.2d 169, 174 (Pa. 1997); *Farber v. City of Paterson,*  440 F.3d 131, 134 (3d Cir. 2006) (applying Pennsylvania law)).  Bare allegations of conspiracy, without more, are insufficient. *Brown v.*

*Blaine*, 833 A.2d 1166, 1173 (Pa. Commw. Ct. 2003) (dismissing claim because plaintiff makes bare allegations of an agreement, without sufficient facts to support such allegation). Moreover, attempts to assert conspiracy claims involving fraud, as alleged here, are subject to Rule 9(b) and must be stated with particularity. *Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) (holding plaintiff's complaint "must plead the entire factual basis – the 'who what, when, where and how' elements – underlying their claim of conspiracy to commit fraud").

Kirschner fails to make any allegations, other than conclusory allegations, of agreement or concerted behavior, so his conspiracy claim fails. *See Nelson*, 2008 WL 2845300 at *3-4 (dismissing civil conspiracy claim because plaintiff offered only conclusory allegations of agreement or concerted behavior); *Kist*, 2007 WL 2404721 at *9 ("Simply alleging the existence of an agreement or conspiracy is not enough."). The complaint states only that "Podlucky, the Insiders and Wachovia conspired to make the material misrepresentations and to omit to disclose the material facts herein alleged." Compl. ¶ 252. Kirschner fails to allege an agreement at all, and completely fails to plead facts "such as meetings, conferences, [or] telephone calls" necessary to state a claim for civil conspiracy. *Rouse v. II-VI, Inc.*, 2007 WL 1007925, at *15 (W.D. Pa. Mar. 30, 2007) (internal citations omitted); *see also Nelson*, 2008 WL 2845300 at *3-4 (dismissing conspiracy claim because plaintiffs failed to provide factual allegations as to the time, place, or participants of any agreement between the defendants, allegations of who conspired, or other facts that plausibly suggest that defendants acted with a common purpose); *Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Commw. Ct. 1991) (holding that plaintiff failed to state a civil conspiracy claim where, though he alleged parallel conduct between the defendants, he did not allege any facts from which one could infer conspiratorial conduct).

Moreover, under Pennsylvania law, Kirschner must also allege malice, *i.e.*, an intent to

injure, to state a conspiracy claim. *Fleet Nat'l Bank v. Boyle*, 2005 WL 2455673, at *12 (E.D. Pa. Sept. 12, 2005) (citing *Skipworth*, 640 A.2d at 174). This element requires a showing that "the sole purpose of the conspiracy is to cause harm to the party who has been injured." *Fleet Nat'l Bank*, 2005 WL 2455673 at *12; *Thompson Coal Co.*, 412 A.2d at 472. Where the facts show that a person acted to advance his own business interest, and not solely to injure the plaintiff, those facts negate any alleged intent to injure. *Becker v. Chicago Title Ins. Co.*, 2004 WL 228672, at *13 (E.D. Pa. Feb. 4, 2004) (dismissing claim for failure to allege the requisite malice or intent to injure). Kirschner has failed to allege that the "sole purpose" of any alleged conspiracy with Podlucky and Le-Nature's' management was to harm Le-Nature's, and has not alleged in any respect that Wachovia acted with that intent. *See WM High Yield Fund*, 2005 WL 1017811 at *14 (dismissing conspiracy claim where complaint alleges facts that show person acted to advance his own business interests, those facts "constituted justification and negate any alleged intent to injure"). To the contrary, in alleging that that Andreycak pleaded guilty to defrauding Wachovia, Kirschner acknowledges that the sole victim of the alleged conspiracy was not Le-Nature's. Thus, Kirschner's claim for civil conspiracy should be dismissed.

