UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC S. KIRSCHNER, solely in his capacity as the Liquidation Trustee of Le-Nature's Liquidation Trust,<br><br>                     Plaintiff,<br>v.<br><br>WACHOVIA CAPITAL MARKETS, LLC d/b/a WACHOVIA SECURITIES; WACHOVIA BANK, NATIONAL ASSOCIATION; CIT GROUP/EQUIPMENT FINANCING, INC.; KRONES, INC.; KRONES AG; VOLKER KRONSEDER; HEINZ SOMMER; MARSHALL FINANCIAL, INC.; MARSHALL INVESTMENTS CORPORATION; THE POLLINGER COMPANY, INC.; DONALD K. POLLINGER; PAUL POLLINGER; GREGORY J. PODLUCKY; JONATHAN E. PODLUCKY; DAVID E. GETZIK; ROBERT B. LYNN and ANDREW MURIN, JR.,<br><br>                     Defendants. | Civil Action No. 08 CIV 1518<br><br>Misc. Action No. 2:09–mc-162-DWA<br><br>Chief Judge Donetta Ambrose<br><br>ELECTRONICALLY FILED |

## REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO RENEWED MOTIONS TO DISMISS OF WACHOVIA CAPITAL MARKETS, LLC and WACHOVIA BANK, NATIONAL ASSOCIATION

C-1141785v3 15203.00211

Kirschner stands in the shoes of Le-Nature's, not its creditors, and he can only claim injuries and damages suffered by Le-Nature's. Not even a 126 page, 383 paragraph complaint can conjure up legally sufficient allegations to plausibly support claims in favor of Le-Nature's against the bank it defrauded. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## I. ARGUMENT AND AUTHORITIES

### A. Kirschner has not and cannot allege damages causation.

Kirschner acknowledges that *In re CitX*, 448 F.3d 672 (3d Cir. 2006), bars recovery of the deepening insolvency damages he claims for "artificial prolongation of [the] failed and insolvent enterprise." Compl. ¶ 89. In an attempt to preserve his damages claim, Kirschner tries to recast the Complaint as seeking damages for Wachovia's actions that "led to a significant increase in Le-Nature's liabilities." Resp. at 9. None of the 27 paragraphs cited by Kirschner for this proposition contain any allegation that Wachovia caused an increase to any liability of Le-Nature's. Those paragraphs describe Wachovia's actions in syndicating credit facilities and issuing bonds on behalf of Le-Nature's. Le-Nature's received cash from these financings and incurred corresponding obligations to repay the loans – there was no net *increase* in Le-Nature's liabilities and no damages to Le-Nature's. *See* Willet, Sabin, The Shallows of Deepening Insolvency, 60 Bus. Law. 549 (Feb. 2005) (quoted in *In re CitX*, 448 F.3d at 677) (explaining "a new loan, however onerous or ill-advised", can never cause damage by increasing liabilities).

Kirschner concedes that any harm caused to Le-Nature's through the use of the loan proceeds resulted from the theft and active malfeasance of the Insiders – not Wachovia. Compl. ¶ 3. This case, like *CitX*, is distinguishable from the *Thabault* case cited by Kirschner. In *Thabault v. Chait*, 541 F.3d 512 (3d Cir. 2008), the negligently performed audit had the

C-1141785v5 15203.00211                                  1

"immediate negative consequence" of allowing the insolvent insurer to increase its liabilities by writing more insurance policies. *Id.* at 521. In contrast, no damages were caused by either the equity provided to CitX or the loans made to Le-Nature's. Rather, "[t]o the extent that the extra capital [...] extended the corporation's life and allowed management to incur more debt, the ultimate harm was caused by mismanagement, not the auditor" of CitX, or, in the case of Le-Nature's, Wachovia. *Id.* (citing *CitX*, 448 F.3d at 678). Because Kirschner has not and cannot allege that Wachovia caused damage to Le-Nature's, all of his common law and RICO claims must be dismissed.[1]

### B. Kirschner's RICO and common law claims are also nonsensical and must be dismissed under *Ashcroft* in any event.

Each of Plaintiff's claims is based on the same implausible premise – that Wachovia wronged Le-Nature's by not informing Le-Nature's that it was defrauding Wachovia. Given (i) his allegations of theft and active malfeasance by the Insiders, (ii) the inescapable fact that Wachovia itself was defrauded by Le-Nature's – as Le-Nature's Director of Accounting admitted in her guilty plea – and (iii) Kirschner's inability to allege any more than that Wachovia "knew or should have known" of Le-Nature's fraud, Kirschner's claims do not satisfy the requirements of *Ashcroft*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").[2] Surely an unknowing victim of fraud has no duty to inform the party

---

[1] Kirschner's reliance on *Parmalat* to defend his damages is misplaced. The *Parmalat* court found that damages causation had been adequately pled because Bank of America "deliberately did not tell the innocent insiders about the corrupt insiders' looting campaign or the transactions which made the thefts possible." *In re Parmalat Secs. Litig.*, 412 F. Supp. 2d 392, 403-04 (S.D.N.Y. 2006). Kirschner does not allege that Wachovia knew of the Insiders' theft and malfeasance.

[2] Notably, Kirschner ignores *Ashcroft*, failing event to cite it.

perpetrating the fraud of the fraud. Such an obligation would be preposterous and Kirschner cites no authority imposing such a duty.

