IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC S. KIRSCHNER, solely in his capacity as Liquidation Trustee of Le-Nature's Liquidation Trust,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>WACHOVIA CAPITAL MARKETS, LLC, d/b/a WACHOVIA SECURITIES, *et al.*,<br><br>　　Defendants. | Civil Action No. 08-1518<br>MDL No. 2021<br>MISC No. 09-162 |

AMBROSE, Chief District Judge

# OPINION
# AND
# ORDER OF COURT

Pending before the court is a Motion to Dismiss filed by Defendant, The CIT Group/Equipment Financing, Inc. ("CIT") seeking to dismiss Counts Nine and Twelve[1] of Plaintiff's Complaint. (Docket No. 90 at 8-cv-1518 and Docket No. 70 at 9-mc-162).[2] Plaintiff, Marc S. Kirschner ("Kirschner"), in his capacity as Liquidation Trustee of the Le-Nature's Liquidation Trust, filed a Brief in Opposition thereto. (Docket No. 107).

There is also a Motion for Judgment on the Pleading pending filed by Defendants, Marshall Financial, Inc. and Marshall Investments Corporation (collectively "the Marshall Defendants"). (Docket No. 92 at 8-cv-1518 and Docket No. 72 at 9-mc-162).[3] Therein, the Marshall Defendants

---

[1] Count Nine of the Complaint is a claim for aiding and abetting fraud. (Docket No. 1, para. 275-285). Count Twelve of the Complaint is a claim for aiding and abetting breach of fiduciary duty. (Docket No. 1, para. 296-307).

[2] The Motion to Dismiss is dual filed at the civil action number (08-cv-1815) and the miscellaneous number (09-mc-162). Docket numbers from this point forward will refer solely to the civil action number.

[3] The Motion for Judgment on the Pleadings is dual filed at the civil action number (08-cv-1518) and the miscellaneous number (09-mc-162). Docket numbers from this point forward will refer solely to the civil action number.

adopt and incorporate by reference the arguments raised by CIT in its Motion to Dismiss.[4] Kirschner filed a Brief in Opposition thereto incorporating by reference his Brief in Opposition to CIT's Motion to Dismiss.[5] (Docket No. 105). After careful consideration of the same, said Motions (Docket Nos. 90 and 92) are denied as more fully set forth below.

## OPINION

**I.     Background**

I assume the following facts are true: Plaintiff is a trustee appointed by the bankruptcy court. The debtor is Le-Nature's Inc. ("Le-Nature's" or "the corporation"). Le-Nature's was a beverage manufacturer, bottler and distributor based in Latrobe, Pennsylvania. Gregory Podlucky ("Podlucky") was the chief executive officer of Le-Nature's, its majority shareholder, and the chairman of its board. Complaint, ¶¶ 1-34.

Podlucky's brother, Jonathan Podlucky, served as the chief operating officer, David Getzik served as the chief financial officer, Robert Lynn was the executive vice president, and Andrew Murin was an adviser to Podlucky. Podlucky's brother, Getzik, Lynn and Murin were all members of Le-Nature's board of directors and all were nominated to the board by Podlucky. Complaint, ¶¶ 35-37. At times, these individuals are collectively referred to as "the Insiders."

Le-Nature's produced its first beverage product in 1992, and by 2005, claimed to be producing nearly 60 different products. The growth in the alleged variety of products it sold purportedly spurred growth in its gross sales, net sales and profits. However, Plaintiff has asserted

---

[4]The Marshall Defendants do not adopt the last paragraph on page 41 of Docket No. 91 because that paragraph relates to allegation in paragraphs 154-159 of the Complaint, which apply only to CIT. Otherwise, the Marshall Defendants adopt and incorporate by reference the arguments set forth in CIT's Brief in Support of its Motion to Dismiss. *See,* Docket No. 92, p. 1 and Docket No. 93, p. 2).

