**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In Re: Le-Nature's Inc.          MDL Docket no. 2021
                               WDPA Docket no. 2:09-mc-00162

| | |
|---|---|
| Marc S. Kirschner, solely in his capacity as the Liquidation Trustee of the Le-Nature's Liquidation Trust, | ) ) ) )   Civil Action No. 08-1518 |
| Plaintiff, | ) |
| vs. | ) ) |
| Wachovia Capital Markets, LLC, et al., | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge

**OPINION
AND
ORDER OF COURT**

Pending before the court is a Motion to Dismiss filed by Defendants Wachovia Capital Markets, LLC d/b/a Wachovia Securities and Wachovia Bank, National Association ("Wachovia") seeking to dismiss all claims asserted against them (Counts One, Two, Five, Six, Nine, Ten, Twelve, Thirteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, and Twenty-One)[1] in Plaintiff's Complaint. (Docket No. 88 at 8-cv-1518 and Docket No. 65 at 9-mc-162).[2]

---

[1] Count One of the Complaint is a claim for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). (Docket No. 1, ¶¶ 190-201). Count Two is a claim for violations of RICO, 18 U.S.C. § 1962(d). (Docket No. 1, ¶¶ 202-209). Count Five is a claim for fraud. (Docket No. 1, ¶¶ 233-243). Count Six is a claim for conspiracy to commit fraud. (Docket No. 1, ¶¶ 244-254). Count Nine is a claim for aiding and abetting fraud. (Docket No. 1, ¶¶ 275-285). Count Ten is a claim for breach of fiduciary duty. (Docket No. 1, ¶¶ 286-291). Count Twelve is a claim for aiding and abetting breach of fiduciary duty. (Docket No. 1, ¶¶ 296-307). Count Thirteen is a claim for negligence/negligent misrepresentation. (Docket No. 1, ¶¶ 308-313). Count Sixteen is a claim for avoidance of preferential transfers. (Docket No. 1, ¶¶ 322-328). Count Seventeen is a claim for avoidance of intentional fraudulent transfers under section 548(a)(1)(a) of the Bankruptcy Code. (Docket No. 1, ¶¶ 329-332). Count Eighteen is a claim for avoidance of intentional fraudulent transfers under Section 544 of the Bankruptcy Code. (Docket No. 1, ¶¶ 333-338). Count Nineteen is a claim for

Plaintiff, Marc S. Kirschner ("Kirschner"), in his capacity as Liquidation Trustee of the Le-Nature's Liquidation Trust, filed a Brief in Opposition thereto (Docket No. 108), to which Wachovia, with leave of court, filed a Reply (Docket No. 112).   After careful consideration of the same, Wachovia's Motion (Docket No. 88) is granted in part and denied in part as more fully set forth below.

**OPINION**

I.      **Factual Background**

Kirschner is a trustee appointed by the bankruptcy court.  The debtor is Le-Nature's Inc. ("Le-Nature's" or "the corporation").   Le-Nature's was a beverage manufacturer, bottler and distributor based in Latrobe, Pennsylvania.   Gregory Podlucky ("Podlucky") was the chief executive officer of Le-Nature's, its majority shareholder, and the chairman of its board. Complaint ¶¶ 1-34.

Podlucky's brother, Jonathan Podlucky, served as the chief operating officer of Le-Nature's, David Getzik served as the chief financial officer, Robert Lynn was the executive vice president, and Andrew Murin was an advisor to Podlucky.  Podlucky's brother, Getzik, Lynn and Murin all were members of Le-Nature's board of directors and all were nominated to the board by Podlucky.  Complaint ¶¶ 35-37.  At times, these individuals are collectively referred to as "the Insiders."

Le-Nature's produced its first beverage product in 1992, and by 2005, claimed to be

---

avoidance of constructive fraudulent transfers under Section 548(a)(1)(B) of the Bankruptcy Code. (Docket No. 1, ¶¶ 339-343).  Count Twenty is a claim for avoidance of constructive fraudulent transfers under Section 544 of the Bankruptcy Code.  (Docket No. 1, ¶¶ 344-351).  Count Twenty-One is a claim for recovery of the preferential transfers, the Section 548 intentional fraudulent transfers, the intentional fraudulent transfers, the Section 548 constructive fraudulent transfers, and the constructive fraudulent transfers.  (Docket No. 1, ¶¶ 352-355).

[2] The Motion to Dismiss is dual filed at the civil action number (08-cv-1815) and the miscellaneous number (09-mc-162).  Docket numbers from this point forward will refer solely to the civil action number.

producing nearly 60 different products.  The growth in the alleged variety of products it sold purportedly spurred growth in its gross sales, net sales and profits.  Kirschner, however, has asserted that between 2002 and 2005, due to a fraudulent scheme advanced by Podlucky along with the Insiders, Le-Nature's reported sales were grossly disproportionate to its actual sales. Complaint ¶¶ 42, 44-45.

These inflated sales figures enabled Le-Nature's to raise capital with the assistance of the Defendants, in particular, Wachovia, Krones USA, Krones AG, Volker Kronseder, and Heinz Sommer (hereinafter referred to collectively as "Krones"), CIT Group/Equipment Financing, Inc. (hereinafter "CIT"), Marshall Financial, Inc., and Marshall Investments Corporation (hereinafter "Marshall").  Together with Podlucky and the Insiders, these parties engaged in a form of a "Ponzi" scheme – constantly raising money and incurring ever-increasing debts to refinance investors whole cultivating the image of a legitimate profit-making business.  Complaint ¶¶ 1-2.

Specifically, Kirschner alleges that Krones inflated prices on equipment for new Le-Nature's bottling lines and assisted Podlucky and the Insiders in securing financing based on these inflated prices.  Kirschner asserts that CIT and Marshall knew the equipment prices were inflated but still arranged for "synthetic lease" equipment lease financing base on those bogus prices, and Krones, CIT, and Marshall reaped significant fees by using these inflated figures while Podlucky and the Insiders received the excess revenue from the inflated pricing. Complaint ¶¶ 11, 13, 16-18, 134-142.

In addition to the actions of Krones, CIT, and Marshall, from April 2003 through December 2005, Wachovia arranged a series of credit facilities for Le-Nature's.  In an effort to secure lenders for each facility, Wachovia assisted Le-Nature's in the preparation and distribution of a "Confidential Information Memorandum," but these memoranda materially

misrepresented (among other things) Le-Nature's sales and profits.  These credit facilities were supposed to generate funds for the expansion of Le-Nature's production lines. Although Le-Nature's did expand its production lines by expanding the capacity of its Latrobe, Pennsylvania plant in 2003 and by building a new bottling plaint in Phoenix, Arizona in 2005, Kirschner asserts these expansions were unnecessary given the false sales figures.  Kirschner further avers the credit facilities were undertaken to finance and prop up Le-Nature's slumping operations. Complaint ¶¶ 42-46, 60, 62, 72, 76, 81, 96.

In May 2006, Le-Nature's minority preferred shareholders (who were represented by three independent directors on the Le-Nature's board), initiated an action in the Delaware Chancery Court against the corporation, Podlucky, his brother, Murin and Lynn.[3]  In June 2006, the Chancery Court entered a preliminary injunction restraining Le-Nature's from taking certain steps, such as making capital expenditures in amount in excess of $1,000, without minority shareholder approval. Complaint ¶ 48.

In October 2006, Le-Nature's preferred minority shareholders were told that Podlucky had converted funds deposited by one of the corporation's equipment lessors, AIG.  This information was passed to the shareholders upon AIG's discovery that Krones had transferred nearly $20 million of AIG's deposit to Le-Nature's based on a forged AIG letter "authorizing" the transfer of funds.  On October 20, 2006, following the revelation of the forgery, the Delaware Chancery Court issued a temporary restraining order, and on October 27, 2006, the Court

---

[3] Kirschner's Complaint explains that in addition to the credit facilities, in 2000 and 2002, Le-Nature's issued over 8 million shares of convertible preferred stock. This stock was purchased by three investment funds – the "Pelham Fund" and two separate "Baum Funds." Pelham Fund's nominee to Le-Nature's Board of Directors was Venita Fields, and the Baum Funds' nominees were Ruth Huet and Ford Bartholomew.  In 2006, William Thomas replaced Ford Bartholomew.  These board members allegedly had no knowledge of the "form, substance or magnitude" of the alleged scheme and when they became aware of it, they filed for relief in the Chancery Court.  Complaint ¶¶ 183-185.

approved the preferred minority shareholders' request for the appointment of a custodian for Le-Nature's, appointing Kroll Zolfo Cooper ("KZC") as custodian.[4]   On November 1, 2006, the managing director of KZC filed an affidavit with the Chancery Court detailing financial discrepancies at Le-Nature's.   Also on November 1, 2006, several of Le-Nature's creditors initiated involuntary bankruptcy proceedings. Complaint ¶¶ 49-53.

Since the initiation of the bankruptcy proceedings, the investigation led by Kirschner has uncovered two separate accounting systems at Le-Nature's: one system ("Navision") tracked actual sales, accounts payable, inventory, etc., while the other system ("Real World") contained primarily fraudulent numbers to which only Podlucky and one Le-Nature's employee (Ms. Andreycak)[5] had access. In addition, a secret room was discovered at the Latrobe bottling

---

[4]   I take judicial notice of the Chancery Court's October 27, 2006, order appointing a custodian to take "possession and control of Le-Nature's . . . its business, operations and . . . Assets, and to temporarily administer and manage the Assets, operate the [Le-Nature's] business . . . " until further order of the Court, and holding Le-Nature's and its Assets were *in custodia legis*, meaning they could not be distrained, nor otherwise interfered with by a private person. (Docket No. 91-2, ¶¶ 2-3).

