IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE: LE-NATURE'S, INC.,          ) No. 9-MC-162
COMMERCIAL LITIGATION              )
--------------------------------------------------------------------------------------------------------------

MB FINANCIAL BANK, N.A.,           ) No. 9-CV-469
                                   )
          Plaintiffs,              )
                                   )
VS.                                )

MARSHALL INVESTMENTS CORP.,
ET AL.,

          Defendants.

**OPINION AND ORDER**

**SYNOPSIS**

This action is part of a consolidated multi-district proceeding with which

the parties are quite familiar, and thus the facts need not be recounted at

length.  Here, MB Financial Bank ("MB") alleges that the Krones Defendants

(collectively, "Krones") violated RICO, by participating in a fraudulent scheme

involving the financing of equipment for LeNatures, Inc. Krones has moved to

dismiss Plaintiff's Third Amended Complaint, on grounds that the pleading fails

to fulfill RICO's proximate cause requirement.

For the following reason, the Motion will be denied.[1]

------------------------------------------

[1]Another Motion, in which Defendants' arguments largely overlap those raised in the
present Motion, is pending in Compass Financial Corp., No. 9-469.  Today, I file a substantially similar
Order in that case.

1

**OPINION**

**I. Applicable Standards**

In deciding a motion to dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). In ruling on a motion to dismiss for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer." Id. at 666. Complaints "need not plead law or match facts to every element of a legal theory." Weston v. Pennsylvania, 251 F. 3d 420, 429 (3d Cir. 2001). A plaintiff, however, must "nudge [her] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). A complaint must contain "enough factual matter (taken as true) to suggest" the elements of the claims asserted.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  Under Fed. R. Civ. P. 12(c), addressing lack of standing, the same standards apply.[2]   Onconome, Inc. v. Univ. of Pittsburgh, No. 09cv1195, 2010 U.S. Dist. LEXIS 27304, at *3 (W.D. Pa. Mar. 23, 2010).

Also relevant here, Fed. R. Civ. P. 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

---

[2]Defendants bring their Motion pursuant to Rule 12(b)(6), but causation is intertwined with standing in the RICO context.

'give the defendant fair notice of what the . . . claim is and the grounds upon
which it rests.'" Twombly, 550 U.S. at 555.  "[A] plaintiffs obligation to provide the
'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action will not do." Id.
Heightened pleading standards do not apply to a civil RICO claim.  South Broward
Hosp. Dist. v. MedQuist, Inc., 516 F. Supp. 2d 370, 393 (D.N.J. 2007).

## II. RICO

In order to state a violation, a RICO plaintiff is required to make a showing
"that the plaintiff 's injury was proximately caused by the defendant's violation
of 18 U.S.C. § 1962."  Maio v. Aetna, 221 F.3d 472, 483 (3d Cir. Pa. 2000).  "When a
court evaluates a RICO claim for proximate causation, the central question it must
ask is whether the alleged violation led directly to the plaintiff's injuries."
Longmont United Hosp. v. St. Barnabas Corp., 305 Fed. Appx. 892 (3d Cir. N.J. 2009).
The pertinent inquiry requires careful consideration of the "relation between the
injury asserted and the injurious conduct alleged." Holmes v. Securities Investor
Protection Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992).  "A
proximate cause is not, however, the same thing as a sole cause. Instead, a factor
is a proximate cause if it is a 'substantial factor in the sequence of responsible
causation.'" Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23-24 (2d Cir.
1990); see also Williams v. Mohawk Indus., 465 F.3d 1277, 1288 (11th Cir. 2006); Miller
v. Asensio & Co., 364 F.3d 223, 232 n.6 (4th Cir. 2004).

To determine whether a plaintiff has adequately pled proximate cause in a

civil RICO action, our Court of Appeals has assessed three factors: the directness of the injury; the difficulty in apportioning damages; and whether a plaintiff's claim is more appropriately brought by a different party.  Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 933 (3d Cir. 1999). Moreover, courts consider factors such as whether the plaintiff was the intended target of the RICO offense; whether injury to the plaintiff was a reasonably foreseeable consequence of the offense; the existence of independent intervening causes; and the risk of multiple recoveries.  Anderson v. Ayling, 297 F. Supp. 2d 805, 810 (E.D. Pa. 2003).  In this context, proximate cause "is a flexible concept that does not lend itself to 'a black letter rule that will dictate the result in every case.'"  Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S. Ct. 2131, 2142, 170 L. Ed. 2d 1012 (2008).  Caselaw suggests that an intervening act might break the chain if it is foreseeable. See In re: Actiq Sales & Marketing Prac. Litig., No. 7-4492, 2009 U.S. Dist. LEXIS 43710, at **9-10 (E.D. Pa. May 22, 2009).  In the RICO context, "a fraudulent misrepresentation can proximately cause actionable injury even to those who do not rely on the misrepresentation."  Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S. Ct. 2131, 2144, 170 L.Ed. 2d 1012 (2008).

