# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: LE-NATURE'S, INC. | ) WDPA No. 9-MC-162 |
| | ) MDL N0. 2021 |

| | |
|---|---|
| FARM CREDIT LEASING SERVICES CORP., | ) |
| Plaintiff, | ) No. 9-1445 |
| vs. | ) |
| KRONES, INC., et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

### SYNOPSIS

This action is part of a consolidated multi-district proceeding, docketed at No. 9-MC-162, with which the parties are familiar. In this particular case, Plaintiff Farm Credit Leasing ("FCL") avers that Defendants wrongfully involved FCL in an overvalued industrial equipment lease with Le-Nature's. Defendants Krones AG, a German corporation, and Volker Kronseder, a German citizen and resident, and Chairman and CEO of Krones AG at the pertinent times, have moved to dismiss the Complaint against them on grounds of RICO's limited domestic reach.[1] For the following reasons, their Motion will be denied.

## I. STANDARD OF REVIEW

In deciding a motion to dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). A claim is plausible on its face, and

---

[1] Defendant Kronseder also moves for dismissal based on lack of personal jurisdiction, an issue that, as the parties agree, will be held in abeyance pending jurisdictional discovery.

not subject to dismissal, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, U.S. , 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility…." Id. at 949. A motion to dismiss will be granted if the plaintiff has not articulated facts sufficient to "raise a right to relief above the speculative level." Bangura v. City of Philadelphia, 338 Fed. Appx. 261 (3d Cir. 2009) (citing Twombly, 127 S. Ct. at 1965). Thus, a "formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65.

## II. DISCUSSION

### A. Morrison v. National Australia Bank Ltd.

Defendants' Motion is based, principally, on the relatively recent decision of Morrison v. Nat'l Austl. Bank Ltd., 130 S. Ct. 2869, __ U.S. __, 177 L. Ed. 2d 535 (2010). In Morrison, the Court considered the reach of the Securities Exchange Act, 17 CFR § 240.10b-5, which relates to deceptive conduct "in connection with" the purchase or sale of any security.[2] The case involved

---

[2] Rule 10b-5, in pertinent part, makes it illegal:

for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security." 17 CFR § 240.10b-5 (2009).

Section 10, pursuant to which the Regulation was promulgated, reads, in pertinent part, as follows:

foreign plaintiffs suing foreign and United States defendants, for misconduct related to a stock traded only on foreign exchanges, and not in the United States. Id. at 2875. The defendants, however, allegedly engaged in deceptive conduct in the United States. Id. at 2875-76. The parties brought before the Court the issue of whether the Securities Exchange Act "provides a cause of action to foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges." Id. at 2875.

After emphasizing that the question was one of merits rather than subject matter jurisdiction, the Court moved on to the issue of the statute's territorial reach. Id. at 2877-78. In so doing, the Court confirmed and applied the presumption that absent an expression of Congressional intent that a statute apply extraterritorially, the statute does not so apply. Id. at 2883. In employing the presumption, the Court rejected the more fluid, ad-hoc "effects" and "conduct" approaches to determining the statute's reach, which had developed in the lower courts. The "effects" test focused on "whether the wrongful conduct had a substantial effect in the United States or upon United States citizens"; the "conduct" test focused on "whether the wrongful conduct occurred in the United States." Id. at 2879.

In addition, the Court acknowledged that determining a statute's territorial scope did not necessarily end the inquiry.[3] Id. at 2884. In Morrison, the plaintiffs claimed that they did not, in fact, seek extraterritorial application, because the alleged deceptive conduct occurred

---

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe . . . ." 15 U.S.C. 78j(b).

