**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: LE-NATURE'S, INC. | ) WDPA No. 9-MC-162 |
| | ) MDL N0. 2021 |

| | |
|---|---|
| MARC S. KIRSCHNER, | ) |
| | ) |
| Plaintiff, | ) No. 8-1518 |
| | ) |
| vs. | ) |
| | ) |
| WACHOVIA CAPITAL MARKETS., et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

**SYNOPSIS**

Before the Court are Defendants' Motions to Supplement their Answers, filed by the

Marshall Defendants and CIT.   Also pending are these Defendants' Motions for Judgment on

the Pleadings on the Complaint against them, along with a similar Motion by the Krones

Defendants.[1]    Both sets of Motions rely on collateral estoppel, based on the results of a binding

arbitration that Plaintiff commenced against Ernst & Young, LLP ("E&Y"), and a state court

proceeding that Plaintiff brought against K & L Gates, LLP ("K&L").   The arbitration panel and

the state court both issued their decisions during the pendency of this proceeding, and after this

Court issued Orders relating to allegedly estopped issues also addressed in those later decisions.

Plaintiff opposes both Motions, contending that the amendments would be futile and judgment

should be denied, in part because the "law of the case" doctrine, rather than collateral estoppel,

---

[1] Kronseder has not filed an Answer to the Complaint in this matter, because his Motion to Dismiss is pending; thus, he does not formally join in the Motion.  He joins in the parties' Motion for Judgment on the Pleadings, however, to the extent that he argues in support of sua sponte dismissal of the claims against him.  I will dispose of all the parties' pertinent Motions at once, and refer to them collectively, for purposes of efficiency.

applies.  The parties' arguments thus raise questions regarding the relative primacy of this

Court's prior orders in this litigation, and conclusions subsequently reached by the other

adjudicative bodies.

For the following reasons, the Motions for Judgment on the Pleadings will be denied, and

the Motions for Leave to Supplement Answer will be granted in part and denied in part.

## OPINION

## I. APPLICABLE STANDARDS

### A. Fed. R. Civ. P. 15(a) and 12(c)

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

Futility is among the grounds for denying leave to amend.  In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1434 (1997).   An amendment is futile if it "is frivolous or advances a

claim or defense that is legally insufficient on its face."   Harrison Beverage Co. v. Dribeck Imp.,

Inc., 133 F.R.D. 463, 468 (D.N.J. 1990).

Judgment on the pleadings is appropriate when "the movant clearly establishes that no

material issue of fact remains to be resolved and that he is entitled to judgment as a matter of

law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008).   Upon such motion, the

pleadings are viewed in the light most favorable to the nonmoving party.  Id. "A motion for

judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is

analyzed under the same standards that apply to a Rule 12(b)(6) motion."   Turbe v. Gov't of the

V.I., 938 F.2d 427, 428 (3d Cir. 1991).  If, on a 12(c) motion, matters outside the pleadings are

presented to the court, the motion must be treated as one for summary judgment under Rule 56.

Fed. R. Civ. P. 12(d).  Factual questions are not appropriate for resolution on a 12(c) motion.

Rosenau, 539 F. 3d at 224.

**B.  Law of the Case and Collateral Estoppel**

Collateral estoppel forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment even if the issue recurs in the context of a different claim."  Rogers v. Maretz, No. 8-3334, 2012 U.S. Dist. LEXIS 4316, at *7 (D.N.J. Jan. 12, 2012).  For collateral estoppel to apply, the moving party must demonstrate that the issue decided in the prior adjudication was identical to the one presented later, and that it was necessary to the final judgment on the merits; that there was a final adjudication on the merits; that the party against whom estoppel is asserted was a party, or in privity with a party, to the prior adjudication; and that the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.  Timoney v. Upper Merion Twp., No. 1-1622, 2004 U.S. Dist. LEXIS 24678 (Dec. 8, 2004).