7. *Kirschner has failed to allege that Wachovia directed or controlled the RICO enterprise, so his purported §1962(c) claim fails.* RICO §1962(c) makes it unlawful for "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. §1962(c). No liability arises under this section unless a defendant has "participated in the *operation or management* of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 183 (1993) (emphasis added) (holding that accountants who prepared audited financial statements and presented information to board of directors of corporation not liable under

§1962(c) because they did not participate in the operation or management of the enterprise). A defendant must have participated in the operation or management of the *enterprise's* affairs, not just their *own* affairs." *Id.* at 185. The Third Circuit has explained "[t]he operation or management test goes to [the] nexus [between the defendant and the affairs of the enterprise]. In other words, the person must knowingly engage in *directing* the enterprise's affairs through a pattern of racketeering activity." *Univ. of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (internal quotations omitted); *see also Reves*, 507 U.S. at 183. Providing services to the enterprise, even if those services further the goals of the enterprise, is not sufficient. Courts consistently dismiss claims against bankers, accountants, and lawyers who provide professional services which assist the RICO enterprise for lack of sufficient allegations that these defendants participated in the operation or management of the enterprise. *See, e.g., Peat*, 996 F.2d at 1539 (holding that the district court did not err in dismissing a RICO claim against the company's auditor because the complaint only alleged that they had performed deficient audits and other accounting and consulting services).

Kirschner alleges that Podlucky, the Insiders and Wachovia were associated in fact and comprised the "Podlucky Enterprise." Compl. ¶ 191. Kirschner alleges that Wachovia and the others in the Podlucky Enterprise acted to further the "Fraudulent Scheme" – that is, "a form of a 'Ponzi' scheme of constantly raising new money and incurring ever-increasing debts to refinance investors, thereby cultivating an illusion that a legitimate profit-making business existed." Compl. ¶ 2. The complaint provides no description of the Podlucky Enterprise, how it operated, what roles each of the alleged associates played, or who directed or controlled the Enterprise's affairs. Kirschner relies solely on cursory allegations that "each of the RICO Associates conducted, or participated in, the affairs of the Podlucky Enterprise," *Id.* ¶ 192, and that the

predicate acts "were performed at the direction of, and/or were foreseeable to the RICO Associates," *id.* ¶ 195, to support his §1962(c) claim. These allegations are woefully inadequate under either Rule 9(b) or the pleading standards set forth by the Supreme Court in *Ashcroft* and *Twombly*. *See McCullough v. Zimmer, Inc.*, 2009 WL 775402 (W.D. Pa. 2009) (dismissing RICO claim when enterprise allegations lacked clarity or specificity, and failed to describe the "decision-making process"); *Heise v. Porcelli*, 2008 WL 2439884, at *4 (M.D. Fla. June 13, 2008) (dismissing complaint for failure to plead operation or management of the RICO enterprise because complaint lacked any specific facts to support that defendants had some part in directing the affairs of the enterprise, but only asserted that the defendants "participated directly or indirectly in the conduct of the RICO enterprise's affairs").

The complaint does provide numerous details about the financial services Wachovia provided for Le-Nature's. Providing such services is not a basis to impose RICO liability, however, regardless of "how important and indispensable" the services are to the wrongdoers. *Peat*, 996 F.2d at 1539. In *Peat*, the Third Circuit held that "merely performing what are generic financial and related services to an insurance company, even if they are later found to be deficient" does not result in liability under RICO §1962(c). 996 F.2d at 1539-40; *see also Dongelewicz v. PNC Bank N.A.*, 104 Fed. Appx. 811 (3rd Cir. 2004) (unpublished) (a lender who supplied financing and then took steps to preserve its collateral did not violate §1962(c) because it did not participate in the operation or management of the alleged RICO enterprise); *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) (allegations that a bank approved over 500 overdrafts, misrepresented the status of accounts to investors, and helped its customer conceal its fraudulent scheme were insufficient to state a RICO claim under §1962(c)); *Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008) (holding that

the amended complaint failed to "allege facts sufficient to support a plausible inference that the Defendants exceeded the boundaries of the provision of professional services").