When stripped of conclusions that are unsupported by factual allegations, the Complaint fails the pleading requirements of *Ashcroft*. Kirschner relies heavily on the word "tweaked" – drawn from one of several thousands of emails – to suggest that Wachovia had knowledge of Le-Nature's fraud.[3] Contrary to Kirschner's contention, this repeated emphasis of this single word, when read in context of Andreycak's admission that Le-Nature's defrauded Wachovia, most plausibly suggests that Wachovia had no knowledge of the fraud of which it was a victim.[4] Kirschner does not allege why Wachovia would assist Podlucky and his cohorts in their fraudulent activities, completely failing *Ashcroft*'s test and leaving no reasonable inference that Wachovia knew of Le-Nature's fraud.

Kirschner's contentions that Wachovia had some duty to inform Le-Nature's of its own fraud similarly are not supported by any proper factual allegations. Kirschner's repeated conclusory allegation that Wachovia had some duty to Le-Nature's because it was Le-Nature's "financial advisor, investment bank, merger and acquisition consultant, underwriter, lender, securities broker, book runner and *de facto* partner" must be ignored under *Ashcroft*. Resp. at 21. The Complaint does not allege that Wachovia either "was involved in the actual day-to-day management and operations" of Le-Nature's or "had the ability to compel [Le-Nature's] to engage in unusual transactions," as required to show a fiduciary relationship under Pennsylvania

---

[3] The word tweak carries no implication that Wachovia was participating in a scheme to manipulate the financials of Le-Nature's. *See American Heritage Dictionary of the English Language* (3d ed. 1992) (defining tweak as a verb meaning "to adjust; fine-tune").

[4] Even constructive knowledge of the fraud – argued by Kirschner to be sufficient to support the actual knowledge requirement – requires proof of a general awareness of one's role in the fraudulent activity. *See Resolution Trust Corp. v. Farmer*, 823 F. Supp. 302, 309 (E.D. Pa. 1993). No facts in the complaint support such a conclusion.

law. *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992). Stripped of his self-serving conclusions, the facts alleged amount to nothing more than a typical lender relationship. *See, e.g., In re Worldclass Processing, Inc.*, 323 B.R. 164, 174 (Bankr. W.D. Pa. 2005) (lenders engaged in a broad range of conduct did not have degree of control necessary to support a fiduciary duty). Similarly, the Complaint includes *no* allegation supporting the proposition that Wachovia was in the business of supplying financial information to Le-Nature's or that Wachovia failed to disclose facts basic to a transaction with Le-Nature's. *See Fleet Nat'l Bank v. Boyle*, 2005 WL 2455673, at *17 (E.D. Pa. Sept. 12, 2005) ("Because the Court stressed the narrowness of [*Bilt-Rite*], and the parties do not contend that Defendants are 'in the business of providing information' this Court concludes that *Bilt-Rite* is not applicable in the instant case."); *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 586 (W.D. Pa. 2004) (discussing the "limited circumstances" under which a duty to speak arises between parties to a particular transaction) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995)). Failing both the legal standards and the common sense test, Kirschner's assertion that Wachovia had a duty to disclose Le-Nature's fraud to Le-Nature's should be rejected.

Finally, Kirschner has made no supportable allegation that Le-Nature's relied on any misrepresentation or omission by Wachovia. Implicitly recognizing the absurdity of suggesting Andreycak and the other Insiders who perpetrated the Le-Nature's fraud relied on Wachovia to disclose the fraud to them, Kirschner now argues that the so-called "independent decision-makers" relied on Wachovia to do just that. Resp. at 15. These arguments are ridiculous.

Kirschner never alleges that Wachovia ever communicated with the allegedly "innocent directors" and has no basis now to argue those same individuals somehow relied on Wachovia.[5]

### C. Other Deficiencies – Common Law and RICO claims.

Wachovia will not repeat here the arguments in its initial brief or dwell on the remaining deficiencies in Kirschner's common law and RICO claims. In addition to the flaws outlined above, a close examination of each claim and each argument individually reveals additional flaws. For example, Kirschner contends that *Harbinger Cap. Partners v. Wachovia Cap. Mkts.*, 2008 U.S. Dist. LEXIS 67462 (S.D.N.Y. Aug. 26, 2008), holds that Kirschner is the proper party to bring claims against Wachovia. Resp. at 13. Indeed, the *Harbinger* decision is not about Kirschner's standing, but only holds that under Second Circuit law lenders cannot sue Wachovia under RICO until the amount of their bankruptcy recovery is finalized. *Id.* at *12-13. Similarly, despite Kirschner's cite to paragraph 195 of the Complaint in support of his RICO claim, Resp. at 13, the Complaint alleges *no* predicate acts directed at Le-Nature's. Kirschner's brief is replete with similar errors.[6]

---

[5] *See also American Int'l Group v. Greenberg*, No. CIV. A. 769-VCS, ___ A.2d ___, 2009 WL 1684808 (Del. Ch. June 17, 2009) (explaining why such claims brought by a Delaware corporation such as Le-Nature's should be rejected under the doctrine of *in pari delicto*).

[6] Wachovia relies on its initial brief with respect to the preference and fraudulent conveyance claims that Kirschner seeks to assert.

Respectfully submitted,

DEL SOLE CAVANAUGH STROYD LLC

By: _/s/ Matthew T. Logue_
Arthur H. Stroyd, Jr., Esquire
Pa. I.D. No. 15910
astroyd@dscslaw.com

Matthew T. Logue, Esquire
Pa. I.D. No. 87416
mlogue@dscslaw.com

The Waterfront Building, Suite 300
200 First Avenue
Pittsburgh, PA 15222
(412) 261-2393

*Attorneys for Wachovia Defendants*

Of counsel:

Robert W. Fuller (rfuller@rbh.com)
N.C. State Bar No. 10887
Garland S. Cassada (gcassada@rbh.com)
N.C. State Bar No. 12352
Katherine Gordon Maynard (kmaynard@rbh.com)
N.C. State Bar No. 26837
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
(704) 377-2536

Date: July 28, 2009