[5]Throughout the Opinion, I reference the arguments made by CIT and make rulings with regard to those arguments. Since the Marshall Defendants have filed a Brief that, for all intents and purposes, incorporating the entirety of CIT's arguments, my rulings apply with equal force to the Marshall Defendants.

that between 2002 and 2005, due to a fraudulent scheme advanced by Podlucky along with the Insiders, Le-Nature's reported sales were grossly disproportionate to its actual sales. Complaint, ¶¶ 42, 44-45.

These inflated sales figures enabled Le-Nature's to raise capital with the assistance of Defendants, in particular, Wachovia Capital Markets, LLC d/b/a Wachovia Securities, Wachovia Bank, National Association (hereinafter referred to collectively as "Wachovia"), Krones AG, Krones Inc., Heinz Sommer, and Dr. Volker Kronseder (hereinafter, collectively referred to as "Krones"), CIT, and Marshall. Together with Podlucky and the Insiders, these parties engaged in a form of a "Ponzi" scheme – constantly raising money and incurring ever-increasing debts to refinance investors while cultivating the illusion of a legitimate profit-making business. ¶¶ 1-2.

Specifically, Kirschner alleges that Krones inflated prices on equipment for new Le-Nature's bottling lines and assisted Podlucky and the Insiders in securing financing based on these inflated prices. Kirschner asserts that CIT and Marshall knew the equipment prices were inflated but still arranged for "synthetic lease" equipment lease financing based on the bogus prices and that Krones, CIT and Marshall reaped significant fees by using these inflated figures while Podlucky and the Insiders received the excess revenue from the inflated pricing. ¶¶ 11, 13, 16-18, 134-142.

In addition to the actions of Krones, CIT and Marshall, from April of 2003 through December of 2005, Wachovia arranged a series of credit facilities for Le-Nature's. In an effort to secure lenders for each facility, Wachovia assisted Le-Nature's in the preparation and distribution of a "Confidential Information Memorandum," but these memoranda materially misrepresented (among other things) Le-Nature's sales and profits. These credit facilities were supposed to generate funds for expansion of Le-Nature's production lines. Although Le-Nature's did expand its production lines by expanding the capacity of its Latrobe, Pennsylvania plant in 2003 and by building a new bottling plant in Phoenix, Arizona in 2005, Plaintiff asserts these expansions were unnecessary given the false sales figures and further believes the credit facilities were undertaken to finance and prop up

Le-Nature's slumping operations. Complaint, ¶¶ 42-46, 60, 62, 72, 76, 81, 96.

In May of 2006, the minority preferred shareholders (who were represented by three independent directors on the Le-Nature's board), initiated an action in the Delaware Chancery Court against the corporation, Podlucky, his brother, Murin and Lynn.[6]  In June of 2006, the Chancery Court entered a preliminary injunction restraining Le-Nature's company from taking certain steps, such as making capital expenditures in amount in excess of $1,000, without minority shareholder approval. Complaint, ¶ 48.

In October of 2006, Le-Nature's preferred minority shareholders were told that Podlucky had converted funds deposited by one of the corporation's equipment lessors, AIG.  This information was passed to the shareholders upon AIG's discovery that Krones had transferred nearly $20 million of AIG's deposit to Le-Nature's based on a forged AIG letter "authorizing" the transfer of funds.  On October 20, 2006, following the revelation of the forgery, the Delaware Chancery Court issued a temporary restraining order and on October 27, 2006, the Court approved the preferred minority shareholders' request for the appointment of a custodian for Le-Nature's.  The Delaware Chancery Court named Kroll Zolfo Cooper, LLC ("KZC") as custodian.[7]   On November 1, 2006,

---

[6] Kirschner's complaint explains that in addition to the credit facilities, in 2000 and 2002, Le-Nature's issued over 8 million shares of convertible preferred stock. This stock was purchased by three investment funds – the "Pelham Fund" and two separate "Baum Funds."  Pelham Fund's nominee to La-Nature's Board of Directors was Venita Fields, and the Baum Funds' nominees were Ruth Huet and Ford Bartholomew.  In 2006, William Thomas replaced Ford Bartholomew.  These board members allegedly had no knowledge of the "form, substance or magnitude" of the alleged scheme and when they became aware of it, they filed for relief in the Chancery Court.  Complaint, ¶¶ 183-185.