The Order also states, "... until otherwise ordered by the Court . . . [Podlucky, Podlucky's brother, Murin, and Lynn] . . . shall cooperate with the Custodian . . . and shall accept the instructions of the Custodian with respect to [Le-Nature's] and the Assets and shall act with and under the supervision, consent and instruction of the Custodian with respect to same and, in so doing, are hereby restrained and enjoined from (I) making, or committing [Le-Nature's] to make, any expenditure of Company funds, (ii) accessing tampering with or destroying any [Le-Nature's] property, books or records, (iii) selling, leasing or otherwise disposing of . . . any assets of [Le-Nature's] . . . (iv) making, or committing [Le-Nature's] to make, any loans, advances or investments of any kind or nature, or entering into, or committing [Le-Nature's] to enter into, any guarantees, and (v) causing or committing [Le-Nature's] to incur any debt or otherwise to become liable to any party for any reason. [Le-Nature's and Podlucky, Podlucky's brother, Murin, and Lynn] shall not take any actions . . .without the consent of the Custodian . . . ." Id. ¶ 4.

Finally, the Order notes, "...until otherwise ordered by the Court . . . [Podlucky, Podlucky's brother, Murin, and Lynn] are hereby restrained and enjoined from withdrawing or transferring any funds from [Le-Nature's] bank or other financial accounts. . . .The Custodian may take such action and incur ... such costs and charges, and make disbursements as may be actually necessary for taking possession and control of the Assets, preserving the Assets, operating [Le-Nature's] business in the ordinary course... In the event that the Custodian determines that it is in the best interest of [Le-Nature's] to take any action other than in the ordinary course of business, the Custodian shall make such a recommendation as it deems appropriate to [Le-Nature's] board of directors; . . . if the board of directors does not unanimously approve the recommendation action, [Le-Nature's] may apply to the Court on notice to plaintiffs and defendants for authorization to take such action as it deems to be necessary or desirable." Id. ¶ 9.

[5]   Andreycak is Le-Nature's former Director of Accounting.  In or about April 2008, Andreycak pleaded guilty to four felony counts of bank fraud, wire fraud, conspiracy, and falsifying income tax returns. Complaint ¶ 57.

facility which held safes that contained jewelry purchased by Podlucky.   Podlucky also

purchased over 8,000 Lionel model trains and was building a mansion for his personal

residence.   Kirschner avers that the jewelry, trains and residence all were paid for with monies

Podlucky embezzled from Le-Nature's through the "scheme."  Complaint ¶ 54.

## II.   Legal Analysis

### A.      Legal Standard

Wachovia filed its Motion to Dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal

Rules of Civil Procedure.   When deciding whether to grant or deny a 12(b)(6) motion the

Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations
> must be enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if doubtful in
> fact).

Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007) (citation and footnote omitted); see also

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations

must be enough to raise a right to relief above the speculative level).

Most recently, in Ashcroft v. Iqbal, ___ U.S.___, 129 S. Ct. 1937 (2009), the Supreme

Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Iqbal, 129 S. Ct. at1949 (citations omitted).

In Iqbal, the Court specifically highlighted the two principles which formed the basis of

the Twombly decision: First, for the purposes of a motion to dismiss, courts must accept as true

all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations.  Id. at 1949-50; see also Fowler v. UPMC Shadyside, __ F.3d __, No. 07-4285, 2009 WL 2501662 (3d Cir. Aug. 18, 2009).  Second, a complaint will only survive a motion to dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense.  Iqbal, 129 S. Ct. at 1950; Fowler, _ F.3d at _.  Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief. Iqbal, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

**B.  RICO and Common Law Claims**

**1.  Cause of Damages**

Wachovia's first argument is that Kirschner's claims fail because Wachovia did not cause Le-Nature's to suffer any legally cognizable damages.  (Docket No. 89, at 7-13). Specifically, Wachovia asserts that the Complaint attempts to assert two types of damage: (1) "artificial prolongation of [the] failed and insolvent enterprise . . . by being kept afloat with spurious debt," and (2) losses from the theft and active malfeasance of the Insiders.  Id. at 8. Wachovia argues that the first allegation is an attempt to assert a "deepening insolvency" theory of recovery that must fail under precedent set by the Court of Appeals for the Third Circuit in In re CitX Corp., 448 F.3d 672 (3d Cir. 2006).  Wachovia contends that the second allegation states a claim for damages against the Insiders but not against Wachovia.  Id.  I address each of these arguments in turn.

**a. "Deepening Insolvency"**

In Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340 (3d

7

Cir. 2001), a matter arising out of the bankruptcy of two lease financing corporations that allegedly were operated as a "Ponzi scheme," the Court of Appeals for the Third Circuit described "deepening insolvency" as a type of "injury to the Debtors' corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life."  Id. at 347.  In Lafferty, the court of appeals predicted that "where 'deepening insolvency' causes damage to corporate property," the Pennsylvania Supreme Court "would provide a remedy by recognizing" a deepening insolvency cause of action.  Id. at 351.  In CitX, decided five years after Lafferty, the court of appeals clarified that, although Lafferty recognized deepening insolvency as a valid cause of action in Pennsylvania, the court "never held that it was a valid theory of damages for an independent cause of action."  CitX, 448 F.3d at 677; see also id. ("Those statements in Lafferty were in the context of a deepening-insolvency cause of action.  They should not be interpreted to create a novel theory of damages for an independent cause of action like malpractice.").  The CitX court further held that although Lafferty approved deepening insolvency as a tort for fraudulent conduct, allegations of negligence cannot support a deepening insolvency claim.  CitX, 448 F.3d at 680-81.

Although the CitX court held that deepening insolvency is not an independent form of damages, it made clear that

> Where an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation.

Id. at 678 (quoting Sabin Willett, The Shallows of Deepening Insolvency, 60 Bus. Law. 549, 575 (2005)).  In other words, traditional damages stemming from a given cause of action "do not become invalid merely because they have the effect of increasing a corporation's insolvency." Thabault v. Chait, 541 F.3d 512, 523 (3d Cir. 2008); see also Official Comm. of Unsecured

8

Creditors of Allegheny Health, Educ. & Research Found. v. Pricewaterhouse Coopers, LLP, No. 2:00cv684, 2007 WL 141059, at *7 (W.D. Pa. Jan. 17, 2007) ("AHERF").

Here, Wachovia seeks dismissal of Kirschner's common law and RICO claims against it because, according to Wachovia, the damages Kirschner seeks to recover are similar to a deepening insolvency measure of damages and, thus, are precluded by CitX. (Docket No. 89, at 8-9). I disagree. As an initial matter, as Kirschner makes clear in his opposition brief, the Complaint does not assert an independent "deepening insolvency" claim. (Docket No. 108, at 8-9). Indeed, the term "deepening insolvency" does not appear anywhere in the Complaint. Id. Moreover, Kirschner states in his opposition that he is not seeking deepening insolvency damages for any of his common law or RICO claims. Id. As Kirschner points out and as set forth above, neither Pennsylvania law nor CitX precludes otherwise available recovery simply because a complaint makes reference to "an injury to the Debtor's corporate property from the fraudulent expansion of corporate debt and prolongation of its corporate life." Id. at 9 (quoting Thabault, 541 F.3d at 520). To the contrary, as previously explained, if available under applicable law, damages for an increase in a corporation's liabilities, decrease in fair asset value, or lost profits, remain available regardless of the impact on the solvency calculation.

I agree with Kirschner that, although the Complaint refers to the "artificial prolongation of [the] failed and insolvent enterprise," it also alleges that Wachovia's purported wrongful conduct caused an increase in Le-Nature's liabilities. Wachovia does not argue that such damages are unavailable under Kirschner's common law or RICO claims. Moreover, as CitX and Thabault make clear, such damages do not become unavailable simply because the alleged increase in liabilities also may have deepened Le-Nature's insolvency. Accordingly, Wachovia's motion to dismiss Kirschner's common law and RICO claims on deepening insolvency grounds is denied.

See, e.g., AHERF, 2007 WL 141059, at *7 (denying motion for summary judgment where complaint alleged "independent causes of action in the form of professional negligence, breach of contract, and aiding and abetting breach of fiduciary duty, which, if viable, give AHERF a 'remedy for the increase in its liabilities, the decrease in fair market value, or its lost profits'").

### b.  Proximate Cause – Insiders' Malfeasance

Wachovia argues that to the extent Kirschner properly alleges claims for malfeasance against Podlucky and the Insiders, he does not allege that Wachovia caused that malfeasance or otherwise caused any damage to Le-Nature's resulting therefrom.  (Docket No. 89, at 10-11).  Wachovia contends that it was merely a lender, and the Complaint does not contain any allegations that Wachovia extended any loans to *enable* the fraud at Le-Nature's.  Id.   In Wachovia's view, without such allegations, Kirschner's claims must fail for lack of damages causation.  Kirschner responds by stating that he has pled that Wachovia's conduct constituted a substantial factor in bringing about Le-Nature's harm, and, thus, it proximately caused Le-Nature's injury.

As noted by the Court of Appeals for the Third Circuit in the multidistrict litigation matter, In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781 (3d Cir. 1999), "[w]hether plaintiffs have adequately alleged causation depends greatly on the particulars of the state law governing each claim."  Id. at 794.  Accordingly, I must apply Pennsylvania law to the instant matter. In Lux v. Gerald E. Ort Trucking, Inc., 887 A.2d 1281 (Pa. Super. Ct. 2005), the Pennsylvania Superior Court held:

> "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." Dudley v. USX Corp., 414 Pa. Super. 160, 606 A.2d 916, 923 (1992) (citations omitted). Proximate cause does not exist where the causal chain of events resulting in plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm. Id., 606 A.2d at 923.