Here, Krones argues that the alleged acts of CIT and Marshall broke the causal link between the Krones' alleged actions and the claimed injury. Defendants rely, in large part, on Longmont United Hosp. v. St. Barnabas Corp., No. 6-2802, 2007 U.S. Dist. LEXIS 48187 (D.N.J. June 26, 2008), aff'd, 305 Fed. Appx. 892 (3d Cir. 2009).  In that case, a defendant hospital allegedly defrauded the

government in violation of RICO, by submitting inflated medicare charges.  The

plaintiff, another hospital, alleged that the fraud set off a chain of events that

resulted in other hospitals, including itself, receiving reduced medicare

payments – because the government made higher payments to defendant, it

allegedly distributed fewer or less in payments to other hospitals than it would

have absent defendant's inflated charges.  Id. at **4-6.  The court found that the

alleged injury was not direct, but was instead derivative of the injuries sustained

by the government.[3]   Id. at **14-15.  The court also found that assessing

damages, under the circumstances, would be arduous, complex, and speculative.

Id. at **20-21.  Finally, it found that the government was the directly injured

victim, and was "especially ready and able to vindicate" the claims.   Id. at *22.

For these reasons, proximate cause was lacking.  Id.

        The facts alleged by the present Plaintiff, however, paint a very different

picture than that in Longmont.  There is no suggestion that in Longmont, the

defendant's goal was to reduce payments to other hospitals such as the plaintiff.

In contrast, in this case, the relationship between the alleged fraud and injury is

not so attenuated.  Plaintiff avers that Krones made misrepresentations with the

goal of luring investors such as Plaintiff, "substantially assisted" by CIT and

Marshall.   Moreover, the injury alleged here was not derivative of or indirect

"fallout" from an injury sustained by CIT or Marshall, in the same manner as the

---

[3]As the Court of Appeals later stated, the impact of defendant's conduct on plaintiff
"hinge[d] entirely on [the government's] administration of the Medicare reimbursement system."
Longmont, 305 Fed. Appx. At 896.

Longmont plaintiff's injury.  Instead, Plaintiff avers that it was injured as the

result of Krones' participation in a scheme "to obtain significant overpayments

from...lenders, such as MB."  In other words, Plaintiff's allegations do not depict it

as a tertiary victim of a fraud aimed at another.

Similarly, Plaintiff's alleged injuries did not merely "flow through" Marshall

and CIT as intermediaries, or hinge entirely on their conduct as independent

actors, according to the Third Amended Complaint.  For example, Plaintiff alleges

that it was victimized by Defendants' concerted action: its injuries were caused

by "misrepresentations and omissions of [CIT and Marshall], as well as the

fraudulent scheme perpetrated by [Krones]...(with assistance from CIT and

Marshall)"; that CIT and Marshall were "part of a conspiracy designed to aid the

larger fraudulent scheme being perpetrated by...Krones," and "CIT and [Marshall]

became an integrated part of and substantially assisted" the scheme through

their acts and omissions.

Additionally, an assessment of damages in this case does not involve a

complex inquiry, such as Longmont's analysis of pricing and billing in the context

of a government medical program.  Instead, the issue revolves around Plaintiff's

alleged loss of discrete amounts of funds in the fraudulent scheme allegedly

perpetrated by Defendants.  The amount of loss is thus not unduly difficult to

determine.  Likewise, for the same reason, there is no suggestion that it would

be difficult to apportion damages between the allegedly injured parties.[4]

Instead, each allegedly injured party has a separable claim for damages. Finally,

this case does not involve a damaged government agency, which is "especially"

ready and able to vindicate its losses, or another "more directly" injured party;

instead, it involves CIT and Marshall, who are intimately factually intertwined with

Plaintiff and Krones, and the material facts of this case.[5]  That Marshall and CIT

have chosen to pursue their own claims against Krones does not render those

claims more appropriate than those asserted here.  For these reasons, Longmont

is not controlling.[6]

Indeed, courts in this Circuit have found proximate cause, even in the

presence of intermediate actors.  For example, in In re: Actiq Sales & Marketing

Prac. Litig., 2009 U.S. Dist. LEXIS 43710, plaintiff insurance companies brought a

RICO action against a drug manufacturer.  The insurers alleged that defendant

pursued a deceptive marketing scheme for off-label uses of a particular drug,

which encouraged physicians to prescribe the drug inappropriately.  As a result,

---

[4]To the extent that Defendant intends to rely on the difficulty in allocating damages attributable to different wrongdoers – as opposed to apportioning damages recoverable by different injured parties – I note that courts and juries routinely apportion responsibility for damages between joint tortfeasors and co-conspirators.  Defendant has not persuaded me that this case is any different.