[3] Reflexive reference to the term "focus" is unhelpful, as a statute could be described as concentrated on the activities it criminalizes -- here, racketeering activities -- or on the entity or person it seeks to protect, or on a blend of both, and all three options may be accurate depending on context. Similarly, RICO's stated purpose -- to "seek the eradication of organized crime in the United States," does not assist, in any appreciable way, a conclusion regarding RICO's "focus," as that word was used in Morrison.

domestically.  Id.  Thus, it remained to determine whether domestic deceptive conduct related to the securities transaction was sufficient to bring the claim within the statute's ambit.  As the Supreme Court has noted, "it is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States."  Id. at 2884.

In making its inquiry, the Court looked to the plaintiffs' claim in light of the "'focus' of Congressional concern" embodied in the statute.  Id. at 2879.  In assessing that "focus," the Court noted that the Securities Exchange Act did not punish deceptive conduct alone, but "deceptive conduct 'in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered.'"  Id. at 2884.  Thus, it found that the transactions, and not the prohibited acts, were "the objects of the statute's solicitude."  Id.  Accordingly, the Court found that the Securities Exchange Act focused on securities transactions in the United States, rather than extraterritorially -- thus, it follows that the statute only applies in the case of domestic securities transactions.  Id. at 2884.  It distinguished the Exchange Act in this respect from the wire-fraud statute, which prohibits "'any scheme or artifice to defraud,' -- fraud simpliciter, without any requirements that it be 'in connection with' any particular transaction or event.'"  Id. at 2887.[4]  The Court also noted the probability of incompatibility with the laws of other countries, which regulate their own securities exchanges and transactions.  Id. at 2885.

**B.  RICO and Plaintiff's Complaint**

Because the RICO statute does not contain evidence that Congress intended extraterritorial application, Morrison has been held to preclude such application.  United States v. Philip Morris USA, Inc., No. 99-2496, 2011 U.S. Dist. LEXIS 32053, at *24 (D. D. C. Mar. 28,

---

[4] In mentioning the wire-fraud statute, the Court discussed the case of Pasquantino v. United States, 544 U.S. 349, 125 S. Ct. 1766, 161 L. Ed. 2d 619 (2005).  In Pasquinto, defendants were found to have violated the wire-fraud act by ordering liquor via phone call placed in the United States, with the intent to smuggle it into Canada.  Id. at 371.

2011); Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 32-33 (2d Cir. 2010); Cedeño v. Intech Group, Inc., 733 F. Supp. 2d 471, 473-74 (S.D.N.Y. 2010). At first glance, and as the present parties caution, this case might appear to impose a choice between the two evils of either adopting Morrison wholesale and thus per se immunizing foreign defendants from RICO liability, or endorsing a case-by-case analysis that effectively revives the "conduct" or "effect"-type test rejected by the United States Supreme Court.[5] The present Plaintiff does not contest RICO's territorial scope; instead, it argues, inter alia, that Defendants participated in a domestic enterprise, and thus fall within that scope. In turn, Defendants contend that the alleged predicate acts were foreign, and RICO cannot apply to foreign conduct merely because the enterprise is domestic. In addition, they argue that they are alleged to have engaged, at most, in minimal domestic conduct. This, they assert, renders the claim extraterritorial and beyond RICO's reach.

Applying the same mode of analysis used in Morrison, I will begin with assessing the focus of Congressional concern embodied in RICO. RICO prohibits not racketeering activity standing alone, but racketeering activity in specified types of connection with "any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962.[6] In other words, in the case of RICO, the enterprise is clearly an object of

---

[5] I am persuaded that, having been rejected with respect to the Securities Exchange Act, the "effects" and "conduct" approaches should likewise be rejected, for the same reasons, in the RICO context.

[6] In pertinent part, RICO reads as follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code…to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. …

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of

Congressional solicitude. To further borrow from Morrison, RICO does not prohibit racketeering activities simpliciter -- indeed, those activities are independently criminalized by statute -- but only as related, in enumerated ways, to an enterprise. Thus, RICO "focuses," in the context of a territorial analysis, on domestic rather than foreign enterprise.[7] As a result, a claim involving a domestic enterprise falls within range of RICO. European Cmty. v. RJR Nabisco, Inc., No. 2-5771, 2011 U.S. Dist. LEXIS 23538, at **15-16 (E.D. N.Y. Mar. 8, 2011) (applying Morrison to conclude that "focus" of RICO is domestic enterprise).