The law of the case doctrine, in contrast, is notoriously amorphous.  Arizona v. California, 460 U.S. 605, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983).  "Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" ACLU v. Mukasey, 534 F.3d 181, 187 (3d Cir. 2008) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)).   The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"  Bellevue Drug Co. v. CaremarksPCS, 582 F.3d 432, 439 (3d Cir.2009). The rules govern a district court's exercise of discretion, rather than restricting its powers.  Id. Like collateral estoppel, law of the case does not reach any matter that was not decided.  Alan

Wright, Arthur R. Miller & Edward H. Cooper, 18B Federal Practice and Procedure § 4478 (1981 & Supp. 2011).

Moreover, "the law of the case doctrine does not limit the power of a trial judge to revisit issues addressed in interlocutory orders."   Hudson United Bank v. Progressive Cas. Ins. Co., 284 F. Supp. 2d 249 (E.D. Pa. 2003).   While the doctrine does not operate to preclude reconsideration of an interlocutory order, however, its underlying principles may provide grounds for declining to do so.[2]   Cf., e.g., Pit River Home & Agric. Coop. Ass'n v. United States, 30 F.3d 1088, 1097 (9th Cir. 1994); Pastewka v. Texaco, 565 F. 2d 851, 853 (3d Cir. 1977) (noting law of case doctrine in context of reconsidering interlocutory order).   As distinguished from collateral estoppel, law of the case principles "do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment."  Wright & Miller, § 4478.[3]

In accordance with the doctrine, this Circuit has recognized several "extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the course of litigation, including when a supervening new law has been announced, or the earlier decision was "clearly erroneous and would create manifest injustice."  Public Interest Research Group v. Magnesium Elektron, 123 F.3d 111, 116-117 (3d Cir. 1997).  To constitute "supervening new law," the new decision must alter the law in a way, such as a change in controlling law, that

---

[3] Defendants cite to Martin v. Port Auth. Transit, 115 Fed. Appx. 556 (3d Cir. 2004), for the proposition that law of the case cannot apply to a preliminary ruling.  In Martin, plaintiff urged that the denial of summary judgment, based on the possibility that evidence could be considered by a jury, was the law of the case that precluded a later in limine ruling that the evidence was not sufficiently probative.  Id. at 560.  In that particular case, the argument was characterized as "approaching frivolity."  Id. The Court noted that the doctrine does not "preclude all reconsideration of an issue."  Id. (emphasis added).  The doctrine bars reconsideration of matters actually decided, but not preliminary or tentative matters.  Although the Court of Appeals also cited to the First Circuit's statement that interlocutory orders do not constitute the law of the case, this statement must be read in the context of the discretionary nature of the doctrine, the nature of the particular alleged "law of the case" decision, and other extant case law and principles that do not definitively preclude treating a fixed conclusion, as opposed to a mutable one, as the law of the case.

would justify reevaluating the initial decision.  See, e.g., United States v. Parmelee, 262 Fed.

Appx. 416, 419 (3d Cir. 2008); Schneyder v. Smith, 709 F. Supp. 2d 368 (E.D. Pa. 2010).

> Under the law of the case doctrine, "'when a court decides upon a rule of law, that decision should continue to govern the same issues in prior stages in the same case.'"  By contrast, collateral estoppel means "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' Therefore, "relitigation of issues previously determined in the same litigation is controlled by principles of the law of the case doctrine rather than collateral estoppel."

UGI Corp. v. Piccione, No. 88-1125, 1997 U.S. Dist. LEXIS 17898, at *23 n. 11 (E.D. Pa. Nov. 5, 1997) (citations omitted).

## II. MOTIONS FOR JUDGMENT ON THE PLEADINGS

In this case, whether judgment on the pleadings is warranted depends on resolving the

relationship between this Court's decisions and subsequent decisions made by two other

adjudicative bodies.   At issue here are my September 16, 2009 Opinions regarding "deepening

insolvency,"[4] and the Court of Common Pleas of Allegheny County's decision, on October 28,

2010, that the Trustee could not rely on that claim or theory in his case against K&L.  Also

implicated is the arbitration panel's decision, on June 9, 2011, which followed that of the state

court.   Potentially at issue here, then, is whether the law of the case doctrine, or collateral

estoppel, leaves this Court's prior decisions in place, or whether the later-arising decisions of the

arbitration panel and state court are entitled to preclusive effect.    Inherent in this discussion is

whether there is, in fact, any extant conflict between my Orders and those of the other

adjudicative bodies at issue.