In *Fidelity Federal Sav. & Loan Assoc. v. Felicetti*, the District Court thoroughly analyzed the *Reves* decision and concluded that providing beneficial services does not result in RICO liability even when the complaint alleges that the defendant was a knowing participant in the fraud. 830 F. Supp. 257, 260 (E.D. Pa. 1993). Moreover, as the Eighth Circuit recently noted, there are no known "post-*Reves* case in which a bank or financial services company was held to have conducted the affairs of a RICO enterprise that was an unrelated customer of the bank." *Dahlgren* v. *First Nat'l Bank of Holdrege*, 533 F.3d 681, 690 (8th Cir. 2008), *cert. denied* ___ U.S. ___, 129 S. Ct. 1041 (2009). Thus, even if Kirschner were able to allege RICO damages causation, *see supra* pp. 11-13, the §1962(c) claim should still be dismissed because the complaint is devoid of any allegation that Wachovia directed the affairs of the Podlucky Enterprise in any way that would afford a basis for liability under *Reves.* 507 U.S. at 183.

8. *Kirschner has failed to allege that Wachovia objectively manifested an agreement to participate, directly or indirectly, in the affairs of the RICO enterprise, so his §1962(d) claim fails for this reason.* Kirschner's §1962(d) claim also suffers an independent defect, apart from his failure to allege RICO damages causation. To state a RICO conspiracy claim, "the plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose, [including] an agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." *Jones, Gregg, Creeham & Gerace,* 2008 WL 5129916 at *3. Kirschner's cursory allegations that "the RICO Associates willfully, knowingly, and unlawfully did conspire, combine, confederate, and agree together to violate 18 U.S.C. §1962(c)" are plainly inadequate.

Compl. ¶ 203.

"Bare allegations of conspiracies described in general terms" are subject to dismissal. *Jones, Gregg, Creeham & Gerace,* 2008 WL 5129916 at *7. Rather, a "[p]laintiff must allege facts to show that each Defendant objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts." *Id.* Kirschner alleges no such facts. The complaint is wholly devoid of any details to support any inference that Wachovia agreed either to commit a RICO violation or to assist Podlucky or the Insiders in their wire fraud and bank fraud. Nor does the complaint allege that Wachovia knew the alleged predicate acts were part of a pattern of racketeering. The failure to allege any details surrounding the purported agreement to conspire is particularly fatal when "the essence of a conspiracy is 'an agreement to commit an unlawful act.'" *U.S. v. Jimenez Recio,* 537 U.S. 270, 274 (2003); *see also Tel-Phonic Servs, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1140 (5th Cir. 1992) (dismissing the RICO conspiracy claim and agreeing with the Second Circuit that "'because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement'"). Thus, Kirschner's RICO conspiracy claim should be dismissed.

    **C.**    **In Pari Delicto.**

All of the analysis above explains why Kirschner cannot state a common law or RICO claim against Wachovia. Even if Kirschner could state claims, those claims would be subject to dismissal under the defense of *in pari delicto*. Other defendants are briefing the doctrine of *in pari delicto*. Wachovia will not repeat their arguments here, except to note that if any claims against any defendants are dismissed under the doctrine, all common law *and* RICO claims Kirschner seeks to assert against Wachovia should be dismissed as well. *Official Committee of*

*Unsecured Creditors of PSA v. Edwards*, 437 F.3d 1145, 1154-56 (11th Cir. 2006) (affirming dismissal of RICO claims by bankruptcy trustee on *in pari delicto* grounds).

## III. BANKRUPTCY CLAIMS

Kirschner seeks to recover every payment that Le-Nature's made to Wachovia (over more than three years) as a preference or fraudulent conveyance. Both of these claims suffer a common defect. Wachovia received all the payments from Le-Nature's as Administrative Agent and immediately passed the funds out to various members of a lending syndicate. Compl. ¶¶ 60, 73, 76, 82, 97-98, 110-11, 123; Coble Decl., Ex. E at 10-45 & Ex. F at 50. Thus, under 11 U.S.C. §550, Wachovia was a mere conduit for these payments and cannot be liable for the return of the payments passed along to other lenders. *In re Blatstein*, 260 B.R. 698, 715 (E.D. Pa. 2001) (a "commercial entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee"); *Bonded Fin. Servs., Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988) (bank not transferee when it "held the check only for the purpose of fulfilling an instruction to make the funds available to someone else"). Under *Ashcroft* and *Twombly*, an overbroad claim seeking recovery from Wachovia of hundreds of millions of dollars that Wachovia received as agent for and passed on to other lenders cannot be sustained and should be dismissed. *See Twombly*, 127 S. Ct. at 1967.