[7] I take judicial notice of the Chancery Court's October 27, 2006, order appointing a custodian to take "possession and control of Le-Nature's . . . its business, operations and . . . Assets, and to temporarily administer and manage the Assets, operate the [Le-Nature's] business . . . " until further order of the Court, and holding Le-Nature's and its Assets were *in custodia legis*, meaning they could not be distrained, nor otherwise interfered with by a private person. (Docket No. 91-2, ¶¶2-3).
  The Order also states, "... until otherwise ordered by the Court . . . [Podlucky, Podlucky's brother, Murin, and Lynn] . . . shall cooperate with the Custodian . . . and shall accept the instructions of the Custodian with respect to [Le-Nature's] and the Assets and shall act with and under the supervision, consent and instruction of the Custodian with respect to same and, in so doing, are hereby restrained and enjoined from (i) making, or committing [Le-Nature's] to make, any expenditure of Company funds, (ii) accessing tampering with or destroying any [Le-Nature's] property, books or records, (iii) selling, leasing or otherwise disposing of . . . any assets of [Le-Nature's] . . . (iv) making, or committing [Le-Nature's] to

4

the managing director of KZC filed an affidavit with the Chancery Court detailing financial discrepancies at Le-Nature's. Also on November 1, 2006, several of Le-Nature's creditors initiated involuntary bankruptcy proceedings. Complaint, ¶¶ 49-53.

Since the initiation of the bankruptcy proceedings, the investigation led by Kirschner has uncovered two separate accounting systems at Le-Nature's: one system ("Navision") tracked actual sales, accounts payable, inventory, etc. while the other system ("Real World") contained primarily fraudulent numbers to which only Podlucky and one Le-Nature's employee (Ms. Andreycak) had access. In addition, a secret room was discovered at the Latrobe bottling facility which held safes that contained jewelry purchased by Podlucky. Podlucky also purchased over 8,000 Lionel model trains and was building a mansion for his personal residence. Kirschner avers that the jewelry, trains and residence were all paid for with monies Podlucky embezzled from Le-Nature's through the "scheme." Complaint, ¶ 54.

## II. Legal Argument

### A. Legal Standard

CIT filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When deciding whether to grant or deny a 12(b)(6) motion the Supreme Court has held:

---

make, any loans, advances or investments of any kind or nature, or entering into, or committing [Le-Nature's] to enter into, any guarantees, and (v) causing or committing [Le-Nature's] to incur any debt or otherwise to become liable to any party for any reason. [Le-Nature's and Podlucky, Podlucky's brother, Murin, and Lynn] shall not take any actions . . .without the consent of the Custodian . . . ." *Id.* at ¶4.
  Finally, the Order notes, "...until otherwise ordered by the Court . . . [Podlucky, Podlucky's brother, Murin, and Lynn] are hereby restrained and enjoined from withdrawing or transferring any funds from [Le-Nature's] bank or other financial accounts. . . .The Custodian may take such action and incur ... such costs and charges, and make disbursements as may be actually necessary for taking possession and control of the Assets, preserving the Assets, operating [Le-Nature's] business in the ordinary course... In the event that the Custodian determines that it is in the best interest of [Le-Nature's] to take any action other than in the ordinary course of business, the Custodian shall make such a recommendation as it deems appropriate to [Le-Nature's] board of directors; . . . if the board of directors does not unanimously approve the recommendation action, [Le-Nature's] may apply to the Court on notice to plaintiffs and defendants for authorization to take such action as it deems to be necessary or desirable." *Id.* at ¶9.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (cites and footnote omitted); *see also*, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Most recently, in *Ashcroft v. Iqbal*, ___ U.S.___, 129 S.Ct. 1937 (2009), the Supreme Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citations omitted).