887 A.2d at 1286-87.

Kirschner acknowledges that a bank cannot be liable in tort simply for making a loan that it knew, or should have known, the debtor could not repay.  (Docket No. 108, at 10-11). He argues, however, that the Complaint alleges that Wachovia did much more than make loans. Among other things, the Complaint avers that Wachovia raised the monies squandered or looted from Le-Nature's through a series of lending transactions based upon financial statements that Wachovia knew or knowingly ignored were materially false; and that Wachovia concealed the true financial condition of Le-Nature's from the Company's innocent decision makers.  See, e.g., Complaint ¶¶ 2, 44-48, 68, 71-73, 88, 100-118, 131, 134-142, 144-182. Based on the facts as pled by Kirschner, Wachovia engaged with Podlucky and the Insiders in a scheme to conceal the true nature of Le-Nature's finances from the Company's independent decision makers, resulting in Le-Nature's alleged injuries.  Kirschner has adequately pled facts that illustrate Wachovia's alleged wrongful acts, Wachovia's knowledge that its acts would further a fraud, and that Wachovia enabled the fraud.  Accordingly, I find Wachovia's actions and inactions (as pled) to be a substantial factor contributing to Le-Nature's alleged injuries. For these reasons, I decline to dismiss the common law claims against Wachovia for failure to adequately plead proximate cause.

### c. Causation – RICO Claims

Wachovia also seeks dismissal of Kirschner's RICO claims against it for failure to plead damages causation.  (Docket No. 89, at 11-14).  Wachovia argues that RICO requires a plaintiff to plead and prove a "direct causal connection" between the RICO violation and the injury to its business or property.  Id. at 11 (citing Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006)).  Wachovia contends that, although courts have used the term "proximate causation" to

11

describe this requirement, the causal link nevertheless must be much more direct than what would suffice to satisfy a common-law proximate cause requirement.  Id. at 11-12.  Kirschner disagrees and argues that the Complaint clearly alleges damages sufficient to support its RICO claims.  (Docket No. 108, at 12-13).

For the same reasons set forth in the immediately preceding subsections, I find that Kirschner has pled damages causation sufficient to support its RICO claims against Wachovia. The Supreme Court in Anza stated that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  547 U.S. at 461.  Here, contrary to Wachovia's assertions, the Complaint describes Le-Nature's as one of the direct victims of the fraudulent scheme.  Complaint ¶ 195 ("[T]he . . . predicate acts were performed . . . for the purpose of executing the Fraudulent Scheme and with the intent to defraud Le-Nature's. . . .").

Similar to the common law counts, the Complaint further alleges with respect to the RICO claims that:

> Le-Nature's was injured because its operations were needlessly prolonged and it was caused to incur enormous debts that it did not have the ability to repay, thereby greatly dissipating its assets, and thereby greatly increasing its liabilities. Had the independent decision makers of Le-Nature's known its true financial condition, they would have blocked Podlucky's expansion efforts, moved to stop the needless financings in 2003 through 2006 that were promoted by Wachovia and sought to liquidate a failed enterprise long before October 2006.

Id. ¶ 199; see also id. ¶ 208.  Courts have held, and I agree, that "[i]t is reasonably foreseeable that misrepresenting a company's financial condition, and thus hiding from its innocent managers that the company is being driven into the ground, will cause the company harm."  In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 580 (S.D.N.Y. 2007), aff'd sub. nom Pappas v. Bank of Am. Corp., 309 F. App'x 536 (2d Cir. 2009); see also In re Allou Distribs., Inc., 395

12

B.R. 246, 266 (Bankr. E.D.N.Y. 2008) ("[A]llegations that a corporation's assets were dissipated, diverted, or depleted, without a corresponding benefit, are sufficient to allege damages."). For this reason as well, I find that Kirschner has adequately pled RICO damages causation against Wachovia in this case.

    **2.**     **Fraud**

Wachovia's second argument challenges the sufficiency of Wachovia's pleadings with respect to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires particularity when pleading fraud. See Marangos v. Swett, Civ. No. 8-4146, 2009 WL 1803264, at * 3 (3d Cir. June 25, 2009). Specifically, Rule 9(b) provides that:

> [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be pleaded with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b). "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" in order to allow them the opportunity to respond to the complaint "and to prevent false or unsubstantiated charges." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (citing Seville Indus. Mach. v. Southmost Mach., 742 F.2d 786, 791 (3d Cir. 1984)).

Thus, to satisfy Rule 9(b), Kirschner must "plead with particularity the 'circumstances' of the alleged fraud." Rolo, 155 F.3d at 658. Kirschner need not "plead the 'date, place or time' of the fraud, so long as [he] use[s] an 'alternative means of injecting precision and some measure of substantiation into [his] allegations of fraud." Id. (quoting Seville, 742 F.2d at 791). Further, I am cognizant that, where a party alleges a complex corporate fraud, much of the factual information necessary to describe the details of the fraud may be "peculiarly within the defendant's knowledge and control." See Kaiser Found. Health Plan, Inc. v. Medquist, Inc., Civ.

No. 8-4376, 2009 WL 961426, at * 6 (D.N.J. Apr. 8, 2009) (citing In re Craftmatic Sec. Litig., 890 F.2d 628, 645 (3d Cir. 1989) and Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir. 1992)).

Here, Wachovia argues that the Complaint fails to state a common law fraud claim against it because Kirschner does not allege fraudulent misrepresentation or justifiable reliance. (Docket No. 89, at 14-15). With respect to the first part of this argument – failure to allege a fraudulent misrepresentation – Wachovia alleges that it was Le-Nature's that defrauded Wachovia, not vice-versa, and that any allegation that Wachovia defrauded third parties (such as lenders or noteholders that extended credit to Le-Nature's) is irrelevant because Kirschner can only bring claims that belong to Le-Nature's. Id. at 14. Wachovia further contends that, to the extent the Complaint makes minimal reference to misrepresentations and reliance, such references do not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Id. Kirschner responds that the Complaint identifies numerous misrepresentations on which Le-Nature's relied as well as concealment of numerous material facts. (Docket No. 108, at 13-16).

The elements of fraud in Pennsylvania are: (1) a material misrepresentation of fact, (2) which is false, and (3) made with knowledge of its falsity, (4) which is intended to induce the receiver to act, and (5) upon which a party justifiably relies. Michael v. Shiley, Inc., 46 F.3d 1316, 1333 (3d Cir. 1995) (citing Mellon Bank Corp. v. First Union Real Estate, 951 F.2d 1399, 1409 (3d Cir. 1991)). It is further well-established in Pennsylvania that

> fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture. We have held that "fraud is composed of a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement.

14

Id. (quoting <u>Moser v. DeSetta</u>, 589 A.2d 679, 682 (Pa. 1991) (other citations omitted)); <u>see also</u> <u>Bortz v. Noon</u>, 729 A.2d 555, 560 (Pa. 1999) (discussing elements of intentional misrepresentation and intentional non-disclosure).

After careful review of the Complaint, I find that Wachovia's criticisms of Kirschner's fraud claim are without merit.   First, I disagree that the Complaint is devoid of allegations of misrepresentation or reliance.   Second, I find that the allegations of misrepresentation and reliance satisfy the pleading requirements of Rule 9(b) and state a plausible claim for fraud against Wachovia.

In addition to numerous allegations that Wachovia made material misrepresentations regarding the operations and financial performance of LeNature's in various Wachovia memoranda, reports, and bulletins directed to lenders, the Complaint sets forth detailed allegations that Wachovia deliberately concealed material facts from Le-Nature's innocent decision makers.   <u>See, e.g.</u>, Complaint ¶¶ 65-67, 73-74, 83, 87-88, 91-94, 101-103, 114-117, 161-185, 234-240.   For example, the Complaint alleges:

> Le-Nature's' failure to make timely interest payments continued throughout 2006. In fact, upon information and belief, on August 29, 2006 - two days before the September 2006 Facility closed - Le-Nature's was still behind on its interest payments.   *Wachovia never disclosed this disturbing information to Le-Nature's' independent decision makers* or its other creditors.

Id. ¶ 114 (emphasis added).   It also avers, <u>inter alia</u>, that Wachovia hired someone to audit Le-Nature's – for the first time since . . . 2003 . . . . PriceWaterhouseCoopers . . . [i]n its final report . . . noted significant accounting discrepancies, including erroneous accounting of capital leases as operating leases and overstatement of EBITDA.   Nonetheless Wachovia kept the PWC conclusions to itself and pushed ahead with yet another $285 million in financing for Le-Nature's Id. 125-126; <u>see also</u> <u>id.</u> ¶ 128.   The Complaint further specifically alleges:

> Podlucky, the Insiders, and Wachovia made the material misrepresentations and omitted to disclose the material facts [t]herein alleged with the intention of inducing *Le-Nature's* to agree to Podlucky and the Insiders' expansion efforts and the several financings Wachovia arranged in the years 2003 to 2006, *and Le-Nature's, through its independent decision makers, did reasonably and justifiably rely on those misrepresentations and omissions in agreeing to those financings and allowing the prolongation of the Le-Nature's enterprise.*

Id. ¶ 241 (emphasis added).

As evidenced by the sampling of allegations set forth above, Wachovia's contention that the fraud claim is deficient because it does not allege any misrepresentations by Wachovia or any justifiable reliance by Le-Nature's must fail.  The Complaint has more than sufficient detail concerning material misrepresentations (or omissions) and justifiable reliance to pass muster under 9(b).