[5]At least one court has declined to apply this factor – whether other, more directly injured plaintiffs will vindicate the claim – in the absence of a subrogation-type issue.  Magnum v. Archdiocese of Phila., No. 6-2589, 2006 U.S. Dist. LEXIS 84123, at *25 (E.D. Pa. Nov. 17, 2006).

[6]Northwestern Human Servs., Inc. v. Panaccio,  03-157, 2004 U.S. Dist. LEXIS 19147 (E.D. Pa. Sept. 24, 2004), on which Defendants also rely, is similarly distinguishable.  That case involved medicare fraud, and the alleged injuries – legal fees and civil penalties – were, as the present Defendants put it, "fallout" rather than an integral part of the alleged scheme.   Not so under the present Plaintiff's allegations.

Defendant pleaded guilty to FDA violations.  The plaintiff insurers claimed injury as a result of excessive prescription costs for off-label use of the drug.  Id. at **2-4.  The defendant moved to dismiss the claims, arguing that the acts of intervening decisionmakers, such as prescribing physicians, negated causation. Id. at **4-5.  The court found that the "intervening acts" were not unforeseeable, and were an intended result of defendant's marketing scheme.  Id. at **9-10. Accordingly, the allegations that the marketing scheme induced the overpayment was sufficient to satisfy causation at the pleading stage.  Id. at *10.[7]

This case shares certain important similarities with cases such as Actiq.  As discussed supra, the present Plaintiff expressly avers that Defendant's fraudulent conduct was aimed at misleading participating investors, such as Plaintiff.  As in Actiq, the facts pled here simply do not support a conclusion that the alleged injury was unforeseeable or unintended.  Contrary to Defendants' suggestion, this is not a case in which "any number of independent forces and decisions may have intervened between the alleged concealment and the [harm]."  Magnum v. Archdiocese of Phila., No. 6-2589, 2006 U.S. Dist. LEXIS 84123, at * (E.D. Pa. Nov. 17,

---

[7]As the Supreme Court recently confirmed, "The concepts of direct relationship and foreseeability are of course two of the "many shapes [proximate cause] took at common law," and ..".in the RICO context, the focus is on the directness of the relationship between the conduct and the harm."  Hemi Group, LLC v. City of New York, 130 S. Ct. 983, __U.S.__, 175 L. Ed. 2d 943 (2010). "Proximate cause for RICO purposes...should be evaluated in light of its common-law foundations." Id. at 989.  While the proper focus is on directness rather than foreseeability of the harm, there is no suggestion that the proximate cause inquiry cannot take note of the foreseeable and intended consequences of a fraudulent act or scheme.   Indeed, intended and foreseeable consequences, while not the proper focus – and not the sole grounds for my decision today – might be relevant to assessing the directness of the injury.  Indeed, cases such as Actiq consider these concepts in the context of evaluating the directness of the injury.  Actiq was decided well after the rule that the "central question...is whether the alleged violation led directly to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006).

8

2006).[8]   Nor is it a case in which "intricate, uncertain" inquiries are required to link the alleged fraud and injuries.  Anza, 547 U.S. at 460.

## CONCLUSION

In sum, under standards applicable at this pleading stage, Plaintiff's Third Amended Complaint is adequate.   While the involvement of other actors might ultimately weaken the causal connection, Plaintiff's Third Amended Complaint gives Defendants fair notice of the claims and grounds therefor, and contains enough factual matter to suggest proximate cause.  Thus, under applicable standards and at this stage in the litigation, it is adequately pleaded. The Motion will be denied, and an appropriate Order follows.

## ORDER

AND NOW, this 6TH day of May, 2010, it is hereby ORDERED, ADJUDGED, and DECREED that the Krones Defendants' Motion to Dismiss (Docket No. [255]) is DENIED.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Judge, United States District Court

---

[8]In Magnum, plaintiffs, who were allegedly abused by priests as minors, claimed that the defendants violated RICO by covering up acts of a pattern of child abuse by priests.   As regards lost legal claims, the court found that any number of independent forces and decisions, other than the alleged cover-up, could have caused victims of abuse not to seek legal redress.  Magnum v. Archdiocese of Phila., 2006 U.S. Dist. LEXIS 84123, at *27.

10