The underlying purposes of RICO support this conclusion. "A major purpose of the RICO statute was to protect legitimate enterprises by attacking and removing those who had infiltrated them for unlawful purposes." United States v. McDade, 28 F.3d 283 (3d Cir. 1994) (emphasis omitted). "[T]he focus of RICO is on the enterprise as the recipient of, or cover for, a pattern of criminal activity." Cedeño, 733 F. Supp. 2d at 474. Indeed, the very title of the statute, "Racketeer Influenced and Corrupt Organizations," suggests an emphasis on the organization, or enterprise, itself. Consistent with this principle, it has been found that RICO is inapplicable to a solely foreign enterprise. Id. For all of these reasons, I find that the principles of Morrison do not bar a RICO claim if a complaint avers a domestic enterprise.[8]

---

which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C.S. § 1962.

[7] I do not intend to suggest that there may be only one concern underlying a statute, or that one element of the statute takes primacy; instead, this analysis inheres only in the territorial issue. Indeed, RICO may have more than one "focus" -- including, for example, the pattern of racketeering activity required by the statute.

[8] Other countries do not have precise analogues to RICO, possibly because "other countries have not had exactly the same problems with organized crime as those that led to enactment of RICO in the United States." Wise, Edward, Rico and its Analogues: Some Comparative Considerations, 27 Syracuse J. Int'l L. & Com. 303, 305 (2000).

In this case, as Defendants do not contest, Plaintiff alleges that Defendants participated in a domestic enterprise.[9] Thus, I need not decide whether RICO reaches this case because Defendants' conduct, or the effects thereof, occurred in the United States or elsewhere -- in other words, no ad-hoc analysis is required. Instead, the alleged enterprise was domestic, and within the ambit of RICO. Accordingly, Morrison's presumption does not preclude the Plaintiff's RICO claim.

As a final matter, Defendants challenge Plaintiff's allegations primarily to support their argument that those allegations do not establish a sufficient domestic connection to implicate RICO, and not as a direct pleading sufficiency challenge under Twombly and Iqbal. To the extent that Defendants do contend that the Complaint alleges insufficient facts to support RICO liability, aside from the territoriality contention, I am not persuaded. I have considered and rejected similar arguments elsewhere in this MDL proceeding. See, e.g., Order dated October 16, 2009, Kirshner v. Wachovia Capital Markets, LLC, W.D. Pa. Docket No. 9-162; Order dated September 16, 2009, CIT v. Krones, W.D. Pa. Docket No. 9-162. As suggested in those cases, Plaintiff must allege enough facts to permit a reasonable inference that it is plausible that Defendants were part of an enterprise and thus liable for the misconduct alleged under RICO. I agree that the pleading contains several conclusory allegations, but at this early stage in the litigation, it is sufficient under applicable standards.

## CONCLUSION

In sum, Morrison does not apply to preclude RICO from applying in this case. Further, I do not find Plaintiff's pleading of RICO claims against Defendant insufficient under applicable standards. As the parties agree, Defendant Kronseder's personal jurisdiction argument is best

---

[9] Although I recognize the problems that might arise in different RICO contexts, I do not opine as to how today's findings apply to an associated-in-fact enterprise, which might not have a distinct "location" as does an enterprise that is a legal entity.

disposed of after pertinent discovery has concluded. Thus, I will deny that aspect of the Motion without prejudice.

**ORDER**

AND NOW, this 26th day of May, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Dismiss (Docket No. 20) is DENIED. The denial is without prejudice solely to the extent that Defendant Kronseder may refile his Motion to Dismiss pursuant to Fed. R. Civ. P. (12)(b)(2), after jurisdictional discovery.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court