According to Defendants, I did not finally resolve the issue of Plaintiff's damages; I

merely held that the allegations might support a viable damages claim.  In certain respects, I

---

[4] The two Opinions and Orders, on Motions to Dismiss by CIT and Krones, considerably overlap.  Therefore, I refer to them collectively.  The Opinions and Orders are located at Docket Nos. 120 and 121 at 8-1518, and Docket Nos. 123 and 125 at 9-162.

agree.   In this case, I found that Plaintiff neither sought damages based on a deepening

insolvency measure, nor asserted an independent claim for deepening insolvency.[5]   In the

subsequent arbitration proceeding against E & Y, Plaintiff articulated his measure of damages as

"deepening insolvency," which the panel -- and Judge Wettick, in the case against K & L --

rejected.   Defendant argues that because the same injuries are involved in all three cases, this

matter must necessarily go the way of the other two.

In my September 16 Opinion, quoting Thabault v. Chait, 541 F. 3d 512, 523 (3d Cir.

2008),   I noted that "traditional damages stemming from a given cause of action 'do not become

invalid merely because they have the effect of increasing a corporation's insolvency.'" I also

found that Plaintiff, in this particular case, did not seek damages based on a deepening

insolvency measure; nor did he assert an independent claim for deepening insolvency.[6]   Instead,

I observed that under case law in this Circuit, "if available under applicable law, damages for an

increase in a corporation's liabilities, decrease in its fair asset value, or lost profits, all remain

available regardless of the impact on the solvency calculation."  I reiterated, and do so again

here, our Court of Appeals' statement in CitX Corp. v. Detweiler, Hershey and Assoc. P.C., 448

F. 3d 672, 678 (3d Cir. 2006):

> Where an independent cause of action gives a firm a remedy for the
> increase in its liabilities, the decrease in fair asset value, or its lost profits, then the

---

[5] In particular, I observed that "Kirschner clearly states in his opposition brief, that his complaint does not assert an independent 'deepening insolvency' claim, and based on my review of the complaint, I concur…In addition, Kirschner states in his opposition brief that he is not seeking deepening insolvency damages for any of his claims." Docket No. 123, pp. 15-16.

[6] Contrary to Defendants' suggestion, I did not independently determine that Pennsylvania recognizes such a claim. Instead, I discussed Official Comm. Of Unsecured Creditors v. Lafferty & Co., 267 F. 3d 340 (3d Cir. 2001), in which our Court of Appeals predicted that the Pennsylvania Supreme Court "would determine that 'deepening insolvency' may give rise to a cognizable injury," and the manner in which In re CitX Corp., 448 F.3d 672 (3d Cir. 2006), affected the reach of Lafferty.  Whether I found that such an independent claim exists, moreover, is rendered irrelevant by my corollary finding that Plaintiff, at the dismissal stage, did not assert such a claim in this litigation. Ultimately, I relied on the assertion in CitX that traditional damages do not become invalid because they happen to increase a corporation's insolvency.  Practically, this may or may not prove difficult to divorce from the semantic gamesmanship that Defendants decry; it is, however, the state of the law in this Circuit.

firm may recover, without reference to the incidental impact upon the solvency calculation.

According to Defendants, the arbitration panel had before it evidence and extensive briefing on this issue, and was presented with Plaintiff's characterization of his damages as "deepening insolvency."  In state court, the court noted that Plaintiff sought damages measured by the difference in indebtedness caused by the alleged wrongdoing.  However, Defendants do not point to any such articulation of damages in this case, against these Defendants, that differs from the position addressed in my September 16 Opinions; nor do they cite to any rule that precludes Plaintiff in this case from adhering to his prior assertions regarding damages in this case.   In other words, I made a decision based on the allegations in the Complaint and Plaintiff's representations, sans the admission of evidence, of the damages allegedly caused by the moving Defendants; there remains no change in that regard.   On the Motion before me, I am bound by the same standards applicable to the Motions to Dismiss, which resulted in the September 16 Opinions.  Due to the postures of the cases, and the parties, my September 16 decisions are not necessarily inconsistent with those that followed in other fora.    In sum, the circumstances of the present record are unchanged since my earlier rulings, and do not justify revisiting or revising those rulings at this point based on preclusion principles.