### A.    Additional Defects in Preference Claims.

Kirschner seeks to recover eight payments totaling $257,787,991.34 that Le-Nature's allegedly made to Wachovia in the 90-day period preceding the bankruptcy petition. Compl. Ex. A at 4-5. Le-Nature's made five of these payments, totaling $255,896,641.61, on September 1, 2006 (the "September 1 Payments"). Le-Nature's made the September 1 Payments with a new

loan (the "September 2006 Facility") amending and restating its prior loan, and initially funded

entirely by Wachovia for the express purpose of paying off the prior loan. *Id.*; Coble Decl., Ex.

F at p. 1 & 82 (§6.1, requiring the prior loan to be fully paid off). Thus, the September 1

Payments are not preferences for two reasons.

     1. *Earmarking doctrine.* A preference must be a "transfer of an interest of the debtor in

property." 11 U.S.C. §547(b). Under the "earmarking doctrine," funds loaned to a debtor under

a new credit facility to pay off an existing loan do not become property of the estate; such "a

transfer merely substitutes one creditor for another." *In re Buffalo Molded Plastics, Inc.,* 344

B.R. 394, 399 (Bankr. W.D. Pa. 2006); 5 Collier On Bankruptcy ¶ 547.03[2], p. 547-24

(footnote omitted) (explaining that the "funds are said to be "earmarked" and the payment is held

not to be a voidable preference").

     The earmarking doctrine applies when: (1) there is an agreement between the lender and

the debtor that the new funds will be used to pay a specified antecedent debt, (2) there is

performance of that agreement according to its terms, and (3) the transaction viewed as a whole

does not result in a diminution of the bankruptcy estate. *Buffalo Molded Plastics,* 344 B.R. at

399. The complaint admits the doctrine applies here. It acknowledges the agreement to pay off

the existing debt, alleging that Le-Nature's closed the September 2006 Facility for the purpose of

replacing the existing "December 2005 Facility," which was in default. Compl. ¶¶ 120, 123; *see

also* Coble Decl., Ex. F at 82 (§6.1 of new Credit Agreement, requiring that new loan be used to

pay off old loan) . Second, it acknowledges the performance of the agreement by alleging that,

on September 1, Le-Nature's paid Wachovia $255,896,641.61 to pay off the old loan and the

expenses associated with the new loan. Compl. ¶¶ 120, 123, Ex. A at 4-5. Finally, it

acknowledges that there was no diminution in the debtor's estate as a result of the transaction by

alleging that the proceeds of the September 2006 Facility were used to pay the existing debt. *Id.* Thus, all preference claims with respect to the September 1 Payments should be dismissed.

2. *Exchange for new value.* The September 1 Payments are also not preferences because, under 11 U.S.C. §547(c)(1), Kirschner may not avoid a transfer "to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange."

Kirschner alleges that the September 2006 Facility replaced the prior facility. Compl. ¶ 120. He further alleges that, when Wachovia funded the September 2006 Facility on September 1, 2006, *id.* ¶ 123, Le-Nature's made the September 1 Payments to Wachovia for the purpose of paying the principal and interest due on the prior facility, *id.*, Ex. A at 4-5, and the expenses and underwriter's fee for the September 2006 Facility, *id.* Thus, Kirschner also acknowledges that the requirements of §547(c)(1) are satisfied here – Le-Nature's paid off its old loan with its new loan, which is by definition a contemporaneous exchange for new value. *See In re Moses*, 256 B.R. 641, 652 (B.A.P. 10th Cir. 2000); *In re Amarillo Mesquite Grill, Inc.*, 355 B.R. 826, 836 (Bankr. D. Kan. 2006); *In re Furrs Supermarkets, Inc.*, 296 B.R. 33, 39 (Bankr. D.N.M. 2003).