In *Iqbal,* the Court specifically highlighted the two principles which formed the basis of the *Twombly* decision: First, for the purposes of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. *Id.* at 1949-1950. *See also, Fowler v. UPMC Shadyside*, ___ F.3d ___, No. 07-4285, 2009 WL 2501662 (3d. Cir. Aug. 18, 2009). Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense. *Id.* at 1950. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief. *Id.,* citing, F.R.Civ.P. 8(a)(2).[8]

---

[8] The Marshall Defendants file their Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. "A Motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is treated under the same standards as is a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Stanton v. The County of Allegheny, Civ. No. 7-56, 2008 WL 678704 at * 1 (W.D.Pa. March 12,

B.    *In Pari Delicto*[9]

CIT's first argument is that Kirschner's claims for aiding and abetting are barred by the doctrine of *in pari delicto*. (Docket No. 91, pp. 10-33). In response, Kirschner argues that *in pari delicto* does not bar his suit for four reasons: 1) The appointment of a state court receiver/custodian before Le-Nature's Bankruptcy precludes any application of the doctrines of imputation and *in pari delicto*; 2) Pennsylvania law dictates that *in pari delicto*, as an equitable defense should not be used to "taint" an innocent; 3) The Trustee is entitled to invoke the adverse interest exception; and 4) Dismissal of the Complaint on *in pari delicto* grounds is inappropriate. (Docket No. 107, pp. 13-31). After a review of the facts of this case, in the light most favorable to the non-moving party and as is more fully explained below, I agree with Kirschner that the appointment of KZC precludes the application of the doctrine of *in pari delicto* in this case.

The doctrine of *in pari delicto* provides that a "plaintiff who has participated in wrongdoing may not recover damages from the wrongdoing." Black's Law Dictionary (7th ed.1999). *In pari delicto* literally means "in equal fault," is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct. *Pinter v. Dahl,* 486 U.S. 622, 632 (1988); *see also*, *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 2626-2627, 86 L.Ed.2d 215 (1985)(common-law defense derives from the Latin, *in pari delicto potior est conditio*

---

2008). That is, a complaint will be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face. Stanton, 2008 WL 678704 at * 1, citing, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (May 21, 2007). Further, I may consider the allegations in the complaint, attached exhibits, matters of public record and factual allegations within documents described or identified in the complaint. Id. at * 2." Albright v. Viacom, Inc., Civil Action No. 4-609, 2009 WL 222784, 1 (W.D.Pa. Jan. 29, 2009).

[9]Kirschner summarily argues that the Marshall Defendants' Motion should be dismissed because: 1) they did not filed their own brief but merely adopted the brief filed by CIT, and 2) because they did not address the specific allegations against them rather than those against CIT. (Docket No. 105, p. 2). I reject these arguments. First, for judicial economy and logistic reasons I will permit arguments by adoption. Second, I note that virtually the same allegations are made against the Marshall Defendants and CIT, except for ¶¶ 152-159 of the Complaint. (Docket No. 1). As a result, I find no merit to Kirschner's argument.

*defendentis*: In a case of equal or mutual fault the position of the defending party is the better one.) The defense is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality. *Bateman Eichler,* 472 U.S. at 306. "*In pari delicto* is a murky area of law. It is an ill-defined group of doctrines that prevents courts from becoming involved in disputes in which the adverse parties are equally at fault. Courts in Pennsylvania have not been of one mind as to whether the doctrine is legal or equitable." *Official Committee of Unsecured Creditors of Allegheny Health, Educ. and Research Foundation v. PricewaterhouseCoopers, LLP,* No. 07-1397, 2008 WL 3895559, 5 (3d Cir. July 1, 2008) (footnote omitted), *comparing Sacco v. Twp. of Butler*, 863 A.2d 611, 615 n. 3 (Pa.Commw.Ct.2004) (referring to doctrine as "equitable") with *Feld & Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick & Cabot*, 458 A.2d 545, 548 (Pa.Super.Ct.1983) (referring to the "common-law" doctrine of in pari delicto ).