Wachovia's argument that any allegations that Wachovia defrauded third parties such as lenders or noteholders are irrelevant because Kirschner can only bring claims that belong to Le-Nature's does not change this conclusion.  As set forth above, Kirschner's fraud claim is not that Wachovia defrauded third parties, but that *Le-Nature's* relied to its detriment on Wachovia's misrepresentations, including misrepresentations initially made to lenders and other investors. Complaint ¶¶ 240-241.   Courts applying Pennsylvania law have recognized that liability for fraudulent misrepresentation extends beyond those to whom the declarant directs his fraudulent misrepresentation to those whom the declarant has special reason to anticipate will be induced to act.  Michael, 46 F.3d at 1334-35 (quoting Woodward v. Dietrich, 548 A.2d 301, 313, 315 (Pa. Super. Ct. 1988)).  Le-Nature's plausibly falls into this latter category at least based on the allegations of the Complaint.  See, e.g., Complaint ¶ 241.  Moreover, as set forth above, the Complaint specifically alleges that Wachovia intentionally concealed material facts from Le-Nature's independent decision makers.  Although, for the reasons set forth elsewhere in this

16

Opinion, I find that Wachovia did not have a fiduciary duty to Le-Nature's, Pennsylvania courts have recognized that there is a duty to disclose in a number of other situations, including when disclosure is necessary to prevent an ambiguous statement from being misleading, and where an undisclosed fact is basic to a transaction.  Here, the Complaint alleges, inter alia, that "Wachovia aggressively promoted the various financings made possible by the Fraudulent Scheme, derived great benefit from those financings, had significant access to evidence regarding the Fraudulent Scheme, and knew that the independent decisions [sic] makers of Le-Nature's did not know of that Scheme."  Complaint  ¶ 237.  The Complaint further alleges that Wachovia's conduct resulted in "Le-Nature's agreeing to what became hundreds of millions of dollars of additional debt that needlessly prolonged the life of the failed Le-Nature's enterprise and greatly diminished its assets."  Id. ¶ 240.  Thus, Wachovia's concealment of material facts from Le-Nature's is relevant at this stage as well.

I also find nondispositive Wachovia's argument that the fraud claim against Wachovia is "illogical" because, as evidenced by Andreycak's guilty plea, it was Le-Nature's that defrauded Wachovia, and not vice-versa.  (Docket No. 89, at 14).  According to the Complaint, Andreycak was acting in conjunction with Podlucky and the Insiders, and the Complaint cites her guilty plea as evidence of Podlucky and the Insiders' role in the alleged Fraudulent Scheme.  Complaint ¶ 57.  Thus, the guilty plea is not conclusive proof at this stage that Le-Nature's defrauded Wachovia.  In addition, the Complaint alleges throughout that, to the extent Podlucky and the Insiders provided Wachovia with false information, Wachovia knew or deliberately ignored the misinformation, and nevertheless continued its participation in the Fraudulent Scheme and assisted Podlucky and the Insiders in hiding the truth.  See, e.g., id. ¶¶ 77, 80, 86, 89-90, 93-96, 99-118, 122, 126.  In short, the ultimate impact of Andreycak's guilty plea entails factual issues

best left for analysis after discovery.  Accordingly, dismissal based on the guilty plea is improper at the 12(b)(6) stage under Iqbal.

### 3.    Aiding and Abetting Fraud and Breach of Fiduciary Duty

Wachovia's third argument is that Kirschner's claims for aiding and abetting fraud and breach of fiduciary duty are fatally flawed.  (Docket No. 89, at 15-16).  Specifically, Wachovia argues that claims for aiding and abetting both fraud and breach of fiduciary duty are not cognizable under Pennsylvania law.  Pertinent here, the Pennsylvania Supreme Court has not expressly adopted the Restatement (Second) Torts § 876(b), on which Kirschner relies for his aiding and abetting claims.  See, e.g., Clayton v. McCullough, 670 A.2d 710, 713 (Pa. Super. Ct. 1996).

That Section reads, in its entirety, as follows:

§ 876 Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a)    does a tortious act in concert with the other or pursuant to a common design with him, or

(b)    knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c)    gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) Torts § 876(b).

When state law issues arise that remain unaddressed by the highest court in the state, a federal court must predict how that court would rule.  Berrier v. Simplicity Mfg., 563 F.3d 38, 45-46 (3d Cir. 2009).  In so doing, I may consider "relevant state precedents, analogous decisions,

considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980).  In making that prediction, "a federal court can . . . give due regard, but not conclusive effect, to the decisional law of lower state courts."  Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) (citation omitted).  Moreover, I am not to disregard the opinions of intermediate appellate courts, unless persuasive data convinces me that the Pennsylvania Supreme Court would decide to the contrary.  Id.

On this issue, I reach the same conclusion as that in Gilliland v. Hergert, No. 2:05-cv-01059, 2007 U.S. Dist. LEXIS 84508 (W.D. Pa. Nov. 15, 2007), and Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC, 513 F. Supp. 2d 304, 317 (E.D. Pa. 2007), both of which predicted that the Supreme Court of Pennsylvania would recognize Section 876(b).[6]  I am persuaded by the thorough analyses set forth in those cases.  I note, too, that Wachovia has not pointed to – nor have I found -- language in any Pennsylvania state court opinion that criticizes or otherwise undermines the principles underlying or stated in Section 876(b).   In other words, there is no persuasive data to convince me to decide contrary to the Pennsylvania caselaw on which the courts in both Gilliland and Lexington & Concord relied.

Next, Wachovia argues that, even if the Pennsylvania Supreme Court would recognize aiding and abetting claims, Kirschner has not sufficiently pleaded a claim for aiding and abetting breach of fiduciary duty.  (Docket No. 89, at 16-18).[7]  In particular, Wachovia contends that

---

[6] Both parties rely, inversely, on Skipworth v. Lead Indus. Association, in which the Pennsylvania Supreme Court adopted the principle that a "concert of action" claim under 876(a) cannot lie if plaintiff cannot identify the wrongdoer or the person who acted in concert therewith.  690 A.2d 169, 174-175 (Pa. 1997).  Although Defendant urges that Skipworth be limited to 876(a), Pennsylvania courts subsequently considering that decision have not taken that approach.

[7] Wachovia does not advance this argument with respect to Kirschner's aiding and abetting fraud claim.  Wachovia's only argument for dismissal of the aiding and abetting fraud claim (Count Nine) is that Pennsylvania does not recognize such a cause of action.  As set forth above, Kirschner's argument in that regard is unpersuasive.

19

Kirschner has failed to plead "knowledge" and "substantial assistance," as required by Section 876(b).  Id.  In this case, the Complaint seeks redress for an "elaborate fraudulent scheme." The scheme, as defined in the Complaint, involved "constantly raising new money and incurring ever-increasing debts to refinance investors, thereby cultivating an illusion that a legitimate profit-making business existed...."  (Docket No. 1, ¶ 2).  To prove the tort of aiding and abetting, a plaintiff must show that the defendant knowingly and substantially assisted "the principal violation," and that the defendant "must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance."  Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999).

After a review of the Complaint, I find that Kirschner has sufficiently pled his aiding and abetting breach of fiduciary duty cause of action against Wachovia.  See Complaint ¶¶ 59-130, 161-182, 296-307.  Under the applicable pleading standard, the Complaint asserts sufficient facts with respect to Wachovia's knowledge of and participation in the scheme on which Kirschner bases his suit such that I find his claims for aiding and abetting fraud have facial plausibility.  See id.; Iqbal, 129 S. Ct. at 1949.  Therefore, Wachovia's motion to dismiss Kirschner's claim for aiding and abetting breach of fiduciary duty is denied.

**4.  Breach of Fiduciary Duty**

Wachovia's fourth argument is that Kirschner has failed to allege sufficient facts to assert a breach of fiduciary duty claim against it.  (Docket No. 89, pp. 19-21).  Fiduciary or confidential relationships arise when one party places confidence in another with resulting superiority and influence on the other.  Yohe v. Yohe, 353 A.2d 417 (Pa. 1976).  Ordinarily, under Pennsylvania law, a lender does not owe a fiduciary duty to a borrower.  Bucci v.

20

Wachovia Bank, N.A., 591 F. Supp. 2d 773, 783-84 (E.D. Pa. 2008); Waye v. Commonwealth

Bank, 846 F. Supp. 321, 326 (M.D. Pa. 1994); Temp-Way Corp. v. Continental Bank, 139 B.R.

299, 318 (E.D. Pa.) (citing Grace v. Moll, 132 A. 171, 171-72 (1926)), aff'd, 981 F.2d 1248 (3d

Cir. 1992); Fed. Land Bank of Baltimore v. Fetner,, 410 A.2d 344, 348 (Pa. Super. Ct. 1979);

Buczek v. First Nat'l Bank, 531 A.2d 1122, 1124 (Pa. Super. Ct. 1987).

> Although a lender does not ordinarily owe a fiduciary duty to a borrower, a
> fiduciary relationship may arise if the lender gains substantial control over the
> borrower's business affairs.  Control over the borrower is demonstrated when
> there is evidence that the lender was involved in the actual day-to-day
> management and operations of the borrower or that the lender had the ability
> to compel the borrower to engage in unusual transactions. The mere monitoring of
> the borrower's operations and the proffering of management advice by lenders,
> without more, does not constitute control.  Moreover, action taken by the creditor
> to minimize risk does not constitute total and absolute control.

Temp-Way Corp., 139 B.R. at 318 (internal citations omitted).

Kirschner responds that he has alleged an "intimate and special relationship with Le-

Nature's" giving rise to a breach of a fiduciary duty.  (Docket No. 108, p. 29).  He argues that

"the Complaint sets forth in detail how Wachovia Bank and Wachovia Securities acted as Le-

Nature's 'financial advisor, investment bank, merger and acquisition consultant, underwriter,

lender, securities broker, book runner and *de facto* partner in a multi-year effort to feed the

relentless fraudulent growth of what actually was a failed beverage enterprise.'" (Docket No.