Given the basis and parameters of my prior decision, whether or not I were to apply "law of the case" doctrine, I am not convinced that the Court of Common Pleas' decision justifies any departure from my September 2009 Order at this time.    The Court of Common Pleas did not rely on case law from our Court of Appeals; instead, considering Plaintiff's claims against a law firm, it was persuaded by a case from the Court of Chancery of Delaware.  In addition, the Court

of Common Pleas declined to apply case law from our Court of Appeals.[7]   I, unlike the state

court, am bound by our extant appellate authority.[8]   In contrast, a ruling of the Pennsylvania

Court of Common Pleas is not binding on this Court.   Brown v. Moore, 247 F.2d 711 (3d Cir.

1957); Donaldson v. Informatica Corp., No. 9-804, 2011 U.S. Dist. LEXIS 57943, at *21 (W.D.

Pa. May 31, 2011).

Thus, despite my high regard for the state court and its thoughtful opinion, that opinion

does not constitute supervening new law that obliges me to revisit my prior ruling.   Defendants

suggest that because other adjudicators determined that the complaints before them relied on

deepening insolvency -- despite the Plaintiff's attempts to apply different labels to his claim -- I

must decide that the Complaint before me does the same.   Again, however, I already considered

this Complaint, and explicitly decided that it did not necessarily assert deepening insolvency per

se either as a damages measure or an independent cause of action.   That the "true nature" of the

Plaintiff's claims was "exposed" in other proceedings does not provide grounds for

reconsideration of these determinations.   On the record before me, I simply cannot conclude that

Plaintiff's claims for damages against these Defendants is actually, and improperly, premised on

deepening insolvency.   For similar reasons, adopting the panel's and state court's decisions is not

---

[7] The state court rejected federal case law as inconsistent with state law regarding damages for malpractice, because it did not proffer a satisfactory explanation for treating increased insolvency as a measure of injury.   This inquiry was brought directly before the court, because Plaintiff proffered, as a measure of damages caused by K & L, the difference in indebtedness allegedly caused by the malpractice.   This is not mere semantics; it speaks to how an injury is valued.

[8] Here, I note Defendant's contention that Marion v. TDI, Inc., 591 F. 3d 137 (3d Cir. 2010), constitutes supervening law that requires reconsideration of my 2009 Orders, because it underscores that a receiver may only pursue damages to the company, and not to creditors, and establishes a "robust" proximate cause requirement.   As regards the latter, causation in this case will be a fact-intensive inquiry that I am unwilling and unable to resolve on the present Motions.   As regards the former, I agree that the principles enunciated in Marion bear on this litigation. Marion, however, referred, without disapproval, to the notion that an increase in corporate liabilities may be separate from an injury to the corporation's creditors, and that a corporation is injured by increased insolvency.   Id. at 149. Under the principles discussed in the body of today's Opinion, Marion does not require reconsideration of my previous Orders.

necessary to prevent clear error or manifest injustice at this juncture.[9]   For these reasons, the

Motions for Judgment on the Pleadings will be denied.

## III.  MOTIONS FOR LEAVE TO SUPPLEMENT ANSWER

I next address Defendants' Motions for leave to supplement their Answers, to assert a

collateral estoppel defense as to various issues.  In addition to raising the damages question

discussed <u>supra</u>, Defendants' Motions for Leave to Supplement also seek to assert collateral

estoppel with respect to <u>in pari delicto</u>, the statute of limitations, and the innocence and

independence of the outside directors.    As with the damages question, Plaintiff opposes the

Motions, primarily on "law of the case" grounds.