**B.    Additional Defects in Fraudulent Conveyance Claims.**

A creditor can have no liability under fraudulent transfer law when the challenged transfer is made to satisfy a genuine obligation owed by the debtor. *See, e.g., B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 477-78 (7th Cir. 2005); *Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504, 1509 (1st Cir. 1987). Exhibit A to the complaint acknowledges that each challenged transfer was payment on a loan or a fee for services that Wachovia rendered to Le-Nature's, so as a matter of law none of these transfers can be a fraudulent conveyance.

1.   *Claims for constructively fraudulent transfers.*   To state a claim for recovery of a transfer that is "constructively fraudulent," Kirschner must plead facts showing (among other things) that Le-Nature's received less than a reasonably equivalent value in exchange for the transfer. *See In re Erie*, 216 B.R. 529, 537 (Bankr. W.D. Pa. 1998). Payments made on account of an antecedent debt are by definition a transfer in exchange for reasonably equivalent value. The Bankruptcy Code defines value as "property, or *satisfaction* or securing of *a present or antecedent debt of the debtor* . . . ." 11 U.S.C. §548(d)(2)(A) (emphasis added). The language of the Pennsylvania Fraudulent Transfer Act is substantially similar. *See* 12 Pa. C.S.A. §5103.

Of the $314,510,099.30 that Kirschner seeks to recover as fraudulent transfers, $290,268,767.62 were payments on Le-Nature's' outstanding loans. Compl. Ex. A. Transfers by a debtor in repayment of outstanding loans are, as a matter of law, not constructively fraudulent. *See, e.g., B.E.L.T., Inc.*, 403 F.3d at 478 ("Repayment of an antecedent loan comes within the 'reasonably equivalent value' rule."); *In re Erie Marine*, 216 B.R. at 538 (same); *In re Sharp Int'l. Corp.*, 302 B.R. 760, 780 (E.D.N.Y. 2003) (same).

The remaining alleged fraudulent transfers ($24,241,331.68) were all payments to Wachovia for lending fees and expenses incurred in arranging capital financing for Le-Nature's. Compl. ¶¶ 6, 7, 59, 123, Ex. A. The complaint acknowledges that Le-Nature's received value for Wachovia's services – over $600 million in capital – and that Wachovia "earned" millions in fees for assisting Le-Nature's in raising capital. *Id.* There are no allegations that Wachovia was paid above-market rates for its work in raising $600 million in capital. *Id..* ¶¶ 59, 76, 98, 123. Thus, these payments also are not constructively fraudulent. *In re Sharp*, 302 B.R. at 780

2.   *Kirschner also fails to allege claims for intentional fraudulent transfers.*   Kirschner also seeks to assert claims on the theory that Le-Nature's made the transfers to Wachovia with

the "actual intent to hinder, delay or defraud" its creditors at the time that each transfer was made. 11 U.S.C. §548(a)(1). Kirschner must plead all allegations of an intentional fraudulent transfer with particularity under Federal Rule of Civil Procedure 9(b). *Sharp*, 403 F.3d at 55; 5 Collier on Bankruptcy ¶ 548.04[2][c].

A claim for an intentionally fraudulent transfer can only be made if Le-Nature's paid Wachovia with the intent to hinder, delay, or defraud other creditors – whether Le-Nature's misrepresented its solvency to obtain the funds used to repay its debts by fraud is not relevant. *See Boston Trading Group*, 835 F.2d. at 1510. The gist of an intentionally fraudulent transfer claim is that a debtor intentionally places property in friendly hands to avoid having it seized by other creditors. *Id.* at 1509-11. Kirschner does not allege such intent or conduct by Le-Nature's, so he has not stated a claim for recovery of an intentionally fraudulent transfer. *Id.*