In applying this doctrine, CIT argues that the conduct of Le-Nature's and the Insiders is imputed onto Kirschner, and as such, Le-Nature's is barred by the doctrine of *in pari delicto* from bringing this lawsuit against CIT. CIT relies primarily on the opinion of *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340 (3d Cir. 2001) ("*Lafferty*") for this argument. In *Lafferty*, two debtor corporations filed for bankruptcy after a "Ponzi scheme" collapsed leaving the investors in these corporations with substantial losses. The scheme was orchestrated by the corporate debtors' sole shareholder, William Shapiro, who issued fraudulent debt certificates on behalf of the corporations. When the corporations had no prospect of repaying the debt, the corporations sought protection through bankruptcy. Subsequent to the bankruptcy filings, the debtors' estates, through their creditors' committees, brought claims alleging that third parties had fraudulently induced the debtor corporations to issue debt securities thereby deepening their insolvency and forcing them into bankruptcy.

One of the main issues in the *Lafferty* case was whether the *in pari delicto* doctrine would bar the claims brought by the creditor's committee on behalf of the debtors' estates. The Court of Appeals for the Third Circuit held that *in pari delicto* could bar the claims <u>if</u> Shapiro's conduct could be imputed to the corporations and hence to the creditors' committees since the committees stood in the shoes of the debtor-corporations.

The *Lafferty* Court broke its analysis into two parts. First, it determined that 18 U.S.C. § 541 specifically precluded courts from taking into account events which occur <u>after</u> the commencement of a bankruptcy case. Since the creditors' committees were appointed after the filing of the bankruptcy case, the Court evaluated the *in pari delicto* defense without regard to the fact that the committees were "innocent successors". Relying on case law from the Tenth, Sixth and Seventh Circuits, the *Lafferty* court held that a creditors' committee (or a bankruptcy trustee), who stands in the shoes of the debtor, could be barred by doctrine of *in pari delicto* even when the committee holds the status of an innocent successor.

Having reached a conclusion on the first part of its analysis, the *Lafferty* Court next questioned whether Mr. Shapiro's acts and conduct could be imputed to the corporations. The Court held that fraud of an officer could be imputed to a corporation when the officer commits fraud: (1) in the course of his employment, and (2) for the benefit of the corporation. After determining that Mr. Shapiro had committed fraud in the course of his employment, the Court analyzed whether his fraudulent conduct was perpetrated for the benefit of the corporations. Although the Court noted that it would ordinarily apply the adverse interest exception[10] to ascertain whether fraudulent conduct could be imputed, under the facts of the *Lafferty* case, Mr. Shapiro's status as a sole shareholder led the court to apply to the "sole-actor" exception. The Court held:

---

[10] Under the adverse interest exception, fraudulent conduct will be imputed when the officer's conduct or fraud is committed for the benefit of the corporation and will not be imputed if the officer's interests were adverse to the corporation and not for the benefit of the corporation. *Thabault v. Chait,* 541 F.3d 512, 527 (3d Cir 2008).

9

> The general principle of the "sole actor" exception provides that, if an agent is the sole representative of a principal, then that agent's fraudulent conduct is imputable to the principal regardless of whether the agent's conduct was adverse to the principal's interests. [Cite omitted.] The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability. [Cites omitted.]

267 F.3d at 359. As a result of this analysis, the majority of the *Lafferty* Court concluded: (1) Shapiro's conduct could be imputed to the corporations, and (2) the doctrine of *in pari delicto* barred the creditors' committees, which stepped directly into the shoes of the corporate debtors (post the filing of the bankruptcy petition), from bringing their claims.