108, at 30).  Under the law set forth above, this "partnership" is simply not enough to set forth a

cause of action for a breach of fiduciary duty.

After a review of the Complaint, I find that the Complaint fails to allege sufficient facts to

assert a cause of action for breach of fiduciary duty on the part of Wachovia.  The Complaint

fails to assert that Wachovia exerted substantial control over the business operations of Le-

Nature's sufficient to establish that a fiduciary duty was owed to Le-Nature's.  Further, the

Complaint fails to establish that Wachovia exerted an overmastering influence and domination over Le-Nature's. Consequently, Wachovia's motion to dismiss the tenth cause of action against Wachovia for Breach of Fiduciary Duty is granted.

Having argued that Le-Nature's and Wachovia were *de facto* partners (Docket No. 108, at 30), I cannot envision a way to amend the Complaint to sufficiently allege a cause of action for breach of fiduciary duty against Wachovia and, therefore, believe any attempt to do so would be futile. As a result, leave to amend the Complaint to reassert a claim for breach of fiduciary duty against Wachovia is denied.

### 5. Negligence/Negligent Misrepresentation

Wachovia's fifth argument is based on the thirteenth cause of action for negligence/negligent misrepresentation. (Docket No. 89, at 21-23). To begin with, Wachovia argues that the negligent/negligent misrepresentation claim must fail because the Complaint fails to allege facts demonstrating a duty owed by Wachovia to Le-Nature's. Id. In response, Kirschner first argues that the duty exists because Wachovia owed Le-Nature's a fiduciary duty. As set forth above, under the facts pled in the Complaint, Wachovia does not owe Le-Nature's a fiduciary duty.

Kirschner also argues, however, that Wachovia had a duty to disclose under Restatement (Second) Torts § 552. (Docket No. 108, at 30-31). A cause of action for negligent misrepresentation under Pennsylvania law is provided by Section 552 of the Second Restatement of Torts, which provides, in pertinent part, as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) Torts § 552(1) (1977); see also Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 287-88 (Pa. 2005).   "Liability extends only to injuries suffered by those who justifiably rely on information and whose reliance the defendant could have reasonably foreseen."   Sonecha v. New England Life Ins. Co., 124 F. App'x 143, 146 (3d Cir. 2005) (citing Bilt-Rite Contractors, 866 A.2d at 286-87 and Mill-Mar, Inc. v. Statham, 420 A.2d 548, 552 (Pa. Super. Ct. 1980)).   Wachovia does not respond to this argument in its reply brief.  See Docket No. 110.

After a review of the Complaint, I find that the Complaint asserts sufficient facts to show a duty on the part of Wachovia.  For example, the Complaint alleges:

> 114.   Le-Nature's' failure to make timely interest payments continued throughout 2006.  In fact, upon information and belief, on August 29, 2006 - two days before the September 2006 Facility closed - Le-Nature's was still behind on its interest payments.  Wachovia never disclosed this disturbing information to Le-Nature's independent decision makers or its other creditors.

> 130.   On November 1, 2006, Le-Nature's was forced into bankruptcy and taken over by KZC, and the Fraudulent Scheme was over.  However, that Scheme - perpetrated by Podlucky and the Insiders with the substantial assistance of Wachovia, among others - dragged out the life of Le-Nature's for over four years and wasted hundreds of millions of dollars on avoidable transactions in the process.  The independent decision makers of Le-Nature's, had they known the truth about Le-Nature's and it unsustainable operations, could have blocked Podlucky's expansion efforts, moved to stop the unnecessary financing promoted by Wachovia, and closed Le-Nature's' operations down years earlier.

(Docket No. 1, ¶¶ 114, 130).  Therefore, Wachovia's Motion to Dismiss Count Thirteen on the basis of failure to allege a duty is denied.

Next, Wachovia argues that Kirschner's negligence/negligent misrepresentation claim

fails based on the "gist of the action" doctrine.[8]  (Docket No. 89, at 22).  "The gist of the action doctrine bars a plaintiff from bringing a tort claim for damages that merely replicates a claim for breach of an underlying contract."  Bealer v. Mut. Fire, Marine & Inland Ins. Co., 242 F. App'x 802, 804 (3d Cir. 2007) (citing Werwinski v. Ford Motor Co., 286 F.3d 661, 680 n.8 (3d Cir. 2002)); Grimm v. Discover Fin. Servs., No. 08-cv-747, 2008 WL 4821695, *11 (W.D. Pa. Nov. 4, 2008).

To begin with, I note that Kirschner is not pursuing a claim against Wachovia for breach of contract.  See Complaint, Docket No. 1.  Thus, there is no concern of duplication of claims or duplicative recovery in this case.  Furthermore, the allegations in the Complaint do not demonstrate that the contracts and tort claims are "inextricably intertwined."  See id.  "The difference between tort and contract actions is noted by the fact that tort actions arise where a party breaches a duty imposed as a matter of social policy; whereas contract actions arise where a party breaches a duty imposed by mutual consensus between the parties."  Weber Display & Packaging v. Providence Washington Ins. Co., No. 02-7792, 2003 WL 329141, at *3 (E.D. Pa. Feb. 10, 2003) (citing Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 663 A.2d 753 (1995)).  Kirschner's claim for negligence/negligent misrepresentation sounds primarily in tort, rather than contract law.  Therefore, the "gist of the action" doctrine does not bar Kirschner's claim for negligence/negligent misrepresentation.  Consequently, Wachovia's Motion to Dismiss Count Thirteen on the basis of the "gist of the action" doctrine is denied.

Next, Wachovia argues that Kirschner's negligence/negligent misrepresentation claim is barred by the economic loss doctrine.  (Docket No. 89, at 23).  Under Pennsylvania law, the

---

[8] Although the "gist of the action" doctrine has not been expressly adopted by the Pennsylvania Supreme Court, the Pennsylvania Superior Court and the United States Court of Appeals for the Third Circuit, as well as many United States District Courts, including this Court, have predicted the Pennsylvania Supreme Court will adopt the doctrine.  See Grimm, 2008 WL 4821695, at *11 (string citing cases predicting adoption of "gist of the action" doctrine).

economic loss doctrine states that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Grimm, 2008 WL 4821695, at *12 (quoting Adams v. Copper Beach Townhome Cmtys., L.P., 816 A.2d 301, 305 (Pa. Super. Ct. 2003)).  Wachovia fails to acknowledge, however, that one notable exception to the economic loss doctrine applies to cases involving claims of negligent misrepresentation, as is the case here.  See Bilt-Rite Constr., Inc., 866 A.2d at 288 (holding that the economic loss doctrine does not apply to claims of negligent misrepresentation sounding under Section 552 of the Restatement (Second) Torts).  Wachovia does not argue that the exception does not apply. As a result, at this stage of the case, Kirschner's claim for negligence/negligent misrepresentation claim is not barred by the "economic loss doctrine."   Consequently, Wachovia's Motion to Dismiss Count Thirteen on the basis of the economic loss doctrine is denied.

Finally, Wachovia argues that Kirschner's negligence/negligent misrepresentation claim fails for lack of any allegations that Wachovia made any representations to Le-Nature's. (Docket No. 89, at 23).  After a review of the Complaint, I disagree.  See Complaint ¶¶ 114, 130 (set forth at length above).  Thus, Wachovia's Motion to Dismiss Count Thirteen on the basis of the lack of representations is denied.

For all of these reasons, Wachovia's Motion to Dismiss Count Thirteen of the Complaint is denied.

### 6.  Conspiracy to Commit Fraud

Wachovia's sixth argument is that Count Six of the Complaint does not properly allege a common law civil conspiracy claim against it.  (Docket No. 89, at 22- 24).  The Court of Appeals for the Third Circuit described the necessary elements of a civil conspiracy in General

Refractories Co. v. Fireman's Fund Ins. Co.:

> In Pennsylvania, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Strickland v. Univ. of Scranton, 700 A.2d 979, 987-988 (1997) (citation and internal quotations marks omitted) (cited in Allegheny General Hosp. v. Philip Morris, Inc., 228 F.3d 429, 446 (3d Cir.2000)).

337 F.3d 297, 313 (3d Cir. 2003); accord Adams v. Teamsters Local 115, 214 F. App'x 167, 172 (3d Cir. 2007) ("A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." (internal citations omitted)).

Wachovia argues that within this definition of a civil conspiracy, a tacit agreement between Wachovia and at least one other party must exist, and claims Kirschner failed to provide factual details concerning the date, time, and place of any meetings, conferences or telephone calls necessary to illustrate such an agreement.  (Docket No. 89, at 23).  Wachovia also suggests Kirschner's allegations fail to show how Wachovia intended to harm Le-Nature's. Id. at 23-24.  Because of these shortcomings, Wachovia moves for a dismissal of the civil conspiracy claim.

Although I agree with Wachovia that the first element of a civil conspiracy claim essentially requires an agreement between Wachovia and at least one other party, I disagree that Kirschner failed to plead requisite facts supporting the existence of an agreement and that the complaint fails to show how Le-Nature's was injured.  Under the Iqbal and Fowler standard, if Kirschner's complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face – meaning if Kirschner has pled facts enabling this court to

26

draw the reasonable inference that Wachovia acted in concert with other defendants to do an unlawful act, the principal element of which is an agreement between Wachovia and the other parties to inflict an injury upon another, and an overt act that results in damage – the motion to dismiss must be denied.

Turning to the complaint, Kirschner asserts:

· "Wachovia was a key participant in the Fraudulent Scheme, constantly assisting Le-Nature's in raising capital, paying down capital, then raising more capital . . . ." Complaint ¶ 59.