### A. <u>In Pari Delicto</u>

Previously in this action, by Opinion and Order dated September 16, 2009, I addressed

Defendants' contention that <u>in pari delicto</u> barred Plaintiff's claims of aiding and abetting.    In

that Opinion, I found that Le-Nature's was essentially rid of corrupt influence prior to the

bankruptcy filing, when KZC was installed to run the company, and that Kirschner stepped into

the shoes of a corporation run by KZC, who was not engaged in fraudulent conduct.

Accordingly, "there was nothing to impute at the time of the bankruptcy filing."   I looked to

bankruptcy law, under which the trustee steps into the shoes of the debtor:

> <u>In pari delicto</u> literally means "in equal fault," [and] is rooted in the
> common-law notion that a plaintiff's recovery may be barred by his own
> wrongful conduct…. [W]hen Kirschner stepped into the shoes of Le-Nature's it
> was no longer being operated by a corrupt management team (Podlucky and the
> Insiders) due to the minority shareholders who convinced the Chancery Court to
> replace the leadership. Thus, at the moment the bankruptcy was filed, Le-
> Nature's was not being run by the wrongdoers who allegedly engaged in fraud.
> This distinction alone leads me to conclude that since Le-Nature's alleged

---

[9] It is clear that deepening insolvency, whether as a measure of damages or as an independent cause of action, is the
subject of much legitimate disagreement.  Joao F. Magalhaes, <u>et al.</u>, <u>The Sword and the Shield:  More on the Old
Tale of Deepening Insolvency and In Pari Delicto Doctrine</u>, 20-10 ABIJ 32 (Dec. 2011/Jan. 2012) (discussing
contrasting cases).

wrongdoing shareholders were stripped of their power by the alleged innocent minority shareholders prior to the bankruptcy filing, there was nothing to impute at the time the of the bankruptcy filing, and accordingly,  the in pari delicto doctrine cannot apply to bar Kirschner's claims against CIT.

Subsequently, on June 11, 2011, an arbitration panel reached a different conclusion when considering Plaintiff's claims against E &Y for professional malpractice, negligent misrepresentation, aiding and abetting breach of fiduciary duty, and breach of contract.   E & Y raised in pari delicto in its defense.   The arbitration panel determined that E & Y had "successfully proved its affirmative defense of in pari delicto," and thus the tort claims against it were barred.   The panel concluded that Plaintiff was "not insulated from the [] defense by the brief presence of KZC prior to bankruptcy."   In so doing, it relied on case law finding that "wrongful acts are imputed to a corporation…when the acts occurred, and [the trust] stands in the shoes of the corporation."

This aspect of the parties' dispute involves the intersection of two hazy concepts.   As discussed supra, the law of the case doctrine -- applicable here to a legal issue already actually decided in this litigation -- is fairly amorphous.[10]   Similarly, our Court of Appeals has noted that in pari delicto is a "murky area of the law.  It is an ill-defined group of doctrines that prevents courts from becoming involved in disputes in which the adverse parties are equally at fault." Official Comm. of Unsecured Creditors v. Pricewaterhouse Coopers, LLP, 607 F.3d 346, 350 n. 2 (3d Cir. 2010).

---

[10] Although Defendants do not frame their request as one for reconsideration, their Motion essentially asks that I reconsider my earlier conclusions in light of subsequent proceedings.  Thus, I take note of principles applicable to motions for reconsideration of interlocutory orders.   Although Fed. R. Civ. P. 59 does not govern here, because we are concerned with an interlocutory order, "courts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed. R. Civ. P. 59(e)." A&H Sportswear Co. v. Victoria's Secret Stores, Inc., No. 94-7408, 2001 U.S. Dist. LEXIS 11488, at **2-3 (E.D. Pa. May 2, 2001).   The grounds for granting such a motion mirror those for departing from the "law of the case."  See id. (citing Fed. R. Civ. P. 59).

> In pari delicto is not to be "woodenly applied and vindicated in any and all instances," but instead may be trumped by another policy more important than the policy basis for the doctrine itself. Public policy (as set out below) is what undergirds in pari delicto, not a concern with the interests of the party claiming it as a defense.