The Second Circuit's decision in *Sharp* illustrates the point. In *Sharp*, a bankruptcy trustee sued one of the debtor's former lenders, State Street, which learned that the debtor was engaged in fraud and extricated itself in a way that, according to the trustee, facilitated the victimization of other lenders and the continued looting of the debtor. 403 F.3d at 46. State Street demanded that the debtor obtain new financing to pay off State Street and did not inform the lenders that provided the new financing of its suspicions, even though it was in direct contact with the new lenders. *Id.* at 47-48. Noting that the "badges of fraud" giving rise to a claim for an intentional fraudulent transfer were not present (such as a close personal relationship between the parties to the transfer; a questionable transfer not in the usual course of business; inadequacy of the consideration, and retention of control of the property by the transferor), the court affirmed the Rule 12(b)(6) dismissal of the claim, explaining that '[t]he fraud alleged in the complaint relates to the manner in which Sharp obtained new funding from the Noteholders, not Sharp's

subsequent payment of part of the proceeds to State Street." *Id.* at 56-57. As in *Sharp*, Kirschner never alleges here that Le-Nature's paid Wachovia to hide funds from others. *See also, e.g.*, *B.E.L.T., Inc.*, 403 F.3d at 478 (allegations that a company fraudulently borrowed money does not afford a basis for fraudulent conveyance claims against those creditors which were paid); *In re Erie*, 216 B.R. at 538 ("It is difficult to perceive how the payments made by the Debtor to [the creditor] on a debt which was justly owed can be tortured into an act done with the intent to hinder, delay and defraud creditors."). Thus, Kirschner's claims for intentional fraudulent conveyances must be dismissed.

3. *Ponzi Scheme*. Finally, in prior briefing, in an effort to rescue his fraudulent conveyance claims, Kirschner has argued that the payments made to Wachovia and the other members of the lending syndicate were fraudulent conveyances because Le-Nature's was a "Ponzi scheme." This argument should also be rejected. The *Ashcroft* decision requires that the conclusory references to "Ponzi scheme" in the complaint be ignored, and the complaint's factual allegations do not allege such a scheme. A Ponzi scheme is an investment scam in which new investors are paid by "monies received from newly attracted investors, rather than from profits of a legitimate business venture." *In re Carrozzella & Richardson*, 286 B.R. 480, 483 n. 2 (D. Conn. 2002). "Generally, investors are promised large returns on their investments, and initial investors are in fact paid sizable returns [until] the pyramid collapses, leaving most investors with neither their principal investments nor the promised profits." *Id.* (citing numerous cases).

The complaint here alleges bank fraud – the crime to which Andreycak pleaded guilty – not a Ponzi scheme. It does not allege that any investor received any returns from Le-Nature's or that any large or unusual returns were promised to any investor. Instead, it alleges that Podlucky

and his cronies defrauded numerous lenders by maintaining two sets of books and publishing false financial statements. The complaint identifies no "early investors" who were paid off with funds obtained from later investors. It simply alleges that numerous creditors – not investors – made large loans to Le-Nature's and uniformly lost their money. Thus, the Ponzi scheme cases do not rescue Kirschner's fraudulent conveyance claims.

Respectfully submitted,

DEL SOLE CAVANAUGH STROYD LLC

By: _Matthew T Logue_

Arthur H. Stroyd, Jr., Esquire
Pa. I.D. No. 15910
astroyd@dscslaw.com

Matthew T. Logue, Esquire
Pa. I.D. No. 87416
mlogue@dscslaw.com

The Waterfront Building, Suite 300
200 First Avenue
Pittsburgh, PA 15222
(412) 261-2393

*Attorneys for Wachovia Defendants*

Of counsel:

Robert W. Fuller (rfuller@rbh.com)
N.C. State Bar No. 10887
Garland S. Cassada (gcassada@rbh.com)
N.C. State Bar No. 12352
Katherine Gordon Maynard (kmaynard@rbh.com)
N.C. State Bar No. 26837
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
(704) 377-2536

Date: June 19, 2009