Like the *Lafferty* Court, I begin my analysis with section 541 of the bankruptcy code. The legislative history to section 541 of the bankruptcy code states:

> Though this paragraph will include . . . claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case. For example, if the debtor has a claim that is barred . . . then the trustee would not be able to pursue that claim, because he too would be barred. He could take no greater rights than the debtor himself had.

*See,* Senate Report, 95-989, 1978 U.S.C.C.A.N. 5787, 5868. From this, the Third Circuit has consistently held that "[a bankruptcy] trustee stands in the shoes of the debtor." *See e.g., In re: Personal and Business Insurance Agency, Debtor James K. McNamara, Esq., Trustee, v. PFS a/k/a Premium Financing Specialists*, 334 F3d 239, (3d Cir. 2003)(in actions brought by trustee as successor to debtor's interest under section 541, the 'trustee stands in the shoes of debtor and can only assert those causes of action possessed by debtor), *quoting*, *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154 (3d Cir. 1989).

Accordingly, under section 541, the trustee stands in the shoes of the debtor – in this case, Kirschner stands in Le-Nature's shoes – and may prosecute any claims or causes of action that the debtor can pursue. Similarly, if Le-Nature's is barred from bringing a claim, then Kirschner

would likewise be barred.[11]  Although the *Lafferty* analysis applies to this case, the facts of the instant matter differ from *Lafferty,* and thus alter the outcome.

The first part of the *Lafferty* analysis requires a determination as to when relevant events transpired – before or after the bankruptcy filing.  Unlike the facts in *Lafferty,* Le-Nature's essentially rid itself of corrupt influence of certain corporate officers prior to the bankruptcy filing when the Chancery Court installed KZC and empowered KZC to run the company.  As discussed above, in May of 2006, at the request of Le-Nature's minority shareholders, the Delaware Chancery Court restricted Podlucky and the Insiders' authority to do certain things without the minority shareholders' approval.  In October of 2006, when evidence surfaced indicating that Podlucky and the Insiders ignored the Court's prior order and possibly engaged in criminal conduct (the forgery of an AIG document), the minority shareholders again sought assistance from the Chancery Court.  In response, the Court appointed KZC[12] and ordered a complete usurpation of corporate authority rendering Podlucky and the Insiders impotent to run Le-Nature's.[13]  Thus, by the time Le-Nature's was pulled involuntarily into bankruptcy, KZC had been running the company for several days.  Because KZC was appointed before the filing of the bankruptcy case, and because Kirschner stepped into the shoes of Le-Nature's which was then being run by this custodian who was not engaged in any sort of fraudulent conduct, there is no fraud to impute to Kirschner.

---

[11] The legislative history to section 541 provides an example wherein a claim is barred by the statute of limitations. The example assumes the debtor is barred from bringing a claim because of the statute of limitations, and concludes that the trustee would likewise be barred. 1978 U.S.C.C.A.N. 5787, 5868.

[12] *See*, footnote 7 relating to the Delaware Chancery Court's order dated October 27, 2006.

[13] As indicated in the Delaware Chancery Court's order, the Custodian had complete control of Le-Nature's day-to-day operations and was in sole control of conducting Le-Nature's business in the ordinary course of business without seeking leave or permission from Podlucky or the Insiders.  To the contrary, Podlucky and the Insiders relinquished all day-to-day control. Moreover, if and when the Custodian needed "to take any action other than in the ordinary course of business" he could petition the Chancery Court if Podlucky and the Insiders as board members refused to enable the Custodian to act on the extraordinary business.  (Docket No. 91-2).  Thus, contrary to CIT's opinion, according to the Delaware Chancery Court's order, KZC,  in essence, was subject only to the court.