·

· In or about 2003, Le-Nature's commenced what would become a multi-year relationship with Wachovia . . . During the course of this relationship, Wachovia obtained significant access to, and knowledge of, [Le-Nature's] operations and financial condition and – as a result – was fully aware of numerous red flags demonstrating that Le-Nature's operations  and finances were not as reported. . . .Wachovia went so far as to actually assist Podlucky and the Insiders in constructing excuses for how Le-Nature's reported financial data was somehow consistent with contrary real world observations.  Id. ¶¶ 60-61.

·

· . . . Wachovia hired someone to audit Le-Nature's – for the first time since . . . 2003 . . . . PriceWaterhouseCoopers . . . [i]n its final report . . . noted significant accounting discrepancies, including erroneous accounting of capital leases as operating leases and overstatement of EBITDA.  Nonetheless Wachovia kept the PWC conclusions to itself and pushed ahead with yet another $285 million in financing for Le-Nature's. Id. ¶¶ 125-126.

· Subsequent to the Chancery Court's entering the temporary restraining order, on October 22, 2006, Jay Braden of Wachovia securities received an email from Podlucky requesting his help to convince Le-Nature's Board that another facility ($340 million) could be done. "Braden appeared at the Board meeting advocated $340 million in new financing even though clear evidence of the Fraudulent Scheme was now before the Delaware Chancery Court and in the public domain." Id. ¶ 128.

·

· ". . . Wachovia, among others dragged out the life of Le-Nature's for over four years and wasted hundreds of millions of dollars on avoidable transactions in the process. . . . The independent decision-makers of Le-Nature's, had they known the truth about Le-Nature's and its unsustainable operations, could have . . . moved to stop the unnecessary financings promoted by Wachovia, and closed Le-Nature's operations down years earlier." Id. ¶ 130.

·

These facts render it plausible that Wachovia, Podlucky and the Insiders agreed to make

false representations with respect to Le-Nature's operations and overall financial condition for the purpose of closing numerous credit facilities which provided Wachovia with fees and Le-Nature's with additional debt.  Wachovia's decision to go forward with each credit facility and ignore "red flags" concerning Le-Nature's true financial health constitute overt acts.  As noted, Le-Nature's was forced into bankruptcy and as the <u>Lafferty</u> Court noted:

> Even when a corporation is insolvent, its corporate property may have value. The fraudulent and concealed incurrence of debt can damage that value in several ways. For example, to the extent that bankruptcy is not already a certainty, the incurrence of debt can force an insolvent corporation into bankruptcy, thus inflicting legal and administrative costs.  .  .  .  [B]ankruptcy also creates operational limitations which hurt a corporation's ability to run its business in a profitable manner.

267 F.3d at 349-50.  Accordingly, I find it plausible that Wachovia's alleged intentional disregard for the true financial condition of LeNature's and its alleged conscious efforts to withhold this information from the independent shareholders and facility investors illustrates its intent to injure Le-Nature's.

For all of these reasons, Wachovia's motion to dismiss the conspiracy to commit fraud claim is denied.

### 7.  RICO Claims

Wachovia's seventh argument is that Kirschner's RICO claims set forth against it in Counts One and Two of the Complaint are deficient and must be dismissed.  (Docket No. 89, at 24-28). I will address each count in turn.

#### a.  RICO – Section 1962(c)

RICO Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  In order to state a RICO claim under Section 1962(c), a plaintiff must allege: (1) the existence of an enterprise, (2) that the person was employed by or associated with the enterprise, (3) that the defendant participated, directly or indirectly, in the conduct or affairs of the enterprise, and (4) that the defendant participated through a pattern of racketeering activity.    Hartford Fire Ins. Co. v. Lewis, Civ. A. No. 08-1198, 2009 WL 174105, at *3 (E.D. Pa. Jan. 21, 2009) (quoting United States v. Urban, 404 F.3d 754, 769 (3d Cir. 2005)).

For purposes of this Motion, Wachovia focuses solely on the third element, i.e., whether Wachovia participated, directly or indirectly, in the conduct of the enterprise's affairs. Specifically, Wachovia contends that the Complaint does not aver that Wachovia "directed or controlled" the RICO enterprise as required to satisfy that element of Section 1962(c).  (Docket No. 89, at 24-27).  Wachovia states that although the Complaint contains numerous details about the financial services that Wachovia provided to Le-Nature's, providing such services is insufficient to show that Wachovia directed the affairs of the Podlucky Enterprise in any way that would afford a basis for liability. Id.  I disagree.

In Reves v. Ernst & Young, 507 U.S. 170, 185 (1993), the United States Supreme Court held that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," under Section 1962(c), "one must participate in the operation or management of the enterprise itself."  The Supreme Court further clarified that "[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.  An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it . . . ."  Reves, 507 U.S. at 184; see also Spitzer v. Abdelhak, No. Civ. A. 98-6475, 1999 WL 1204352, at *4 (E.D. Pa. Dec. 15, 1999)

("[W]hile defendants must have participated in the enterprise's affairs, the level of that participation need not be substantial." (citing <u>Reves</u>)).  The Court of Appeals for the Third Circuit has applied <u>Reves</u> to limit Section1962(c) RICO liability "to those instances where there is 'a nexus between the person and the conduct in the affairs of an enterprise.'" <u>Urban</u>, 404 F.3d at 770 (quoting <u>Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.</u>, 996 F.2d 1534,1539 (3d Cir. 1993) (other citations omitted)).

Wachovia correctly states that merely providing generic financial and related services to an enterprise does not show the requisite "participation" in the enterprise to state a Section 1962(c) claim, even if those financial services were materially deficient.  <u>See Univ. of Md. at Baltimore</u>, 996 F.2d at 1539-40.  Thus, an auditor or financial advisor who prepares deficient financial statements or audits, issues an unqualified auditor's opinion, attends board meetings, and/or performs other generic accounting or consulting services, does not open itself up to RICO liability simply based on those actions.  <u>Id.</u>; <u>see also Reves</u>, 507 U.S. at 174-75, 186 (accountants hired to perform audit of co-op not liable under § 1962(c) simply for preparation of financial statements based on false information or failure to inform co-op's board of doubts regarding co-op's true financial health).

Despite Wachovia's efforts to paint itself as simply an independent financial services provider, however, the Complaint alleges that Wachovia did far more than provide generic financial or other services to Le-Nature's.  Specifically, the Complaint defines the RICO enterprise at issue ("Podlucky Enterprise") as including Wachovia along with Podlucky and the Insiders ("RICO Associates").  Complaint ¶ 191.  The Complaint further alleges that during the Scheme Period (2003-2006), each of the RICO Associates in the Podlucky Enterprise, including Wachovia, conducted or participated in the affairs of the enterprise through a pattern of

racketeering activity. Id. ¶ 192. The purpose of the Podlucky Enterprise's fraudulent scheme was to obtain money or property by means of false representations, pretenses, or promises. Id. ¶¶ 193-194. In addition to numerous allegations of intentional misrepresentations and omissions in furtherance of the scheme, the Complaint alleges that Wachovia participated in the operation or management of the Podlucky Enterprise by, inter alia, intentionally manipulating financial data, including recommending to Le-Nature's CFO (a co-defendant and one of the "Insiders") Getzik that he"tweak" numbers that were at odds with other data and providing Getzik and Lynn (another Insider) with strategies for "cooking the books." Id. ¶¶ 94, 101-103. The Complaint further alleges, among other things, that Wachovia fronted Le-Nature's interest payments to syndicate lenders to hide Le-Nature's cash flow problems. Id. ¶ 112-113. Even if Wachovia was not a part of the Podlucky Enterprise's upper management, the Complaint, at the very least, supports a finding that Wachovia acted at the direction of Podlucky and other Insiders.

In short, I find the allegations in the Complaint, taken as true, are sufficient to raise a reasonable expectation that discovery will reveal evidence of Wachovia's participation in the operation and management of the Podlucky Enterprise. Accordingly, Wachovia's motion to dismiss the Section 1962(c) count is denied. If discovery shows that Wachovia played no greater part in the alleged RICO enterprise than that of the dismissed defendants in Reves and the other cases cited by Wachovia, then Wachovia may readdress this issue in a properly supported motion for summary judgment.

**b.   RICO – Section 1962(d)**

Wachovia argues that Kirschner's Section 1962(d) RICO conspiracy claim must be dismissed because the Complaint fails to allege that Wachovia objectively manifested an

agreement to participate, directly or indirectly, in the affairs of the RICO enterprise.  (Docket No. 89, a 27-28).  I disagree.  Section 1962(d) of RICO makes it "unlawful to conspire to violate [§§ 1962(a), (b), or (c)]" of RICO.  Dongelewicz v. PNC Bank Nat'l Ass'n, 104 F. App'x 811, 818 (3d Cir. 2004).  Section 1962(c) liability is not a prerequisite to conspiracy liability under Section 1962(d).  Rather, Section 1962(d) liability "is governed by the 'general principles of criminal conspiracy law' which requires only that the defendant 'share[s] a common purpose' with his co-conspirators and 'knowingly agrees to facilitate a scheme, which includes the operation or management of a RICO enterprise.'"  Dongelewicz, 104 F. App'x at 818 (quoting Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001)); see also Meeks-Owens v. Indymac Bank, F.S.B., 557 F. Supp. 2d 566, 573 (M.D. Pa. 2008) (Section 1962(d) liability does not require satisfaction of the Reves test (quoting Dongelewicz, 104 F. App'x at 818)).