Id. at 354 (quoting Official Comm. Of Unsecure Creditors of Allegheny Health Educ. & , 989 A.2d 313, 330 (Pa. 2010)).

Here, I am not persuaded that the arbitration panel's decision presents an extraordinary circumstance, in that it constitutes "supervening new law" that warrants revisiting my 2009 Opinion regarding the legal impact of KZC's presence.  Likewise, I am not persuaded that the panel's decision demonstrates that my 2009 Opinion was clearly erroneous or would create manifest injustice.   Defendants have not proffered any persuasive reason to abandon my legal conclusion in favor of that reached by the panel.  The pertinent cases relied on by the panel, with the exception of Adelphia Recovery Trust v. Bank of America, No. 5-9050, 2010 U.S. Dist. LEXIS 90836 (S.D.N.Y. Sept. 1, 2010),  predated my September 16 Opinions, and Adelphia itself was issued outside of this Circuit.[11]  While the decisions may represent a genuine disagreement regarding the legal impact of the court-appointed custodian's tenure, neither is clearly erroneous or manifestly unjust.   Similarly, the panel's interpretation is "new" in the chronological sense, but it does not constitute "new law," in that it changed controlling law or rendered any novel pronouncement that binds this Court.   Because no further factual developments would affect this aspect of my September 16 Opinions, the amendment in this regard would be futile, and the Motion for Leave will be denied to that extent.

## B. Statute of Limitations

---

[11] Other cases, such as In re Parmalat Sec. Litig., 659 F. Supp. 504 (S.D.N.Y. 2009), were not relied on for matters pertinent to the effect of the pre-petition custodian on in pari delicto principles.

I next address whether Defendants may amend their answer to add a statute of limitations defense via collateral estoppel.   Defendants contend that the panel found Le-Nature's directors on notice of the possibility of fraud as of October, 2004, and could have taken steps to prevent that fraud; thus, they argue, Plaintiff's tort claims are barred.    Plaintiff, in turn, contends that the issues before this Court differ from those decided by the arbitration panel; thus, he argues, collateral estoppel is inapplicable.  No statute of limitations issue, as regards these parties and the facts at issue in arbitration, has been determined in this Court.

As discussed <u>supra</u>, collateral estoppel requires that "the identical issue was previously adjudicated." <u>Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc</u>., 458 F.3d 244, 249 (3d Cir. 2006).  As our Court of Appeals has explained,

> The burden is on the moving party to demonstrate that the "issue actually litigated" in a previous action is identical to the current issue before the court. …"Identity of the issue is established by showing that the same general rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules."

<u>McKenna v. Metro. Life Ins. Co</u>., 126 Fed. Appx. 571, 576 (3d Cir. 2005) (emphasis in original).

Here, the arbitration panel considered Plaintiff's tort claims against its accounting firm for professional malpractice, negligent representation, and aiding and abetting breach of fiduciary duty.   The panel determined that tort claims that arose before November 1, 2004, were time-barred, and that E&Y's alleged conduct occurred prior to that date.   Thus, unless tolling principles applied, the claims against E&Y would be barred.  The panel proceeded to consider several tolling theories, and found them inapplicable.   The 2004 notice to which Defendants refer was raised solely in the context of the rejected tolling theories.[12]   In other words, the panel

---

[12] The panel considered the adverse domination doctrine, which doctrine permits otherwise time-barred claims by a powerless group, because "with control comes non-disclosure and without knowledge of directors' wrongful activities plaintiffs have no meaningful opportunity to bring suit."   <u>Marvel Entm't Group, Inc. v. Mafco Holdings,</u>

made the threshold determination that the claims against E&Y were time-barred due solely to the timing of E&Y's alleged conduct; then it moved on to consider the issue of notice, and its effect on the time bar.   The panel's decision did not address the timeliness of the claims against these Defendants, which involve factual allegations occurring later than 2004; there is no suggestion that tolling theories are dispositive.   Thus, the issues decided by the panel were not identical to those now presented, and collateral estoppel in the manner now asserted is inapplicable.