Unlike the facts in *Lafferty*, I must evaluate the *in pari delicto* doctrine in light of the fact that when Kirschner stepped into the shoes of Le-Nature's it was no longer being operated by a corrupt management team (Podlucky and the Insiders) due to the minority shareholders who convinced the Chancery Court to replace the leadership. Thus, at the moment the bankruptcy was filed, Le-Nature's was not being run by the wrongdoers who allegedly engaged in fraud. This distinction alone leads me to conclude that since Le-Nature's alleged wrongdoing shareholders were stripped of their power by the alleged innocent minority shareholders prior to the bankruptcy filing, there was nothing to impute at the time the of the bankruptcy filing, and accordingly, the *in pari delicto* doctrine cannot apply to bar Kirschner's claims against CIT.[14] [15]

### C. Cause of Damages

CIT's second argument is that Kirschner's claims fail because CIT did not cause Le-Nature's to suffer any legally cognizable damages. (Docket No. 91, pp. 33-34). In support of this argument, CIT argues summarily in only two paragraphs of a thirty-five page brief that: 1) that Kirschner pleads a "deepening insolvency" theory of damages which is not viable under Third Circuit precedent; 2) CIT's conduct did not proximately cause harm to Le-Nature's; and 3) that Le-Nature's was no more insolvent after the financing than it was before the financing. (Docket No. 91, pp. 33-34). These arguments were made at length by Defendants, Wachovia and Krones, in their Motions to Dismiss. (*See,* Docket Nos. 86 and 89). I analyze these arguments in my

---

[14] I find Judge Cowen's dissent in *Lafferty* instructive on this point. He notes that the *Lafferty* majority concluded that the creditors' committees were barred from recovery because "at the moment the bankruptcy was filed . . .the wrongdoers had not actually been removed yet." 267 F.3d at 362. In *Lafferty,* the trustee took over a company which, until the moment the trustee assumed control, had been run by a corrupt shareholder. This directly contrasts with the facts of the immediate case. Although CIT suggests that the brief period of the time the custodian actually controlled Le-Nature's prior to the bankruptcy filing was not enough to "cleanse" the company of the "taint," I disagree based on the majority and dissenting opinions in *Lafferty*.

[15] CIT raises additional arguments regarding the application of the doctrine of *in pari delicto.* (*See, generally,* Docket No. 91). Because I find that the doctrine is inapplicable in this case, I need not discuss the same.

opinions regarding the same. Therefore, I incorporate by reference my opinions relating to the same and find that CIT's Motion to Dismiss is denied for the reasons stated therein.

### D. Aiding and Abetting Fraud and Breach of Fiduciary Duty

CIT's third and final argument is that Kirschner's claims for aiding and abetting fraud and breach of fiduciary duty are fatally flawed. (Docket No. 91, pp. 34-43). To that end, CIT first argues that Plaintiff's claims for aiding and abetting both fraud and breach of fiduciary duty are not cognizable under Pennsylvania law. (Docket No. 91, pp. 35-37). Pertinent here, the Restatement (Second) Torts §876(b), on which Plaintiff relies, has not been expressly adopted by the Pennsylvania Supreme Court. *See, e.g., Clayton v. McCullough*, 670 A.2d 710, 713 (Pa. Super. 1996). That Section reads, in its entirety, as follows:

> § 876 Persons Acting in Concert
>
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a)   does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b)   knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c)   gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) Torts §876(b).