In its brief, Wachovia focuses solely on paragraph 203 of the Complaint in which Kirschner alleges that "[d]uring the Scheme Period, the RICO Associates willfully, knowingly, and unlawfully did conspire, combine, confederate, and agree together to violate 18 U.S.C. § 1962(c) by enabling the RICO Associates to conduct the affairs of the Podlucky Enterprise through a pattern of racketeering activity."  See Docket No. 89, at 27-28.  Although this paragraph specifcally states that all of the RICO Associates, of which Wachovia was one, agreed together to violate RICO, Wachovia argues that the allegations are conclusory and insufficient to survive a motion to dismiss.  Wachovia ignores, however, the following two paragraphs of the Complaint which delineate, with particularity, a list of alleged predicate acts that Wachovia agreed to commit or to assist Podlucky and the Insiders to commit.  Complaint ¶¶ 204-205.  Combined with paragraph 203 and the remaining allegations of the Complaint, I find that Kirschner has adequately pled an agreement to participate, directly or indirectly, in the

affairs of a RICO enterprise.  Accordingly, Wachovia's motion to dismiss the Section 1962(d) claim is denied.

### 8. *In Pari Delicto*

Finally, Wachovia asserts that even if Kirschner is able to state a common law or RICO claim against Wachovia, those claims are subject to dismissal under the defense of *in pari delicto*.  (Docket No. 89, at 28-29).  Wachovia has not independently briefed the *in pari delicto* argument.  Rather, Wachovia notes that other defendants have briefed the issue and states that "if any claims against any defendants are dismissed under the doctrine, all common law *and* RICO claims Kirschner seeks to assert against Wachovia should be dismissed as well."  Id. at 28.  As set forth in my Opinions and Orders addressing the motions to dismiss filed by the other defendants that have raised this issue, I have declined to dismiss any of the claims against those defendants on *in pari delicto* grounds at this stage of the proceedings.  Because Wachovia's *in pari delicto* argument is based solely on the arguments of its co-defendants, Wachovia's motion to dismiss on *in pari delicto* grounds is denied for the same reasons set forth in those opinions.

### C.  Bankruptcy Claims

Wachovia also moves for dismissal of Counts Sixteen through Twenty-One of the Complaint which seek to avoid alleged preferential transfers and alleged intentional and constructive fraudulent transfers Le-Nature's made to Wachovia.  Complaint ¶¶ 322-355.  For the reasons that follow, the motion to dismiss these preference and fraudulent conveyance claims is denied.

Wachovia first argues that I must dismiss the preference and fraudulent conveyance claims because it received all the payments at issue from Le-Nature's as Administrative Agent and

immediately passed the funds out to various members of a lending syndicate.  (Docket No. 89, at 29).  Wachovia contends that it thus was a "mere conduit" for the payments and, under 11 U.S.C. § 550, cannot be liable for the return of the payments passed on to other lenders.  Id.  I disagree that dismissal on this ground is appropriate at this stage of the proceedings.

Section 550(a) of the Bankruptcy Code provides that:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  Courts defining an "initial transferee" under this section have held that, "'the minimum requirement of status as a "transferee" is dominion over the money or other asset, the *right* to put the money to one's own purposes.'"  In re Blastein, 260 B.R. 698, 714 (E.D. Pa. 2001) (quoting Bonded Fin. Serv., Inc. v. European Am. Bank, 838 F.2d 890, 893 (7th Cir. 1988)).  "[A] commercial entity that, in the ordinary course of its business, acts as a *mere conduit* for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee within the meaning of § 550(a)(1)."  In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 130 F.3d 52, 59 (2d Cir. 1997) (emphasis added).

After careful review of both parties' arguments and relevant caselaw, I agree with Kirschner that resolution of this issue is appropriately addressed after the discovery process.  As the courts have explained, "[t]o be a 'mere conduit', a defendant must 'establish that it lacked dominion and control over the transfer because the payment simply passed through its hands

34

and it had no power to redirect the funds to its own use.'" In re Lenox Healthcare, Inc., 343 B.R. 96, 103 (Bankr. D. Del. 2006) (quoting In re CVEO Corp., 327 B.R. 210, 216 (Bankr. D. Del. 2005)).  Moreover, to be a conduit, "one cannot be a creditor and receive a payment to satisfy a debt – this is the 'hallmark' of a preferential transfer."  Id. at 105; see also In re Cypress Rests. of Ga., Inc., 332 B.R. 60, 65 (Bankr. M.D. Fla. 2005) (defendant was a creditor and, therefore, could not be a mere conduit).

Here, the Complaint alleges, inter alia, that Wachovia benefitted from at least some of the payments by significantly reducing its own exposure to Le-Nature's in addition to generating millions of dollars in fees.  See Complaint ¶ 123.  Thus, accepting the pleadings as true, Wachovia was not a "mere conduit" with respect to all of the payments at issue.  Further, even if it turns out that Wachovia was a mere conduit for some payments, such determinations must await the results of discovery.  (Docket No. 108, at 29).

Wachovia's remaining arguments are specific to each individual claim and I discuss them in turn.

**1. Preference Claims**

Wachovia states that five of the eight payments Le-Nature's allegedly made to Wachovia during the 90-day period preceding the bankruptcy petition were made on September 1, 2006, with funds from the September 2006 Facility.  (Docket No. 89, at 29-30).  Wachovia contends that the September 2006 facility was funded entirely by Wachovia for the express purpose of paying off Wachovia's prior loan to Le-Nature's (the "December 2005 Facility").  Id.  Thus, Wachovia argues, I must dismiss the preference claims under the "earmarking doctrine," which, according to Wachovia, provides that funds loaned to a debtor under a new credit facility to pay off an existing loan do not become property of the estate because such a transfer merely

substitutes one creditor for another.  Id. (quoting In re Buffalo Molded Plastics, Inc., 344 B.R. 394, 399 (Bankr. W.D. Pa. 2006)).

The "earmarking doctrine is entirely a court-made interpretation of the statutory requirement that a voidable preference must involve a 'transfer of an interest of the debtor in property.'" In re Winstar Commc'ns, Inc., 554 F.3d 382, 400 (3d Cir. 2009) (quoting In re Bohlen Enters., Ltd., 859 F.2d 561, 565 (8th Cir. 1988)).  "Under this doctrine, '[w]hen . . . funds are provided by [a] new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to [an exisiting] creditor, the funds are said to be 'earmarked' and the payment is held not to be a voidable preference.'"  Id. (quoting In re Bohlen Enters., 859 F.2d at 565). The requirements for the earmarking doctrine to apply are: "(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt, (2) performance of that agreement according to its terms, and (3) the transaction viewed as a whole . . . does not result in any diminution of the [debtor's] estate." Id. (quoting In re Bohlen Enters., 859 F.2d at 566); see also In re Buffalo Molded Plastics, 344 B.R. at 399.

After careful review, I disagree with Wachovia that the Complaint and/or the terms of the Credit Agreement dictate that the earmarking doctrine applies in this case.  Although Wachovia cites section 6.1 of the September 2006 Credit Agreement as evidence that the Agreement required that Le-Nature's use the new loan to pay off the old 2005 loan, Kirschner points to Section 3.11 of the Credit Agreement to show that Le-Nature's was permitted to use the loan proceeds for, inter alia, "working capital and *other general corporate purposes*."  (Docket No. 56, Coble Decl. Ex. F, at 63, 82 (emphasis added)); see In re Winstar Commc'ns, Inc., 554 F.3d

at 401 (earmarking doctrine inapplicable where loan is for general corporate purposes).[9] Further, although the Complaint may allege that some of the funds from the September 2006 Facility were used to repay old loans, it does not aver that Le-Nature's lacked all control over the disposition of the funds.  Thus, the applicability of the earmarking doctrine under the first requirement (agreement to pay an antecedent debt) is inappropriate for resolution on a motion to dismiss.  See In re Buffalo Molded Plastics, 344 B.R. at 401-02 (denying *summary judgment* motion citing issues of fact with respect to the issue of debtor's control).

In addition, viewed in the light most favorable to Kirschner, the Complaint plausibly states that the September 2006 transaction, taken as a whole, resulted in a diminution of the bankruptcy estate, thus calling into question the third element of the earmarking doctrine.  See, e.g., Complaint ¶¶ 121-123 (alleging, inter alia, that at least some of the payments from the September 2006 Facility went to pay significant fees and expenses charged by Wachovia, and that the September 2006 Facility increased the prior interest rate).  For this reason as well, a 12(b)(6) dismissal based on the earmarking doctrine is not appropriate.

Wachovia additionally argues that the September 1, 2006 payments are not preferences because the transfer of funds was a contemporaneous exchange for new value and, under 11 U.S.C. § 547(c)(1), is not avoidable.  (Docket No. 89, at 31).  Section 547(c)(1) provides that the trustee may not avoid a transfer under Section 547:

(1) to the extent that such transfer was –

(A)     intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B)     in fact a substantially contemporaneous exchange.

---

[9] Full analysis of the 200-plus page 2006 Credit Agreement and schedules thereto is not appropriate at this juncture.

11 U.S.C. § 547(c)(1).  Wachovia contends that, taking the Complaint as true, the September 2006 Facility replaced the prior facility, and that Le-Nature's made the September 1 payments to Wachovia for the purpose of paying the principal and interest due on the prior facility as well as the expenses and underwriter's fee for the September 2006 Facility.  Wachovia argues that paying off an old loan with a new loan is, by definition, a contemporaneous exchange for new value, and, therefore, the preference claims must be dismissed.  (Docket No. 89, at 31).

I disagree.  As set forth above, viewing the Complaint in the light most favorable to Kirschner, the September 2006 Facility was not structured solely to eliminate the December 2005 Facility.  Moreover, the Complaint indicates that the September 2006 Facility benefitted Wachovia to Le-Nature's detriment.  Further, as Kirschner correctly notes, the Court of Appeals for the Third Circuit has held that "[t]he critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." See In re Spada, 903 F.2d 971, 975 (3d Cir. 1990).  The determination of intent is a question of fact, see id. at 975, that I find is inappropriate for resolution on a motion to dismiss based on the allegations in this Complaint.

For all of these reasons, Wachovia's motion to dismiss Kirschner's preference claims is denied.

**2.  Fraudulent Conveyance Claims**

**a.  Constructively Fraudulent Transfers**

Kirschner brings claims for constructive fraudulent transfer against Wachovia under Sections 548(a)(1)(B) and 544(b) of the Bankruptcy Code.  Complaint ¶¶ 339-351.  Section 548(a)(1)(B) of the Code provides:

(a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property,

38

or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

 . . . .

        (B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
        (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
        (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
        (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
        (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C.§ 548(a)(1)(B).  Section 544(b) provides, in relevant part, that "the trustee may avoid

any transfer or an interest of the debtor in property or any obligation incurred by the debtor that

is voidable under applicable law by a creditor holding an unsecured claim that is allowable

under section 502 of this title or that is not allowable only under section 502(e) of this title."  11

U.S.C. § 544(b).  Section 544(b) allows a trustee to assert causes of action that an unsecured

creditor could assert under applicable state law.

        Wachovia argues that the Complaint does not state a claim for constructively fraudulent

transfers because it does not plead facts showing that Le-Nature's received less than a

"reasonably equivalent value" in exchange for the transfers.   (Docket No. 89, at 31-32).

Wachovia contends that, to the contrary, the Complaint demonstrates that the alleged transfers

all were payments on Le-Nature's outstanding loans or payments for lending fees and expenses

Wachovia incurred in arranging capital financing for Le-Nature's.   Id. at 32.   According to

Wachovia, such payments made on account of an antecedent debt are by definition transfers in

exchange for reasonably equivalent value.   Id. (citing 11 U.S.C. § 548(d)(2)(A) and 12 Pa.

Cons. Stat. Ann. § 5103).

I disagree that dismissal is appropriate at this point in the proceedings.  The Complaint specifically alleges that there was a transfer for less than reasonably equivalent value at a time when Le-Nature's was insolvent.  Complaint ¶¶ 341-342, 346-350.  The Complaint further explains *why* Le-Nature's allegedly did not receive reasonably equivalent value for the fees and other transfers it paid to Wachovia.  See, e.g., Complaint ¶¶ 341, 349.  I find that the Complaint's allegations in this regard state a plausible claim for constructive fraudulent transfer under Iqbal and Fowler.  See In re DVI, Inc., Bankr. No. 03-12656, Adv. No. 08-50248 (MFW), 2008 WL 4239120, at *9 (Bankr. D. Del. Sept. 16, 2008); In re Astropower Liquidating Trust, 335 B.R. 309, 333 (Bankr. D. Del. 2005).  To the extent Wachovia disputes that Le-Nature's received reasonably equivalent value, that is an issue of fact more appropriately resolved after discovery.[10]

### b. Intentional Fraudulent Transfer

Kirschner also brings claims for intentional fraudulent transfer against Wachovia under Sections 548(a)(1)(A) and 544(b) of the Bankruptcy Code.  Complaint ¶¶ 329-338.  Section 548(a)(1)(A) provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

---

[10] The Complaint also alleges that Podlucky used the money from the September 2006 and other Facilities to run a Ponzi scheme. Complaint ¶ 2.  In his opposition brief, Kirschner cites caselaw standing for the proposition that "if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for the creditors to share.  In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate.  In such a situation, the use of the defendant's money cannot objectively be called 'reasonably equivalent value.'" Docket No. 108, at 32 (quoting In re Indep. Clearing House Co., 77 B.R. 843, 859 (D. Utah 1987)).  Except for denying that the Complaint adequately allege a Ponzi scheme, see infra Section II.C.2.c, Wachovia does not reply to this argument which also merits further consideration after discovery.

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; . . . .

11 U.S.C. § 548(a)(1)(A); see also supra Section II.C.2.a (quoting Section 544(b)).

Wachovia argues that the Complaint does not state a claim for intentional fraudulent transfer under these sections of the Bankruptcy Code because it does not allege that Le-Nature's "intentionally place[d] property in friendly hands to avoid having it seized by other creditors" or otherwise adequately allege that Le-Nature's paid Wachovia with the intent to hinder, delay, or defraud other creditors.  (Docket No. 89, at 32-34.)  I disagree.

Under Federal Rule of Civil Procedure 9(b), a complaint may allege fraudulent intent generally.  Fed. R. Civ. P. 9(b).  Here, Counts Seventeen and Eighteen of the Complaint allege intent, stating that "Podlucky and the Insiders caused Le-Nature's intentionally to incur obligations that it could not pay and then continuously to avoid paying them so as to harm Le-Natures," including by causing "Le-Nature's to make the transfers of interests of Le-Nature's in property within two years before the Petition Date . . . to or for the benefit of Wachovia." Complaint ¶¶ 330, 336; see also id. ¶¶ 331, 337 (alleging that Le-Nature's made the transfers to Wachovia "with the actual intent to hinder, delay, or defraud one or more entities to which Le-Nature's was or became indebted on or after the date such transfer was made").  In addition, courts have held that where, as alleged here, the fraud on creditors is perpetrated through a Ponzi scheme, a presumption of intent arises. See, e.g., In re Slatkin, 525 F.3d 805, 814 (9th Cir. 2008); see also Docket No. 108, at 33 & n.16 (citing In re Slatkin and other cases).

Wachovia's reliance on In re Sharp International Corp., 302 B.R. 760 (E.D.N.Y. 2003) in support of dismissal of the intentional fraudulent transfer claims is misplaced.  In In re Sharp,

41

the district court dismissed an intentional fraudulent conveyance claim in a case where the debtor used grossly inflated financial statements to induce investors (the "Noteholders") to advance money so that the debtor could pay off another lender.  302 B.R. at 784.  In dismissing the claim, the court found, inter alia, that none of the "badges of fraud" were present and that the fraud alleged in the complaint concerned the manner in which the debt to the Noteholders arose, not the subsequent conveyance of those funds to the earlier lender, a legitimate creditor of Sharp.  Id.   In re Sharp, however, was not a Ponzi scheme case and, therefore, is not dispositive here.   See In re Manhattan Inv. Fund Ltd., 397 B.R. 1, 10 (S.D.N.Y. 2007) (distinguishing In re Sharp because, among other things, the transfer at issue was made to repay a loan that preceded the fraud and was unrelated to a Ponzi scheme); In re Bayou Group, LLC, 362 B.R. 624, 636-38 (Bankr. S.D.N.Y. 2007) (same).

For all of these reasons, Wachovia's motion to dismiss Kirschner's intentional fraudulent conveyance claims is denied.

### c. Ponzi Scheme

Finally, Wachovia contends generally that I should reject Kirschner's argument that the conveyances at issue were fraudulent because Le-Nature's was a "Ponzi scheme."  (Docket No. 89, at 34-35).  Specifically, Wachovia argues that Kirschner's "Ponzi scheme" allegations are conclusory and do not adequately assert such a scheme under Iqbal.  Id.  I disagree.  As Kirschner  notes, courts have explained that "there is no precise definition of a Ponzi scheme and courts look for a general pattern, rather than specific requirements. '[T]he label "Ponzi scheme" has been applied to any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud.'"  In re Manhattan Inv. Fund Ltd., 397 B.R. at 12

(quoting In re Bayou Group, LLC, 362 B.R. at 633); see also Docket No. 108, at 33-34.

Here, as set forth above, the Complaint alleges, inter alia, that Podlucky and the Insiders carried out "a form of 'Ponzi' scheme of constantly raising new money and incurring ever-increasing debts to refinance investors, thereby cultivating an illusion that a legitimate profit-making business existed." Complaint ¶ 2. Kirschner also cites to paragraphs 1-19, 59-160, and 186-189 of the Complaint in support of his "Ponzi scheme" allegations. (Docket No. 108, at 34). Whether or not a true "Ponzi scheme" existed or is relevant requires findings of fact beyond the scope of this motion. For now, I am satisfied that the Complaint sufficiently alleges a Ponzi scheme and states fraudulent conveyance claims that are "plausible on their face" and do not merely present a formulaic recitation of the elements of the cause of action. See In re Norvergence, Inc., 405 B.R. 709, 732 (Bankr. D.N.J. 2009).

### III. Conclusion

For all of the reasons set forth above, Wachovia's Motion to Dismiss is granted, with prejudice, with respect to Kirschner's breach of fiduciary duty claim and denied in all other respects.

43

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re: Le-Nature's Inc.                          MDL Docket no. 2021
                                                 WDPA Docket no. 2:09-mc-00162


Marc S. Kirschner, solely in his capacity as    )
the Liquidation Trustee of the Le-Nature's      )
Liquidation Trust,                              )   Civil Action No. 08-1518
                                                )
                        Plaintiff,              )
        vs.                                     )
                                                )
Wachovia Capital Markets, LLC, et al.,          )
                        Defendants.             )


AMBROSE, Chief District Judge


## <u>ORDER OF COURT</u>

AND now, this 16th day of September, 2009, upon consideration of the Motion to Dismiss filed by Defendants, Wachovia Capital Markets, LLC d/b/a Wachovia Securities and Wachovia Bank, National Association (Docket No. 88 at 8-cv-1518 and Docket No. 65 at 9-mc-162), it is ordered that said Motion is granted in part and denied in part. Count Ten (against Wachovia for Breach of Fiduciary Duty) is dismissed, with prejudice. The motion is denied in all other respects.


                                                 BY THE COURT:



                                                 /s/ Donetta W. Ambrose
                                                 Donetta W. Ambrose
                                                 Chief U.S. District Judge