Nonetheless, I cannot rule out the possibility that factual development in this matter might affect the availability of the defense sought to be raised, with respect to certain issues decided in other fora.   Accordingly, under applicable liberal standards, this aspect of the proposed supplement would not be futile.   The Motion will be granted to that extent.

### C. Innocent Directors

Finally, Defendants contend that arbitration panel's decision collaterally estops Plaintiff from asserting, in Counts 9 and 12 of the Amended Complaint, that the outside directors of Le-Nature's were either innocent or independent.   The Defendants appear to point to the following allegations:

> The Fraudulent Scheme hid the true financial condition of Le-Nature's which otherwise would have been apparent years before its ultimate collapse.   The independent decision makers of Le-Nature's would have been able to avert the subsequent harm and salvage the remaining value of the Company by dissolving it in a timely manner.
>
> ***
>
> Had the independent decision makers of Le-Nature's known its true financial condition…they would have blocked Podlucky's expansion efforts, moved to stop the needless equipment financings and sought to liquidate a failed enterprise long before October 2006.[13]

---

Inc., 273 B.R. 58 (D. Del. 2002).   It also considered the discovery rule, which tolls the limitations period until a party knew or should have known of its injury and cause.   The panel found both theories inapplicable, because of a Director's October, 2004 messages to the Outside Directors accusing Podlucky of fraud, and sales misstatements.

[13] Defendants refer to Paragraph 221, but I assume that they refer to Paragraph 219.   Paragraph 221 contains a statement of damages.

The arbitrators, in the context of adverse domination -- by which the statute of limitations is tolled if the outside directors were powerless, and the insiders had complete domination of the company -- discussed Plaintiff's allegations that the innocent directors could have stopped the fraud if they had become aware of it.    The arbitrators determined that the insiders did not possess total control, and that Plaintiff had failed to prove that the outside directors were powerless to act.   They also determined that the outside directors had ignored certain red flags. Accordingly, the panel concluded that adverse domination doctrine did not apply.  This issue is simply not identical to the one that Defendants seek to render preclusive in this case, which is the assertion that the outside directors were "neither innocent nor independent."  Therefore, collateral estoppel does not apply, and the Motion will be denied to that extent.  However, as with the limitations issue, I cannot find the proposed amendment futile.  Thus, I will permit Defendants to amend their Answer in this regard, due to the possibility of further developments in this proceeding.

### D.  Damages

At this juncture, I have concluded that judgment on the pleadings is not warranted under applicable standards, based on the arguments advanced in Defendants' Motions regarding "deepening insolvency" damages.  Nonetheless, the issue of damages may be subject to reconsideration as the litigation progresses, or based on a more developed record.   Therefore, I do not rule out the possibility that adopting certain rationales of either the arbitration panel or the Court of Common Pleas may become appropriate at a later stage in this proceeding.  Given that possibility, as well as the liberal nature of Rule 15(c) standards, such amendment would not be futile.

**CONCLUSION**

For the foregoing reasons, the earlier rulings in this matter will not be disturbed.

Defendants' Motions will be denied, except to the extent that they will be permitted to amend

their Answer to assert an estoppel defense.   Accordingly, Defendant's Supplemented Answer

may be deemed filed, except for subparagraph (d), regarding in pari delicto.

An appropriate Order follows.

**ORDER**

AND NOW, this 2nd day of February, 2012, it is hereby ORDERED, ADJUDGED, and

DECREED that Defendants' Motions for Leave to Supplement Answer (Docket Nos. 304 and

307) are DENIED in part and GRANTED in part, as more fully stated in the foregoing Opinion,

and their Motions for Judgment on the Pleadings (Docket Nos. 297, 300, and 306) are

DENIED.[14]   Defendant's Supplement to its Answer is hereby deemed filed, with the exception

of subparagraph (d) thereto.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Judge, U.S. District Court

---

[14] All documents have been filed at both Dockets 9-162 and 8-1518.  This Order refers to Docket No. 8-1518.  The pertinent docket numbers at Docket No. 9-162 are 483, 487, 488, 490, and 491.