When state law issues arise that remain unaddressed by the highest court in the state, a federal court must predict how that court would rule. *Berrier v. Simplicity Mfg.*, 563 F.3d 38, 45-46 (3d Cir. 2009). In doing so, I may consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical*

*Corp.*, 622 F.2d 657, 663 (3d Cir. 1980). In making that prediction, "a federal court can...give due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (citation omitted). Moreover, I am not to disregard the opinions of intermediate appellate courts, unless persuasive data convinces me that the Pennsylvania Supreme Court would decide to the contrary. *Id.*

On this issue, I reach the same conclusion as that in *Gilliland v. Hergert*, No. 2:05-cv-01059, 2007 WL 4105223 (W.D. Pa. Nov. 15, 2007), and *Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC*, 513 F. Supp. 2d 304, 317 (E.D. Pa. 2007), both of which predicted that the Supreme Court of Pennsylvania would recognize Section 876(b).[16] I am persuaded by the thorough analyses set forth in those cases. I note, too, that Defendant has not pointed to – nor have I found -- language in any Pennsylvania State Court opinion that criticizes or otherwise undermines the principles underlying or stated in Section 876(b). In other words, there is no persuasive data to convince me to decide contrary to the Pennsylvania case law on which both *Gilliland* and *Lexington & Concord* relied.

Next, CIT argues that Plaintiff has not sufficiently pleaded his aiding and abetting claims. (Docket No. 91, pp. 37-43). In particular, CIT contends that Plaintiff has failed to plead "knowledge" and "substantial assistance," as required by Section 876(b). *Id.* In this case, the Complaint seeks redress for an "elaborate fraudulent scheme." The scheme, as defined in the Complaint, involved "constantly raising new money and incurring ever-increasing debts to refinance investors, thereby cultivating an illusion that a legitimate profit-making business existed...." (Docket No. 1, ¶2). To prove the tort of aiding and abetting, a plaintiff must show that the defendant

---

[16] Both parties rely, inversely, on *Skipworth v. Lead Indus. Association*, in which the Pennsylvania Supreme Court adopted the principle that a "concert of action" claim under 876(a) cannot lie if plaintiff cannot identify the wrongdoer or the person who acted in concert therewith. 690 A.2d 169, 175 (Pa. 1997). Although CIT urges that *Skipworth* be limited to §876(a), Pennsylvania courts subsequently considering that decision have not taken that approach. *See, Sovereign Bank v. Ganter,* 914 A.2d 415, 421-24 (Pa. Super. 2006).

knowingly and substantially assisted "the principal violation," and that the defendant "must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance."  *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999).

After a review of the Complaint, I find that Kirschner has sufficiently pled his aiding and abetting causes of action for fraud and breach of fiduciary duty against CIT.  *See,* Complaint, ¶¶131, 138-159, 275-285, 296-307.  Under the pleading standing, the instant Complaint asserts sufficient facts with respect to CIT's knowledge of and participation in the scheme on which he bases his suit such that I find his claims for aiding and abetting fraud have facial plausibility.  *See, id; Iqbal,* 129 S.Ct. at 1949.  Therefore, CIT's Motion to Dismiss Kirschner's Claims for aiding and abetting fraud and breach of fiduciary duty is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC S. KIRSCHNER, solely in his capacity as Liquidation Trustee of Le-Nature's Liquidation Trust,<br><br>    Plaintiff,<br><br>vs.<br><br>WACHOVIA CAPITAL MARKETS, LLC, d/b/a WACHOVIA SECURITIES, *et al.*,<br><br>    Defendants. | Civil Action No. 08-1518<br>MDL No. 2021<br>MISC No. 09-162 |

AMBROSE, Chief District Judge

## ORDER OF COURT

AND now, this 16th day of September, 2009, upon consideration of the Motion to Dismiss filed by Defendant, The CIT Group/Equipment Financing, Inc. (Docket No. 90 at 8-cv-1518 and Docket No. 70 at 9-mc-162) and the Motion for Judgment on the Pleading pending filed by Defendants, Marshall Financial, Inc. and Marshall Investments Corporation (collectively "the Marshall Defendants") (Docket No. 92 at 8-cv-1518 and Docket No. 72 at 9-mc-162), it is ordered that said Motions (Docket Nos. 90 and 92 at 8-cv-1518 and Docket Nos. 70 and 72 at 9-mc-162) are denied.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge